UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

UNITED STATES OF AMERICA           :        S1 20 Cr. 314 (GHW)

          - v. -                   :

ETHAN PHELAN MELZER,               :

          *Defendant.*             :

----------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ETHAN PHELAN MELZER'S PRETRIAL MOTIONS

Federal Defenders of New York
52 Duane Street, 10th Floor
New York, New York 10007
Tel.: (212) 417-8700
Counsel for Ethan Phelan Melzer

TO:   United States Attorney
      Southern District of New York
      One St. Andrew's Plaza
      New York, New York 10007
.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS .................................................................................... 2

ARGUMENT ........................................................................................................... 4

I.      Several counts must be dismissed because the charged statutes
do not reach Mr. Melzer's overseas conduct. ............................................. 4

      A.      There is a strong presumption against the extraterritorial
application of domestic laws and Congress must clearly specify
any extraterritorial reach of a statute........................................... 5

      B.      Count Six should be dismissed because the charged offense
was not "within the jurisdiction of the United States,"
as the statute requires. ................................................................... 6

      C.      Section 1114 does not apply extraterritoriality, meaning that
Counts Three and Four should be dismissed. ............................... 9

      D.      The Court should hold that § 2339A(a) only reaches
extraterritorial conduct to the same extent as its
predicate offenses. ....................................................................... 13

II.     Several counts of the indictment are improperly multiplicitous and
should be dismissed. ................................................................................ 14

      A.      All of the listed predicate offenses are multiplicitous
with Count Five........................................................................... 16

      B.      The Court should exercise its discretion to require the
government to elect which of these multiplicitous counts
it will pursue at trial................................................................... 20

III.    Counts One and Two must be dismissed because the government
failed to comply with 18 U.S.C. § 2332(d). ............................................ 22

CONCLUSION.................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aparicio v. Artuz,*
  269 F.3d 78 (2d Cir. 2001) .................................................................. 14

*Ball v. United States,*
  470 U.S. 856 (1985) ............................................................................. 20

*Blockburger v. United States,*
  284 U.S. 299 (1932) ....................................................................... 14, 18

*Brown v. Ohio,*
  432 U.S. 161 (1977).......................................................................... 14, 15

*E.E.O.C. v. Arabian Am. Oil Co.,*
  499 U.S. 244 (1991) .............................................................................. 6

*Gulaid v. CH2M Hill, Inc.,*
  No. 15 Civ. 4824 (JST), 2016 WL 5673144 (N.D. Cal. Oct. 3, 2016) .................... 9

*Impounded,*
  117 F.3d 730 (3d Cir. 1997) ................................................................ 23

*In re S. Afr. Apartheid Litig.,*
  15 F. Supp. 3d 454 (S.D.N.Y. 2014) .................................................... 12

*Kiobel v. Royal Dutch Petroleum Co.,*
  569 U.S. 108 (2013) .............................................................................. 4

*Marshall v. Exelis Systems Corp.,*
  No. 13 Civ. 545, 2014 WL 1213473 (D. Col. 2014) ............................... 8-9

*Microsoft Corp. v. AT&T Corp.,*
  550 U.S. 437 (2007) .............................................................................. 5

*Morrison v. Nat'l Australia Bank, Ltd.,*
  561 U.S. 247 (2010) .................................................................. 5, 10, 11

*RJR Nabisco, Inc. v. European Community,*
  136 S. Ct. 2090 (2016).................................................................. passim

*Rutledge v. United States,*
  517 U.S. 292 (1996) ............................................................. 14, 15, 17

*Small v. United States,*
    544 U.S. 385 (2005) ............................................................... 5-6

*United States v. Al Kassar,*
    660 F.3d 108 (2d Cir. 2011) ................................... 10

*United States v. Ali,*
    718 F.3d 929 (D.C. Cir. 2013) .............................. 13

*United States v. Bowman,*
    260 U.S. 94 (1922) ............................................... 10

*United States v. Chacko,*
    169 F.3d 140 (2d Cir. 1999) ................................. 15

*United States v. Chhun,*
    744 F.3d 1110 (9th Cir. 2014) ............................... 7

*United States v. Clarridge,*
    811 F. Supp. 697 (D.D.C. 1992) .......................... 21

*United States v. Doe,*
    49 F.3d 859 (2d Cir. 1995) ................................... 23

*United States v. Elliott,*
    266 F. Supp. 318 (S.D.N.Y. 1967) ........................ 7

*United States v. Epskamp,*
    832 F.3d 154 (2d Cir. 2016) ............................. 5, 11

*United States v. Fernandez,*
    559 F.3d 303 (5th Cir. 2009) ................................. 7

*United States v. Garcia Sota,*
    948 F.3d 356 (D.C. Cir. 2020) ......................... 11-12

*United States v. Gatlin,*
    216 F.3d 207 (2d Cir. 2000) ................................... 8

*United States v. Green,*
    654 F.3d 637 (6th Cir. 2011) ................................. 8

*United States v. Hassan,*
    742 F.3d 104 (4th Cir. 2014) ................................. 7

*United States v. Hausa,*
    258 F. Supp. 3d 265 (E.D.N.Y. 2017) ................... 23

*United States v. Hoskins,*
    902 F.3d 69 (2d Cir. 2018) ...................................................................... 11, 12, 13

*United States v. Hunter,*
    No. 13 Cr. 521 (RA), 2018 WL 4961453 (S.D.N.Y. Oct. 15, 2018) ..................... 6-7

*United States v. Johnson,*
    130 F.3d 1420 (10th Cir. 1997) .................................................................. 20-21

*United States v. Josephberg,*
    459 F.3d 350 (2d Cir. 2006) ........................................................................... 20

*United States v. Kee,*
    No. 98 Cr. 778 (DLC), 2000 WL 863117 (S.D.N.Y. June 27, 2000) .................... 20

*United States v. Mustafa,*
    753 F. App'x 22 (2d Cir. 2018) ....................................................................... 13

*United States v. Peel,*
    595 F.3d 763 (7th Cir. 2010) ..................................................................... 15, 19

*United States v. Platter,*
    514 F.3d 782 (8th Cir. 2008) ......................................................................... 20

*United States v. Polizzi,*
    257 F.R.D. 33 (E.D.N.Y. 2009) .............................................................. 15, 21, 22

*United States v. Reed,*
    639 F.2d 896 (2d Cir. 1981) ........................................................................... 20

*United States v. Rivera,*
    No. 09 Cr. 619 (SJF), 2011 WL 1429125 (E.D.N.Y. Apr. 13, 2011) .................... 20

*United States v. Sattar,*
    395 F. Supp. 2d 79 (S.D.N.Y. 2005) ................................................................ 17

*United States v. Siddiqui,*
    699 F.3d 690 (2d Cir. 2012) ............................................................. 10, 14, 23, 24

*United States v. Williams,*
    836 F.3d 1 (D.C. Cir. 2016) .............................................................................. 8

*United States v. Wong,*
    40 F.3d 1347 (2d Cir. 1994) ........................................................................... 23

*United States v. Yousef,*
    750 F.3d 254 (2d Cir. 2014)............................................................................. 8

*Whalen v. United States,*
  445 U.S. 684 (1980) ..................................................................... 14, 18

**Federal Statutes**

18 U.S.C. § 793(d) ............................................................................. 4

18 U.S.C. § 794(a) ............................................................................. 4

18 U.S.C. § 924(c) ........................................................................... 14

18 U.S.C. § 956 ....................................................................... passim

18 U.S.C. § 1114 ..................................................................... passim

18 U.S.C. § 1117 .....................................................................passim

18 U.S.C. § 1962 ........................................................................... 10

18 U.S.C. § 2332 ..................................................................... passim

18 U.S.C. § 2339A ................................................................... passim

18 U.S.C. § 3261 ............................................................................. 8

18 U.S.C. § 5032 ........................................................................... 23

42 U.S.C. § 1981 ............................................................................. 9

**Other Authorities**

Julie Rose O'Sullivan, *The Extraterritorial Application of Federal Criminal*
  *Statutes: Analytical Roadmap, Normative Conclusions, and A Plea to*
  *Congress for Direction*, 106 Geo. L.J. 1021 (2018) ................................ 11

Defendant Ethan Phelan Melzer moves, pursuant to Rule 12 of the Federal Rules of Criminal Procedure and the Fifth Amendment, to dismiss certain charges against him. For the reasons discussed below, the Court should grant these motions.[1]

## PRELIMINARY STATEMENT

Ethan Melzer is a 22-year-old United States Army private with no criminal history. He is charged in an eight-count Superseding Indictment with offenses that, if proven, subject him to life in prison. All eight counts center on the same allegations: that between April and May of 2020, Mr. Melzer disclosed information he learned through his military service to strangers online, some of whom purported to be members of a self-proclaimed "Satanic" "anarchist" group called the Order of Nine Angles. No one was injured as a result of Mr. Melzer's online activity, and the government has not alleged that anyone who corresponded with him actually made any effort to use the information he disclosed.

All of the alleged conduct giving rise to these charges occurred while Mr. Melzer was stationed overseas in Italy. But there is a strong presumption against the extraterritorial application of U.S. laws. As a result, most domestic criminal statutes—including several of those charged against Mr. Melzer—do not reach overseas conduct. These charges against Mr. Melzer must therefore be dismissed.

---

[1] During the February 22, 2021 pretrial conference in this matter, defense counsel respectfully requested limited permission to supplement these motions. The Court directed the defense to file a letter providing an update on any additional possible motions. That letter will be filed separately from this memorandum.

In addition, several of the charges in this repetitive indictment are improperly multiplicitous of one another. Based on his Fifth Amendment protection against double jeopardy, Mr. Melzer moves to dismiss these multiplicitous charges.

Finally, two of the charges against Mr. Melzer, violations of 18 U.S.C. § 2332(b), must be dismissed because the government failed to comply with certain mandatory statutory certification requirements.

## STATEMENT OF FACTS

Ethan Melzer joined the army on June 4, 2019, at age 20. *See* Complaint dated June 4, 2020 (Complaint) ¶ 10(b), ECF Dkt. 1. He started as a private, which is still his current rank. *Id.* ¶ 10(c). After basic training, he entered a unit that, beginning in October 2019, was stationed near Vicenza, Italy. *Id.* at ¶ 10(g).

All of the current charges stem from Mr. Melzer's alleged actions while in Italy. *See* Superseding Indictment dated August 18, 2020 (Indictment) ¶ 3, ECF Dkt. 31 (alleging communications in May 2020, when Mr. Melzer was in Italy); *id.* ¶¶ 1, 5, 7, 11, 13, 15, 17, 18 (alleging that offenses were "begun and committed outside of the jurisdiction of any particular State or district of the United States"); Complaint ¶¶ 10(g), 12 (alleging communications in April and May 2020).

In brief, the government alleges that between April and May 2020, Mr. Melzer began corresponding online with individuals who claimed to be affiliated with the Order of Nine Angles. Complaint ¶ 12(1). According to the government, the Order of Nine Angles is a "Satanic anarchist group founded in the United Kingdom" that describes itself as:

> A diverse, and world-wide, collective of diverse groups, tribes, and individuals, who share and who pursue similar sinister, subversive, interests, aims and life-styles, and who cooperate when necessary for their mutual benefit and in pursuit of their shared aims and objectives . . . . The criteria for belonging to the ONA is this pursuit of similar, sinister, subversive interests, aims, and life-styles ….

Complaint ¶ 11(a).

Per the government, in April 2020, while in Italy, Mr. Melzer began communicating online with individuals who claimed to be affiliated with the Order of Nine Angles. *Id.* ¶ 12. In May 2020, Mr. Melzer also communicated with an undercover government agent, who claimed to be affiliated with this group. *Id.*

During these communications, Mr. Melzer is alleged to have endorsed an anarchist, Satanist ideology; disclosed information about his army unit's anticipated move from Italy to Turkey; and discussed a possible attack on his unit during that upcoming deployment. *Id.*

Mr. Melzer was arrested on May 30, 2020 in Italy. His case began in the military court system and he was initially held under the military's court-martial authority. At some point, he was moved from Italy to a military base in Germany. He remained in Germany until he was transported to the Southern District of New York on June 10, 2020.

Mr. Melzer was initially charged by complaint. A Superseding Indictment was filed on August 18, 2020. This indictment charges Mr. Melzer with:

- Conspiracy to murder U.S. nationals, in violation of 18 U.S.C. § 2332(b) (Count One);
- Attempted murder of U.S. nationals, in violation of 18 U.S.C. §§ 2332(b) and 2 (Count Two);

- Conspiracy to murder U.S. service members, in violation of 18 U.S.C. §§ 1114 and 1117 (Count Three);

- Attempted murder of U.S. service members, in violation of 18 U.S.C. §§ 1114 and 2 (Count Four);

- Provision and attempted provision of material support to terrorists, in violation of 18 U.S.C. §§ 2339A(a) and 2 (Count Five);

- Conspiracy to murder in a foreign country, in violation of 18 U.S.C. §§ 956(a)(1) and (a)(2)(A) (Count Six);

- Illegal transmission of national defense information, in violation of 18 U.S.C. §§ 793(d) and 2 (Count Seven); and

- Illegal delivery of national defense information, in violation of 18 U.S.C. §§ 794(a) and 2 (Count Eight).

Mr. Melzer has pled not guilty to this indictment.

## ARGUMENT

### I. Several counts must be dismissed because the charged statutes do not reach Mr. Melzer's overseas conduct.

All of the alleged criminal activity in this case was extraterritorial—that is, it occurred "in the territory of a sovereign other than the United States." *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 113 (2013). This is clear from the factual allegations, which reference Mr. Melzer's time in Italy, and the indictment's repeated averments that each offense was "begun and committed outside of the jurisdiction of any particular State or district of the United States."

Because all of the alleged conduct took place outside of the United States, most domestic criminal statutes—including several of those charged against Mr. Melzer—do not actually reach that conduct. The counts charging violations of these statutes must be dismissed.

**A. There is a strong presumption against the extraterritorial application of domestic laws and Congress must clearly specify any extraterritorial reach of a statute.**

A basic premise of our legal system is that, in general, "United States law governs domestically but does not rule the world." *RJR Nabisco, Inc. v. Eur. Cmty.*, 136 S. Ct. 2090, 2100 (2016) (quoting *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437 (2007)). Based on this principle, courts apply a canon of statutory construction known as the presumption against extraterritoriality: "Absent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application." *Id.*; *see also, e.g.*, *Morrison v. Nat'l Australia Bank, Ltd.*, 561 U.S. 247, 255 (2010). This presumption serves to avoid international discord that could result from applying U.S. laws to actions within another sovereign's borders, and reflects the "commonsense notion" that Congress legislates with domestic concerns in mind. *RJR Nabisco, Inc.*, 136 S. Ct. at 2100.

To determine if a law applies outside of the United States, courts examine a statute to see "whether the presumption against extraterritoriality has been rebutted—that is, whether the statute gives a clear, affirmative indication that it applies extraterritorially." *Id.* at 2101. Courts look to the statute's text, its structure, and its context in the broader statutory scheme. *See, e.g.*, *id.* at 2102-03; *United States v. Epskamp*, 832 F.3d 154, 162 (2d Cir. 2016). "When a statute gives no clear indication of an extraterritorial application, it has none." *Morrison*, 561 U.S. at 255.

The party asserting extraterritorial application of a statute, in this case the government, bears the burden of overcoming the presumption and showing a "clear" and "convincing" indication that the statute applies outside of the United States. *See,*

*e.g.*, *Small v. United States*, 544 U.S. 385, 391 (2005); *E.E.O.C. v. Arabian Am. Oil Co.*, 499 U.S. 244, 248-49 (1991).

> **B. Count Six should be dismissed because the charged offense was not "within the jurisdiction of the United States," as the statute requires.**

Count Six charges Mr. Melzer with conspiracy in violation of 18 U.S.C. § 956(a), and alleges overt acts that Mr. Melzer perpetrated while in Italy. Indictment ¶¶ 14-16. Section 956(a) states:

> Whoever, *within the jurisdiction of the United States*, conspires with one or more other persons, regardless of where such other person or persons are located, to commit at any place outside the United States an act that would constitute the offense of murder, kidnapping, or maiming if committed in the special maritime and territorial jurisdiction of the United States shall, *if any of the conspirators commits an act within the jurisdiction of the United States to effect any object of the conspiracy*, be punished as provided in subsection (a)(2).

18 U.S.C. § 956(a)(1) (emphasis added).

By the statute's plain text, the criminal object of the conspiracy can be intended to take place outside of the United States and some conspirators may be located outside of the United States.

But the defendant's action in joining the conspiracy, and at least one overt act, must occur "within the jurisdiction of the United States"—that is, within the borders of the United States. As one court in this district recently summarized, to convict a defendant under § 956(a), the government must prove that the defendant "conspired with one or more members of the conspiracy while that defendant was physically present in the United States" and that "at least one member of the conspiracy committed an overt act while in the United States." *United States v. Hunter*, No. 13

Cr. 521 (RA), 2018 WL 4961453, at *2 (S.D.N.Y. Oct. 15, 2018); *see also United States v. Hassan*, 742 F.3d 104, 112 (4th Cir. 2014) (stating that the government must prove "that the conspiracy was entered into within the United States" and that a conspirator "committed an overt act in furtherance of the conspiracy within the jurisdiction of the United States"); *United States v. Chhun*, 744 F.3d 1110, 1116 (9th Cir. 2014) ("[t]he plain meaning of the statute prohibits any conspiracy formed in the United States"); *United States v. Fernandez*, 559 F.3d 303, 325 (5th Cir. 2009) (finding elements include an overt act in the United States and that at least one conspirator was within the United States when that person conspired); *United States v. Elliott*, 266 F. Supp. 318, 322-23 (S.D.N.Y. 1967) (rejecting due process challenge to law because the statute required the criminal conspiracy to be formed in the United States and noting that the government "has the power to prosecute conspirators for an agreement made within its borders").

The Court should dismiss the § 956(a) charge against Mr. Melzer because the government does not allege that he entered the conspiracy while within the United States; that the conspiracy was formed in the United States; or that any overt act occurred in the United States. Rather, as the indictment and complaint make clear, Mr. Melzer's charged offenses took place wholly overseas, while he was in Italy. Count Six itself avers that the § 956(a) offense was "begun and committed outside of the jurisdiction of any particular State or district of the United States." Indictment ¶ 15. The statute explicitly requires that Mr. Melzer have conspired in the United States, and that one overt act take place here, and the government has not alleged that.

7

Nor is Mr. Melzer legally "within the jurisdiction of the United States" merely because he is a U.S. military member or because he was stationed on an overseas U.S. military base.  The Second Circuit and numerous other courts have repeatedly ruled that overseas military bases and service members are not automatically within the "jurisdiction" of the United States. *See, e.g.*, *United States v. Gatlin*, 216 F.3d 207, 209 (2d Cir. 2000) (holding that crime on U.S. military installation in Germany was outside the criminal jurisdiction of the United States), *abrogated on other grounds by United States v. Yousef*, 750 F.3d 254, 262-63 (2d Cir. 2014); *United States v. Green*, 654 F.3d 637, 644 (6th Cir. 2011) (noting that "general federal criminal statutes do not extend to [an army member's] conduct overseas").

For example, in *Gatlin*, the Second Circuit held that a civilian who committed a crime on an overseas U.S. military installation in Germany could not be prosecuted in federal court, because the court lacked jurisdiction over his case. *See Gatlin*, 216 F.3d at 209.[2]

In the civil context, federal courts have repeatedly held that certain civil laws do not reach conduct on overseas U.S. military bases because these bases are not within the "jurisdiction" of the United States. *See, e.g.*, *Marshall v. Exelis Systems*

---

[2] This does not mean that Americans who commit crimes on overseas military bases cannot be prosecuted by the United States. Active members of the military, such as Mr. Melzer, are subject to court-martial. In addition, non-military personnel who accompany the military overseas are subject to civilian criminal penalties under the Military Extraterritorial Jurisdiction Act, 18 U.S.C. § 3261. *See, e.g.*, *Green*, 654 F.3d at 641; *United States v. Williams*, 836 F.3d 1, 9 (D.C. Cir. 2016). Individuals are also obviously subject to prosecution under the laws of the country where the crime is committed.

*Corp.*, No. 13 Civ. 545, 2014 WL 1213473, at *3-7 (D. Col. 2014) (collecting cases holding that 42 U.S.C. § 1981, which applies "within the jurisdiction of the United States," does not reach overseas U.S. military bases); *Gulaid v. CH2M Hill, Inc.*, No. 15 Civ. 4824 (JST), 2016 WL 5673144, at *6 (N.D. Cal. Oct. 3, 2016) (same).

Accordingly, neither Mr. Melzer's status as a servicemember nor any allegation that conduct took place on an overseas military base brings this legally within the "jurisdiction" of the United States.

Section 956(a)'s explicit language limits its application to cases where certain critical conspiratorial conduct takes place within the United States. That is not alleged here, and Count Six must therefore be dismissed.

### C. Section 1114 does not apply extraterritoriality, meaning that Counts Three and Four should be dismissed.

Counts Three and Four charge Mr. Melzer with attempting and conspiring to murder U.S. service members, in violation of 18 U.S.C. §§ 1114 and 1117. Indictment ¶¶ 6-11. As with the indictment's other counts, these offenses are alleged to have taken place wholly overseas, outside "the jurisdiction of any particular State or district of the United States." Indictment ¶¶ 7, 11. The Court should find that § 1114 and § 1117 do not in fact apply extraterritorially and should dismiss these counts.

Section 1114 makes it a crime to

> kill[] or attempt[] to kill any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services) while such officer or employee is engaged in or on account of the performance of official duties, or any person assisting such an officer or employee in the performance of such duties or on account of that assistance.

18 U.S.C. § 1114.

9

Section 1117 criminalizes when "two or more persons conspire" to violate § 1114, "and one or more of such persons do any overt act to effect the object of the conspiracy."

First, Mr. Melzer recognizes that the Second Circuit has previously held that § 1114 and § 1117 apply extraterritorially. *See United States v. Al Kassar*, 660 F.3d 108, 118 (2d Cir. 2011); *see also United States v. Siddiqui*, 699 F.3d 690, 701 (2d Cir. 2012). But this holding was based on the Circuit's claim that the "presumption that ordinary acts of Congress do not apply extraterritorially … does not apply to criminal statutes" and that the extraterritorial application of a statute can be inferred from textual silence based on "the nature of the offense," *Al Kassar*, 660 F.3d at 118 (citing the Supreme Court's 1922 decision in *United States v. Bowman*, 260 U.S. 94 (1922)).

The Supreme Court has since rejected both of these assertions.[3] In *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090 (2016), the Supreme Court considered whether the substantive provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962, apply extraterritorially. *See* 136 S. Ct. at 2101. In doing so, the Court reaffirmed the strong presumption against

---

[3] At the time it was decided, *Al Kassar* also ignored then-recent Supreme Court precedent that disavowed the Second Circuit's prior test for extraterritoriality, the so-called conduct and effects test, which looked to whether wrongful conduct had a substantial effect in the United States or upon United States citizens. *See Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255-62 (2010). In *Morrison*, the Supreme Court reiterated the strong presumption against extraterritoriality and criticized the Second Circuit for attempting to "discern" Congress's intent from statutory silence. *See id.* ("[r]ather than guess anew in each case, we apply the presumption in all cases"). Both *Al Kassar* and *Siddiqui* seemingly rely on the old Second Circuit approach rejected in *Morrison*, and neither case cites or addresses *Morrison*.

extraterritoriality for both criminal and civil laws, and emphasized that any extraterritorial reach depends on the explicit authorization of Congress: "The question is not whether we think 'Congress would have wanted' a statute to apply to foreign conduct … but whether Congress has affirmatively and unmistakably instructed that the statute will do so." 136 S. Ct. at 2100. That is, extraterritoriality cannot be inferred from silence and does not depend on the nature of the offense—it must be affirmatively provided for by the statute. "When a statute gives no clear indication of an extraterritorial application, it has none." *RJR Nabisco, Inc.*, 136 S. Ct. at 2100 (quoting *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010)).

Since *RJR Nabisco*, the Second Circuit has repeatedly recognized, contra *Al Kassar*, that the presumption against extraterritoriality applies to criminal statutes. *See, e.g.*, *United States v. Hoskins*, 902 F.3d 69, 96-97 (2d Cir. 2018); *Epskamp*, 832 F.3d at 161-62; *see also* Julie Rose O'Sullivan, *The Extraterritorial Application of Federal Criminal Statutes: Analytical Roadmap, Normative Conclusions, and A Plea to Congress for Direction*, 106 Geo. L.J. 1021, 1027 (2018) (explaining that recent Supreme Court precedent makes clear that the presumption against extraterritoriality applies to criminal cases and that lower courts "rely on [United States v.] *Bowman* at their peril").

Considering current Supreme Court precedent, the D.C. Circuit recently held that § 1114 does not apply outside of the United States. *See United States v. Garcia Sota*, 948 F.3d 356, 357-58 (D.C. Cir. 2020). The circuit reasoned that, first, § 1114's statutory text "does not speak to extraterritorial application one way or the other,

thus leaving the presumption against extraterritoriality unrebutted." *Id.* at 358. Second, the context of the statute disfavors extraterritorial application: neighboring provisions explicitly apply outside of the United States and "Congress's explicit provision for extraterritorial jurisdiction in one provision (§ 1116) militates against inferring any such application for a closely related and nearby provision with no such signal (§ 1114)." *Id.* Third, the statute's legislative history suggests that it was not intended to apply outside of the U.S. *Id.* at 358-59. For all of these reasons, the D.C. Circuit held that § 1114 does not apply extraterritorially. *Id.* at 360.

The reasoning of the D.C. Circuit is persuasive and this Court should follow it. District courts are not bound by Second Circuit precedent that has been explicitly or implicitly overruled by intervening Supreme Court or circuit decisions. *See, e.g., In re S. Afr. Apartheid Litig.*, 15 F. Supp. 3d 454, 459 n.39 (S.D.N.Y. 2014) (collecting authorities). Today, Supreme Court and Second Circuit precedents are clear that the presumption against extraterritoriality applies to criminal statutes. *See, e.g., RJR Nabisco, Inc.*, 136 S. Ct. at 2100-01; *Hoskins*, 902 F.3d at 96-97. Section 1114 does not explicitly apply outside of the United States and there is nothing in the statutory text, context, or legislative history to overcome the presumption against the statute's foreign application.

Next, the related conspiracy provision, § 1117, can only apply outside of the United States to the extent that § 1114 does. *See, e.g., Hoskins*, 902 F.3d at 96. Generally, "the extraterritorial reach of an ancillary offense like aiding and abetting or conspiracy is coterminous with that of the underlying criminal statute." *Id.*

(quoting *United States v. Ali*, 718 F.3d 929 (D.C. Cir. 2013)). As a result, this Court should find that neither murder nor conspiracy to murder under §§ 1114 and 1117 apply extraterritorially.

Because all of Mr. Melzer's alleged conduct in violation of §§ 1114 and 1117, Counts Three and Four, took place outside of the United States, and these statutes do not apply overseas, Counts Three and Four should be dismissed.

### D. The Court should hold that § 2339A(a) only reaches extraterritorial conduct to the same extent as its predicate offenses.

Count Five charges Mr. Melzer with violating 18 U.S.C. § 2339A(a). That statute makes it a crime to provide material support in furtherance of certain enumerated federal offenses. Count Five specifically alleges that Mr. Melzer provided support to further violations of 18 U.S.C. §§ 956, 1114, and 2332. Indictment ¶ 13.

This Court should hold that § 2339A(a) only applies extraterritorially to the same extent as its predicate offenses.[4] In other words, it should find that a violation of § 2339A(a) predicated on § 2332 can be based on overseas conduct but, for the reasons described above, violations predicated on § 956 and § 1114 cannot. This would be consistent with how the Supreme Court and Second Circuit have addressed the extraterritoriality of similar offenses with criminal predicates. *See, e.g.*, *RJR Nabisco, Inc.*, 136 S. Ct. at 2102 (holding that RICO applies to foreign racketeering

---

[4] In a 2018 non-precedential, unpublished order, the Second Circuit stated that a 2001 amendment suggests that Congress intended to give § 2339A some extraterritorial reach. *See United States v. Mustafa*, 753 F. App'x 22, 30 (2d Cir. 2018) (summary order). The circuit declined to "decide the precise extent of that reach," because it reversed the defendant's § 2339A conviction on other grounds. *Id.*

activity only to the extent that the alleged predicates apply extraterritorially); *Siddiqui*, 699 F.3d at 701 (finding that the extraterritorial reach of 18 U.S.C. § 924(c) depends on the extraterritoriality of the underlying substantive crime).

## II.   Several counts of the indictment are improperly multiplicitous and should be dismissed.

The Fifth Amendment commands that no "person be subject for the same offense to be twice put in jeopardy." U.S. Const., amend. V. Among other things, the Double Jeopardy clause protects against multiple punishments for the same offense, except to the extent that cumulative punishments are clearly intended by the legislature. *See, e.g.*, *Whalen v. United States*, 445 U.S. 684, 688-89 (1980).

When a defendant is charged with violating multiple separate statutes, the protection against double jeopardy is implicated if the statutes prohibit the "same" offense. *See Aparicio v. Artuz*, 269 F.3d 78, 96 (2d Cir. 2001). To determine whether two charged offenses are the "same" for constitutional purposes, courts apply the so-called *Blockburger* test. *See Blockburger v. United States*, 284 U.S. 299, 304 (1932). Under this test, two offenses are distinct if "each [statutory] provision requires proof of a fact which the other does not." *Id.* at 304; *see also Rutledge v. United States*, 517 U.S. 292, 297 (1996).

"[S]eparate statutory crimes need not be identical either in constituent elements or in actual proof in order to be the same within the meaning" of this test. *Brown v. Ohio*, 432 U.S. 161, 164 (1977). For example, two offenses are the "same" for double jeopardy purposes if one is an included offense of the other, meaning that it requires no proof beyond that which is required for conviction of the greater offense.

14

*See, e.g., id.* at 166 (ruling that joyriding and auto theft are the "same" offense for double jeopardy purposes); *Rutledge*, 517 U.S. at 300 (holding that conspiracy conviction is lesser included offense of continuing criminal enterprise conviction, and therefore the same for double jeopardy purposes); *United States v. Peel*, 595 F.3d 763, 767 (7th Cir. 2010) (finding that bankruptcy fraud and obstruction of justice convictions were the same for double jeopardy purposes, because convicting the defendant "of obstruction of justice did not require proof of any fact that didn't have to be proved to convict him of bankruptcy fraud").

As a corollary to constitutional double jeopardy protections, the Federal Rules of Criminal Procedure provide for a motion to dismiss multiplicitous indictments. "An indictment is multiplicitous when it charges a single offense as an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed." *United States v. Chacko*, 169 F.3d 140, 145 (2d Cir. 1999); *see also United States v. Polizzi*, 257 F.R.D. 33, 36-37 (E.D.N.Y. 2009) ("'Multiplicity' occurs when a single offense is charged as several counts in a criminal indictment."). Per Rule 12(b)(3)(B)(ii), a defendant must move pretrial regarding multiplicitous counts.

Here Count Five, the material support charge, is multiplicitous of Counts One, Two, Three, Four, and Six. Specifically, to the extent that Count Five is predicated on statutes charged in these counts, the counts are included offenses of Count Five. This multiplicity problem is not surprising, given the government's efforts to charge redundant inchoate offenses based on the same facts. The government should not be permitted to pursue all of these multiplicitous counts against Mr. Melzer.

15

### A. All of the listed predicate offenses are multiplicitous with Count Five.

Based on one alleged course of conduct that spanned roughly two months, the government has charged Mr. Melzer with eight overlapping and redundant counts. Most, if not all, of these are inchoate offenses: each count charges Mr. Melzer with either an attempt or conspiracy and some, like Count Five, purport to charge Mr. Melzer with attempting to attempt or conspire.

Count Five charges Mr. Melzer with violating 18 U.S.C. § 2339A(a). The title of this section references the "material support" of "terrorists," which is how the law is sometimes colloquially referenced. But the text of the statute makes no mention of terrorism. Instead, this statute criminalizes providing (or attempting or conspiring to provide) "material support or resources" "knowing or intending" that such support or resources will be "used in preparation for, or in carrying out" any of several enumerated federal crimes. 18 U.S.C. § 2339A(a).

For purposes of this provision, "material support or resources" include, *inter alia*, "any property, tangible or intangible," any "service," "expert advice or assistance," or "personnel (1 or more individuals who may be or include oneself)." 18 U.S.C. § 2339A(b)(1).

Here the government has specified that Mr. Melzer provided "intangible property, services, expert advice or assistance, and personnel, including himself," knowing and intending that these resources would be used in a conspiracy to murder, in violation of 18 U.S.C. § 956; murder, in violation of 18 U.S.C. § 1114; and murder and conspiracy to murder, in violation of 18 U.S.C. § 2332.

The government has thus charged Count Five in a manner that renders it multiplicitous with several other counts in the indictment. To start with one example: in order to prove Count Five as predicated on a conspiracy to violate § 956, Indictment ¶ 13(a), the government must prove that a conspiracy to violate § 956 in fact existed, and that Mr. Melzer provided information or assistance or himself to that conspiracy, knowing and intending to aid the conspiracy. *See, e.g.*, *United States v. Sattar*, 395 F. Supp. 2d 79, 93 (S.D.N.Y. 2005) (listing elements of § 2339A offense predicated on § 956). But if the government proves those elements, it will necessarily also prove that Mr. Melzer violated § 956, as charged in Count Six: providing assistance to a murder conspiracy, knowing and intending to aid that conspiracy, is the same as joining the conspiracy. *Cf. Rutledge*, 517 U.S. at 298 (finding that acting "in concert" with others is the same as entering a conspiratorial agreement). There are no distinct facts that must be proven between Counts Five and Six, insofar as Count Five charges a § 2339A(a) offense whose object is the violation of § 956.

The same problem arises with the other predicate offenses charged in Count Five. If the government proves that Mr. Melzer provided information or assistance or himself, knowing and intending to aid in the murder of service members in violation of § 1114, Indictment ¶ 13(b), it will necessarily also prove that Mr. Melzer conspired and attempted to violate § 1114, as charged in Counts Three and Four.

Similarly, if the government proves the attempt offense charged in Count Four—meaning it shows that Mr. Melzer personally took a substantial step towards

murder in violation of § 1114—it will necessarily also have proven the material support offense predicated on § 1114, as charged in Count Five.

With respect to the final predicate offenses, if the government proves that Mr. Melzer provided information or assistance or himself, knowing and intending for such assistance to aid in the murder or conspiracy to murder U.S. nationals in violation of § 2332, Indictment ¶¶13(c)-(d), it will also necessarily prove that Mr. Melzer attempted and conspired to violate § 2332, as charged in Counts One and Two.

The problem here is similar to that addressed by the Supreme Court in a line of decisions dealing with double jeopardy challenges to felony-murder offenses. In *Whalen v. United States*, for example, the Court held that a defendant could not be prosecuted for felony murder predicated on a rape, and then separately for the rape: in order to prove the felony murder, a killing in the course of a rape, the government must necessarily prove all of the elements of the rape. *See* 445 U.S. 684, 694 (1980). These two offenses are thus the same for purposes of the *Blockburger* rule. *See id.*

So too here: if the government proves the material support charge in Count Five predicated on § 956 or § 1114 or § 2332, it will necessarily also prove all of the elements of the inchoate §§ 956, 1114, and 2332 offenses charged in Counts One, Two, Three, Four, and Six. In this way, the inchoate §§ 956, 1114, and 2332 offenses are

"included" offenses of the material support charge.[5] For this reason, Count Five is improperly multiplicitous with Counts One, Two, Three, Four, and Six.

There is yet another reason to find that Count Five is multiplicitous with Counts One, Two, Three, Four, and Six, which is something of the inverse of the problem discussed above: If the Government proves that Mr. Melzer committed any of the predicate offenses charged in Counts One, Two, Three, Four, and Six, it will also necessarily have proven that he provided material support in furtherance of them. To begin, the Government's theory is that Mr. Melzer played a central role in the object offenses. This is made explicit in the indictment, most obviously in the list of overt acts he allegedly personally committed, including communicating sensitive information to his alleged coconspirators to facilitate an attack on his Army unit. *See* Indictment ¶ 8. Accordingly, Count Five's "to wit" clause alleges that Mr. Melzer directly provided "intangible property, services, expert advice or assistance, and personnel, including himself" in furtherance of the object offenses. Indictment ¶ 13; *see also* 18 U.S.C. § 2339A(b)(1). That is, the information Mr. Melzer allegedly provided to his coconspirators constituted "intangible property, services, [and] expert advice or assistance," and Mr. Melzer himself constituted "personnel." On these allegations, then, Mr. Melzer could not possibly be guilty of any of the object offenses without also being guilty of the material support offense charged in Count Five.

---

[5] Legally, one offense can be an included offense of another regardless of the punishment each offense carries. *See, e.g.*, *Peel*, 595 F.3d at 767-68. This classification depends on the elements of the offense, not the applicable punishment. *Id.*

**B. The Court should exercise its discretion to require the government to elect which of these multiplicitous counts it will pursue at trial.**

If a defendant is convicted on multiplicitous counts, or one count that is a lesser included offense of another, a court must only enter judgment on one of the counts. *See, e.g.*, *Ball v. United States*, 470 U.S. 856, 864 (1985). Because this satisfies double jeopardy prohibitions against double punishment, a court is not obligated to dismiss multiplicitous counts at the indictment stage. *See United States v. Josephberg*, 459 F.3d 350, 355 (2d Cir. 2006).

Nevertheless, a district court has the discretion to require the government to proceed on only one of several multiplicitous counts. *See, e.g.*, *United States v. Reed*, 639 F.2d 896, 904 n.6 (2d Cir. 1981) ("The defendant may move to have the prosecution elect among the multiplicitous counts …. This is a matter for trial court discretion, and is most appropriate when the mere making of the charges would prejudice the defendant with the jury."); *United States v. Platter*, 514 F.3d 782, 786 (8th Cir. 2008) (recognizing trial court's discretion to require the government to elect between multiple counts of indictment); *United States v. Rivera*, No. 09 Cr. 619 (SJF), 2011 WL 1429125, at *4 (E.D.N.Y. Apr. 13, 2011) (same); *United States v. Kee*, No. 98 Cr. 778 (DLC), 2000 WL 863117, at *4 (S.D.N.Y. June 27, 2000) (requiring government to elect count). The Court should exercise that discretion here.

Multiplicitous counts in an indictment undermine the orderliness and efficiency of a trial, and "may improperly prejudice a jury by suggesting that a defendant has committed not one but several crimes." *Reed*, 639 F.2d at 904; *see also United States v. Johnson*, 130 F.3d 1420, 1426 (10th Cir. 1997) ("The risk of a trial

court not requiring pretrial election [between multiplicitous counts] is that it may falsely suggest to a jury that a defendant has committed not one but several crimes."). Such an indictment "creates an exaggerated impression of a defendant's criminal activity." *Polizzi*, 257 F.R.D. at 36.

As Judge Weinstein observed in *United States v. Polizzi*, when a case is "unduly expanded by extreme overindictment" the "serious prejudicial impact of a multiplicitous indictment … warrants concern over trial prejudice." 257 F.R.D. at 36. A severely multiplicitous indictment unduly prejudices a defendant by creating the impression of more criminal activity than actually occurred, diverting the jury's attention from a careful analysis of the facts at issue, and increasing the risk of a compromise verdict. *See id.* (citing *United States v. Clarridge*, 811 F. Supp. 697 (D.D.C. 1992)). It risks leading the jury to assume that "with so many charges pending the defendant must be guilty on at least some of them." *Id.* at 37.

All of these risks are present here. Mr. Melzer is charged with a series of redundant and repetitive counts that improperly suggest to the jury more criminal conduct than is actually alleged. This redundancy risks confusing the jury and distracting them from the important factual questions that should be their focus at trial. Based on the same discrete acts—disclosing information learned through his military service—Mr. Melzer is charged with three variants of conspiracy to commit murder (Counts One, Three, and Six); two variants of attempted murder (Counts Two and Four); another count of helping to conspire in or attempt murder (Count Five); and two nearly identical counts of unlawfully disclosing information (Counts Seven

and Eight). Even to the extent that some of these offenses do have certain separate elements, they have a significant overlap.

While Mr. Melzer's alleged conduct is serious, these redundant and repetitive charges overstate his alleged crimes in a way that is likely to confuse the issues and prejudice him at trial. This is exactly the sort of indictment that encourages a jury to convict based on the sheer number of charged offenses, and increases the risk of an improper compromise verdict. *See Polizzi*, 257 F.R.D. at 36-37. For this reason, the Court should exercise its discretion to prohibit the government from proceeding on Counts Five, One, Two, Three, Four, and Six as currently charged, and require the government to elect among these multiplicitous counts.

## III.   Counts One and Two must be dismissed because the government failed to comply with 18 U.S.C. § 2332(d).

Finally, the Court should dismiss Counts One and Two due to the government's failure to comply with the applicable statutory certification requirement.

Counts One and Two of the Indictment charge Mr. Melzer with violating 18 U.S.C. § 2332(b) by conspiring and attempting to murder United States nationals abroad. Section 2332(d) states:

> (d) Limitation on prosecution.--No prosecution for any offense described in this section shall be undertaken by the United States except on written certification of the Attorney General or the highest ranking subordinate of the Attorney General with responsibility for criminal prosecutions that, in the judgment of the certifying official, such offense was intended to coerce, intimidate, or retaliate against a government or a civilian population.

18 U.S.C. § 2332(d).

This provision requires the Attorney General to make a particular written certification before any prosecution can be brought under § 2332. Specifically, the Attorney General, or other authorized official, must make this written certification "either at the time of or before the filing of the first instrument charging a violation of § 2332." *United States v. Siddiqui*, 699 F.3d 690, 700 (2d Cir. 2012); *see also United States v. Hausa*, 258 F. Supp. 3d 265, 271-72 (E.D.N.Y. 2017). Congress intended § 2332(d)'s requirement to serve as a limitation on prosecutions under the statute. *See* H.R. Conf. Rep. 99-783 at 87.

The certification requirement is jurisdictional: statutes can only apply extraterritorially to the extent authorized by Congress, and Congress only authorized prosecutions under § 2332 when § 2332(d)'s requirement is met. *Cf. United States v. Doe*, 49 F.3d 859, 866 (2d Cir. 1995) (recognizing that a similarly-worded certification requirement in 18 U.S.C. § 5032 makes "[p]roper certification [] a prerequisite to federal jurisdiction"); *United States v. Wong*, 40 F.3d 1347, 1363 (2d Cir. 1994) (collecting cases holding that § 5032's certification requirement is jurisdictional); *see also Impounded*, 117 F.3d 730, 731 (3d Cir. 1997) (affirming that courts review the "form" of such certifications, but not the substance of the determination).

Here the government failed to meet this statutory certification requirement. During the February 22, 2021 conference, and in prior correspondence with the defense, the government disclaimed having any written certification. To date, the defense has not received any record of a written certification. By the government's own admission, therefore, it did not comply with the requirements of § 2332(d).

23

Nor can the government avoid dismissal by claiming that it obtained a non-written certification or that a written certification was later made. Congress used plain and unequivocal language requiring a "written" certification. And the Second Circuit has already held that this "straightforward statutory language" requires the Attorney General to make such certification "either at the time of or before the filing of the first instrument charging a violation of § 2332." *Siddiqui*, 699 F.3d at 700.

It is not the place of a court to condone or excuse prosecutorial actions that fail to comply with straightforward statutory requirements. Because the government did not meet the predicate statutory requirements to bring charges under § 2332, Counts One and Two of this Indictment must be dismissed.

## CONCLUSION

For the reasons detailed in this memorandum, the Court should grant Mr. Melzer's pretrial motions.

Dated:      New York, New York
            May 24, 2021

                                        Respectfully submitted,
                                        Federal Defenders of New York, Inc.

                              By:  /s/ Jennifer Willis_____
                                        Jennifer Willis, Esq.
                                        Jonathan Marvinny, Esq.
                                        Sarah Baumgartel, Esq.
                                        Anna Schneider, Esq.
                                        Attorneys for Ethan Phelan Melzer
                                        52 Duane Street, 10th Floor
                                        New York, New York 10007
                                        Tel.: (212) 417-8700