UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------

UNITED STATES OF AMERICA                    S1 20 Cr. 314 (GHW)

     - v. -

ETHAN PHELAN MELZER,

       *Defendant.*

--------------------------------------------------------


# REPLY IN FURTHER SUPPORT OF
# ETHAN PHELAN MELZER'S PRETRIAL MOTIONS


Federal Defenders of New York
52 Duane Street, 10th Floor
New York, New York 10007
Tel.: (212) 417-8700
Counsel for Ethan Phelan Melzer


To:   United States Attorney
      Southern District of New York
      One St. Andrew's Plaza
      New York, New York 10007

# Table of Contents

Table of Authorities ................................................................................................ i

Argument ........................................................................................................... 1

I.    Count Six should be dismissed. ....................................................................... 1

    A.    Mr. Melzer's motion is proper under Rule 12 because Count Six fails to adequately allege a violation of 18 U.S.C. § 956(a). ................... 1

    B.    Section 956 requires the government to prove formation of the conspiracy and at least one overt act within the borders of the United States. ....................................................................................... 3

    C.    This Court should reject the government's improper attempt to amend the indictment. .......................................................................... 10

II.    This Court should rule that §§ 1114 and 1117 do not apply extraterritorially and dismiss Counts Three and Four. ................................. 13

III.    The Court should require the government to pare its multiplicitous indictment to avoid juror confusion. ............................................................... 17

Conclusion ...................................................................................................... 22

# Table of Authorities

## Federal Cases

*Blockburger v. United States*, 284 U.S. 299 (1932) .................................................... 18

*Brown v. Ohio*, 432 U.S. 161 (1977) ............................................................................. 17

*Cruz-Miguel v. Holder*, 650 F.3d 189 (2d Cir. 2011) ...................................................... 5

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) ........................................... 12

*In re S. Afr. Apartheid Litig.*, 15 F. Supp. 3d 454 (S.D.N.Y. 2014) ............................ 13

*Mizrahi v. Gonzales*, 492 F.3d 156 (2d Cir. 2007) ...................................................... 18

*Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010) ........................ 15, 16

*N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886 (1982) .................................... 12

*Noto v. United States*, 367 U.S. 290 (1961) ................................................................ 12

*RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090 (2016) .................. 13, 15

*Russell v. United States*, 369 U.S. 749 (1962) .............................................................. 2

*Rutledge v. United States*, 517 U.S. 292 (1996) ......................................................... 17

*Stirone v. United States*, 361 U.S. 212 (1960) ............................................................ 11

*United States v. Al Kassar*, 660 F.3d 108 (2d Cir. 2011) ........................................... 13

*United States v. Alahmedalabdaloklah*, No. 12 Cr. 1263 (NVW), 2017 WL 2730978
    (D. Ariz. June 26, 2017) ................................................................................... 19, 20

*United States v. Aleynikov*, 676 F.3d 71 (2d Cir. 2012) ................................................ 2

*United States v. Al-Imam*, 373 F. Supp. 3d 247 (D.D.C. 2019) ................................ 14

*United States v. Amawi*, 695 F.3d 457 (6th Cir. 2012) ................................................. 6

*United States v. Bowman*, 260 U.S. 94 (1922) ........................................................... 13

*United States v. Chhun*, 744 F.3d 1110 (9th Cir. 2014) ............................................... 6

*United States v. Clarridge*, 811 F. Supp. 697 (D.D.C. 1992) .................................... 21

*United States v. D'Amelio*, 683 F.3d 412 (2d Cir. 2012) ............................................ 11

*United States v. Dervishaj*, 787 F. App'x 12 (2d Cir. 2019) ...................................... 21

*United States v. Elliott*, 266 F. Supp. 318 (S.D.N.Y. 1967) ........................................ 6

*United States v. Emmenegger*, 329 F. Supp. 2d 416 (S.D.N.Y. 2004) ...................... 13

*United States v. Epskamp*, 832 F.3d 154 (2d Cir. 2016) ........................................... 14

*United States v. Fernandez*, 559 F.3d 303 (5th Cir. 2009) .......................................... 6

*United States v. Garcia Sota*, 948 F.3d 356 (D.C. Cir. 2020) ................................... 14

*United States v. Gonzalez*, 686 F.3d 122 (2d Cir. 2012) .............................................. 2

*United States v. Hassan*, 742 F.3d 104 (4th Cir. 2014) ............................................... 6

*United States v. Hoskins*, 902 F.3d 69 (2d Cir. 2018) .......................................... 15, 16

*United States v. Hunter*, No. 13 Cr. 521 (RA), 2018 WL 4961453 (S.D.N.Y. Oct. 15,
    2018) ............................................................................................................................ 6

*United States v. Josephberg*, 459 F.3d 350 (2d Cir. 2006) ........................................ 21

*United States v. Leija-Sanchez*, 820 F.3d 899 (7th Cir. 2016) ............................... 8, 9

*United States v. Napout*, 963 F.3d 163 (2d Cir. 2020) ........................................ 14, 15

*United States v. Ojeda*, 951 F.3d 66 (2d Cir. 2020) .................................................. 18

*United States v. Peel*, 595 F.3d 763 (7th Cir. 2010) ................................................. 17

*United States v. Peltier*, 446 F.3d 911 (8th Cir. 2006) ............................................. 15

*United States v. Pirro*, 212 F.3d 86 (2d Cir. 2000) .................................................... 1

*United States v. Polizzi*, 257 F.R.D. 33 (E.D.N.Y. 2009) .......................................... 21

*United States v. Prado*, 933 F.3d 121 (2d Cir. 2019) ................................................. 9

*United States v. Rahman*, 189 F.3d 88 (2d Cir. 1999) .............................................. 12

*United States v. Robel*, 389 U.S. 258 (1967) ........................................................... 12

*United States v. Salad*, 907 F. Supp. 2d 743 (E.D. Va. 2012) .................................. 18

*United States v. Sattar*, 395 F. Supp. 2d 79 (S.D.N.Y. 2005) .................................. 18

*United States v. Siddiqui*, 699 F.3d 690 (2d Cir. 2012) ........................................... 13

*United States v. Wharton*, 320 F.3d 526 (5th Cir. 2003) ............................................ 6

*WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129 (2018) ...................... 15

## Federal Statutes

16 U.S.C. § 1538(a)(1) ................................................................................................. 5

18 U.S.C. § 1114 ................................................................................................. passim

18 U.S.C. § 1117 ................................................................................................. passim

18 U.S.C. § 16 .............................................................................................................. 4

18 U.S.C. § 2339A .............................................................................................. passim

18 U.S.C. § 2339B(a) ................................................................................................... 5

18 U.S.C. § 7 ................................................................................................................ 4

18 U.S.C. § 956 ................................................................................................... passim

46 U.S.C. § 70503(e) .................................................................................................... 5

54 U.S.C. § 100751(b) .................................................................................................. 5

## Other Authorities

142 Cong. Rec. S 2517 (1995) ..................................................................................... 8

## Rules

Fed. R. Crim. P. 12(b)(3)(B)(ii) ................................................................................. 21

Defendant Ethan Phelan Melzer submits this reply in further support of his Rule 12 motions to dismiss certain charges against him. For the reasons discussed below, the Court should grant these motions.

## Argument

## I. Count Six should be dismissed.

### A. Mr. Melzer's motion is proper under Rule 12 because Count Six fails to adequately allege a violation of 18 U.S.C. § 956(a).

As Mr. Melzer argued in his initial motion, the Court should dismiss Count Six, which charges a violation of 18 U.S.C. § 956(a).

The government attempts to cast Mr. Melzer's motion as a challenge to the sufficiency of the evidence. *See* Government Memorandum in Opposition to the Defendant's Pretrial Motions (Gov't Opp'n) 27–28. This is not correct. Mr. Melzer's motion assumed the truth of all of the indictment's factual allegations and averments, and was directed at the face of the indictment. At a minimum, a valid indictment must allege each element of a charged offense. *See, e.g.*, *United States v. Pirro*, 212 F.3d 86, 91–92 (2d Cir. 2000). In addition, "for an indictment to fulfill the functions of notifying the defendant of the charges against him and of assuring that he is tried on the matters considered by the grand jury, the indictment must state some fact specific enough to describe a particular criminal act, rather than a type of crime." *Id.* at 93. For this reason, it is not enough for an indictment to simply parrot the statutory language or generally describe an offense—it must include a "statement of the facts and circumstances as will inform the accused of the specific offense." *Id.* (quoting

*Russell v. United States*, 369 U.S. 749 (1962)) (upholding district court's dismissal of charge that failed to sufficiently allege tax offense); *see also United States v. Gonzalez*, 686 F.3d 122, 128 (2d Cir. 2012) (emphasizing that Federal Rule of Criminal Procedure 7(c)(1) requires an indictment to include both citation to the relevant statute and a statement "of the essential facts constituting the offense charged," and that these are "separate requirements").

Moreover, in order for an indictment to be legally sufficient, the stated facts must make out an offense under the applicable statute. *See, e.g.*, *United States v. Aleynikov*, 676 F.3d 71, 75 (2d Cir. 2012).

Count Six fails to meet this standard. Specifically, the count fails to allege that Mr. Melzer entered the charged § 956(a) conspiracy while physically in the United States, that the conspiracy was formed in the United States, or that any conspirator committed an overt act in furtherance of the conspiracy in the United States—all necessary elements of a § 956(a) violation.

The government's response raises one purely legal question that is appropriate for the Court to resolve at this stage: the parties disagree about the meaning of the phrase "within the jurisdiction of the United States" as used in § 956(a). As explained in Mr. Melzer's opening motion, in this particular statute, that phrase means physically within the borders of the United States.

In its opposition, the government argues that this phrase instead means something along the lines of "in any manner subject to the jurisdiction of the United States." It further argues that Mr. Melzer meets this standard, even though he was

in Italy, because he was "a U.S. soldier on a U.S. military base." Gov't Opp'n 28. For the reasons discussed in Mr. Melzer's opening brief and below, the government's interpretation is wrong.

In addition to this legal argument, the government's response includes factual proffers and arguments designed to supplement and expand upon the charges in the indictment. *See* Gov't Opp'n 28. Specifically, while the indictment charges a conspiracy between 2019 and 2020, entered while Mr. Melzer was stationed abroad in Italy, and involving Mr. Melzer's "disclos[ure] [of] classified U.S. Army information to members and associates of O9A to facilitate a deadly attack on his unit," Indictment ¶¶ 3, 5, 14–16, the government now asserts that Mr. Melzer first entered a § 956(a) conspiracy in 2015 or 2016 while living in the United States, by affiliating himself with O9A and joining the army, *see* Gov't Opp'n 32.

These government claims diverge significantly from the actual allegations in the indictment. This Court cannot authorize the government to proceed on this new and different § 956(a) charge—only a federal grand jury can do that. As a result, these proffers and arguments cannot save Count Six, and that count must be dismissed.

## B. Section 956 requires the government to prove formation of the conspiracy and at least one overt act within the borders of the United States.

Any question of statutory interpretation necessarily begins with the text. Section 956 reads as follows:

> Whoever, within the jurisdiction of the United States, conspires with one or more other persons, regardless of where such other person or persons are located, to commit at any place outside the United States an act that would

3

constitute the offense of murder, kidnapping, or maiming if committed in the special maritime and territorial jurisdiction of the United States shall, if any of the conspirators commits an act within the jurisdiction of the United States to effect any object of the conspiracy, be punished as provided in subsection (a)(2).

As the government concedes, the phrase "within the jurisdiction of the United States" is not specifically defined by statute, and neither the Supreme Court nor the Second Circuit has provided a definition. *See* Gov't Opp'n 25, 28.

Because the phrase is not defined, throughout its response, the government suggests that this Court substitute the statutory definition of a different phrase: the definition of "special maritime and territorial jurisdiction of the United States" found in 18 U.S.C. § 7. *See* Gov't Opp'n 25–26. The government characterizes this as an "example" of a definition of jurisdiction. *See id.* at 25. That is not an accurate legal statement. Section 7 contains a specific definition of a particular statutory phrase. But that is not the statutory phrase that this Court must interpret in § 956(a). The government's argument is tantamount to saying that if the Court needed to determine the definition of "crime" in one federal statute, it could simply use the definition of "crime of violence" contained in 18 U.S.C. § 16, since this is one example of a statutory definition of "crime." Obviously that argument is wrong.

Moreover, in § 956(a) the text makes plain that Congress did not intend "within the jurisdiction of the United States" to have the same meaning as the "special maritime and territorial jurisdiction of the United States." That latter phrase is specifically used in a different clause of the same provision. By using different words in two parts of the same statute, Congress made clear that it intended those words to

have different meanings. *See, e.g., Cruz-Miguel v. Holder*, 650 F.3d 189, 196 (2d Cir. 2011) (where Congress "uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended"). As a result, the text of § 956(a) leaves no doubt that Congress intended "within the jurisdiction" to mean something different from "the special maritime and territorial jurisdiction" of the United States.

For this reason, the government's argument that Mr. Melzer was within the "special maritime and territorial jurisdiction of the United States" as defined in § 7 because he was on a U.S. military base, Gov't Opp'n 26, 29, is simply beside the point. Section 956(a) uses a different statutory phrase.

Similarly, in arguing that § 956(a) reaches Mr. Melzer's conduct abroad because he was in the military, the government asks the Court to read "within the jurisdiction" as "subject to the jurisdiction" of the United States. *See* Gov't Opp'n 26 (arguing that Mr. Melzer is "subject to the jurisdiction of the United States" based on the Uniform Code of Military Justice); *id.* at 29. Again, however, "within" and "subject to" are different words. If Congress intended § 956(a) to reach all people "subject to" U.S. jurisdiction, it could have easily used those words—as it has in other statutes. *See, e.g.*, 16 U.S.C. § 1538(a)(1); 46 U.S.C. § 70503(e); 54 U.S.C. § 100751(b); 18 U.S.C. § 2339B(a) (2000 ed.). The fact that Congress used different words in § 956(a) shows that it intended a different meaning.

In sum, that Mr. Melzer was a member of the United States military and on a military base does not determine this issue. Mr. Melzer may be subject to various

United States laws and the military justice system. But in weighing the validity of Count Six, the question for this Court is the specific reach of § 956(a).

Turning to the actual language of that statute, research has not revealed any case that adopts the government's interpretation of § 956(a). On the contrary, the cases consistently read § 956(a) to require that the defendant be physically present within the borders of the United States when he enters the conspiracy, and for some co-conspirator to have committed an overt act within the physical borders of the United States. *See United States v. Chhun*, 744 F.3d 1110, 1114–16 (9th Cir. 2014) (conspiracy formed and overt acts in California, and court notes that § 956(a) is intended to "prevent people within the borders of the United States from plotting to commit murder in a foreign country"); *United States v. Hassan*, 742 F.3d 104, 115 (4th Cir. 2014) (conspiracy formed and overt acts in North Carolina); *United States v. Amawi*, 695 F.3d 457, 466 (6th Cir. 2012) (conspiracy formed and overt acts in Ohio); *United States v. Fernandez*, 559 F.3d 303, 325–28 (5th Cir. 2009) (conspiracy formed and overt acts during defendant's trip to Michigan and Texas); *United States v. Wharton*, 320 F.3d 526, 529–30 (5th Cir. 2003) (conspiracy formed and overt acts in Louisiana); *United States v. Hunter*, No. 13 Cr. 521 (RA), 2018 WL 4961453, at *2–3 (S.D.N.Y. Oct. 15, 2018) (requiring the jury to find defendant conspired while "physically present in the United States," and where evidence showed defendant entered conspiracy during trip to U.S.); *United States v. Elliott*, 266 F. Supp. 318, 322–23 (S.D.N.Y. 1967) (conspiracy formed in the United States, where court rejects

constitutional challenge to the statute because the government "has the power to prosecute conspirators for an agreement made within its borders").

The government complains that this specific issue may not have been raised in some of these cases, because the defendants entered the conspiracy while physically located in the United States. *See* Gov't Opp'n 30–31. But that only underscores the unprecedented nature of the charge here and the manner in which the government is now seeking to improperly expand the application of § 956(a).

In addition to finding support in case law, Mr. Melzer's interpretation of § 956(a) is consistent with the plain language of the statute, the statutory context, and the legislative history. The wording of § 956(a) is oriented towards the physical location of the defendant, his co-conspirators, the intended victims, and the crime itself. First, Congress specifies that the defendant must enter the conspiracy "within" the jurisdiction of the United States. Congress's choice of the word "within" (as opposed to a phrase such as "subject to") implies that Congress was indicating a location. Next, Congress clarifies that even though the conspiracy must be formed in the United States, co-conspirators may be located outside of the United States ("regardless of where such other person or persons are located"). Congress also specifies that the statute covers crimes intended to harm those outside the United States ("to commit at any place outside the United States"). Nonetheless, the statute ensures that the locus of the crime itself is the United States: § 956(a) punishes conspiracies and the crime of conspiracy involves (i) formation of the conspiracy and (ii) an overt act. Congress specifies that both critical components of the crime must

take place within the United States. Thus, the entire focus of the statutory text is locational, and it makes sense that "within the jurisdiction" would also relate to a location.

The legislative history also supports this reading of "within the jurisdiction." The government selectively quotes from one portion of the legislative record. *See* Gov't Opp'n 25 (quoting 142 Cong. Rec. S 2517 (1995)). However, that same statement continues that § 956(a) "is intended to ensure that the government is able to punish those persons who use the United States as a base in which to plot [] a crime to be carried out outside the jurisdiction of the United States" and that it would apply to conspiracies "where at least one of the conspirators is inside the United States," and at least one overt act in furtherance of the conspiracy is "undertaken by one co-conspirator while in the United States" and "committed in the United States." *See* 142 Cong. Rec. S 2517 (1995). In other words, the legislative history strongly suggests that "within the jurisdiction" of the United States means within the physical borders of the United States, as Mr. Melzer argues.

Finally, to the extent that there is any ambiguity in this phrase, the rule of lenity counsels that the ambiguity must be construed in favor of a criminal defendant. If the meaning of "within the jurisdiction" is not clear, that phrase should not be read expansively to encompass criminal liability for Mr. Melzer.

On this point, *United States v. Leija-Sanchez*, 820 F.3d 899 (7th Cir. 2016), is instructive. In that case, two defendants were charged with violating § 956(a) for a murder conspiracy entered while they were in Mexico. The defendants had not raised

8

any objection to their prosecution under § 956 in the district court. *See* 820 F.3d at 902. The Seventh Circuit thus applied a plain error analysis, and concluded that the § 956 convictions could not have affected the fairness or integrity of the proceedings: "the § 956 convictions do not add to [the defendants'] imprisonment" because the defendants were sentenced to natural-life sentences for other counts of conviction. *See id.* As a result, the circuit declined to decide the exact meaning of "jurisdiction" in § 956, or whether the statute was properly applied to these defendants.

Nonetheless, Judge Easterbrook, writing for the circuit, took the opportunity to comment on the government's proposed definition of "jurisdiction"—the same definition the government asks this Court to adopt:

> The Supreme Court has remarked that 'jurisdiction ... is a word of many, too many, meanings.' ... The prosecutor's understanding of 'jurisdiction' would make that word surplus, because every federal criminal statute applies only if the United States has prescriptive authority and the district court has subject-matter jurisdiction ... [U]sing a word such as 'jurisdiction' without a definition or cross-reference begs for trouble. ... A court would be sorely tempted to invoke the Rule of Lenity and hold that ambiguity must be resolved in favor of the accused.

*Leija-Sanchez*, 820 F.3d at 901–02 (internal citations omitted).

Contrary to the government's suggestion, Gov't Opp'n 28, in the legal realm, "jurisdiction" is not a word with some single "ordinary," "natural" meaning. It is a "chameleon word," *United States v. Prado*, 933 F.3d 121, 132 (2d Cir. 2019), that has different possible meanings, depending on its use and context.

Here the text, context, legislative history, and interpretative case law of § 956(a) show that "within the jurisdiction" of the United States means physically

within the borders of the United States. At best for the government, the phrase is ambiguous. In either case, the Court cannot read the phrase to apply to Mr. Melzer's overseas conduct, and Count Six should be dismissed.

### C. This Court should reject the government's improper attempt to amend the indictment.

If this Court reads § 956(a) to require that Mr. Melzer conspired while in the United States, the government alternatively argues that it will prove that Mr. Melzer entered a conspiracy and committed overt acts in the United States before deploying to Italy. *See* Gov't Opp'n 31. In particular, the government asserts that it will show that Mr. Melzer joined a criminal conspiracy to violate § 956(a) by (i) "self-initiat[ing]" and affiliating with the Order of the Nine Angles starting around 2015 or 2016, Gov't Opp'n 32, and (ii) then enlisting in the army in 2018, *id.* at 5; *see also id.* at 32 (noting Mr. Melzer admitted that he "joined O9A while he was in the United States prior to joining the military" and that these "decisions to join O9A and the military are sufficient to establish that [Mr. Melzer] joined the [§ 956(a)] conspiracy").[1]

_____

[1] The government's assertions about Mr. Melzer's pre-2019 conduct and views are apparently based on Mr. Melzer's own statements in later 2019 and 2020 online chats. *See* Gov't Opp'n 4–5. The government does not identify any purported co-conspirators who agreed and worked with Mr. Melzer in 2015, 2016, 2017, 2018, or 2019. The government similarly does not describe any specific criminal plot that Mr. Melzer allegedly joined prior to 2020. In both the government's response and the charging documents in this case, Mr. Melzer's first reported contact with an alleged co-conspirator is in April 2020 ("CC-1"). Gov't Opp'n 1. The government has identified this individual as a teenager living in Canada. *Id.* at 4, n.2.

There are several problems with this argument. First and foremost, none of this alleged conduct prior to 2019 is charged in the indictment. To determine whether the allegations in an indictment are legally sufficient, an "indictment must be considered as it was actually drawn, not as it might have been drawn." *Pirro*, 212 F.3d at 92. This is because "[u]nder the Fifth Amendment, a defendant has a 'substantial right to be tried only on charges presented in an indictment returned by a grand jury.'" *United States v. Gonzalez*, 686 F.3d 122, 127 (2d Cir. 2012) (quoting *United States v. Miller*, 471 U.S. 130 (1985)).

All of the counts of the indictment, including Count Six, allege an offense "begun and committed" from 2019 to 2020, outside any state or district of the United States, while Mr. Melzer was in Italy. In particular, all of the charges center on Mr. Melzer's online chats and the disclosure of classified information in May 2020. Nothing in the indictment could be read to allege an offense before Mr. Melzer joined the army, while he was in the United States. Certainly nothing in the indictment alleges that Mr. Melzer acted criminally between 2015 to 2018, while he was a teenager, or in Job Corps, or before he enlisted in the army. It would therefore constitute an improper constructive amendment to the indictment, and a violation of Mr. Melzer's Fifth Amendment rights, to permit the government to attempt to prove the current charges with these facts. *See, e.g.*, *Stirone v. United States*, 361 U.S. 212, 218 (1960); *United States v. D'Amelio*, 683 F.3d 412, 416 (2d Cir. 2012).

Further, if the Court endorsed this government theory, § 956(a) would violate the First Amendment. The First Amendment protects individuals' rights to freedom

11

of speech and freedom of association. *See, e.g.*, *United States v. Robel*, 389 U.S. 258, 264 (1967) (describing these as among our most "cherished" ideals). "[T]he state may not criminalize the expression of views …." *United States v. Rahman*, 189 F.3d 88, 115 (2d Cir. 1999). Nor may it criminalize association with a group, even if some members of that group advocate or engage in illegal activities. *See, e.g.*, *N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 908 (1982); *Noto v. United States*, 367 U.S. 290, 299 (1961).

It is not at all clear how organized O9A is, or what it means to "join" or "self-initiate" into O9A. O9A has not been designated by the United States as a terrorist organization. But even if it had been, merely associating with an organization, or endorsing that organization's views, cannot be criminalized without running afoul of the First Amendment. For example, in *Holder v. Humanitarian Law Project*, the Supreme Court found that 18 U.S.C. § 2339B did not violate the First Amendment specifically because it did not criminalize being a member of a designated terrorist organization, or even "vigorously promoting and supporting the political goals of the group." *See* 561 U.S. 1, 26, 39 (2010); *see also Robel*, 389 U.S. at 260–61 (invalidating law that banned Communist organization members from employment at defense facilities as unconstitutional infringement on First Amendment right of association).

Without more, it is not criminal to join a group, or believe in and endorse its views. Mr. Melzer's alleged decision to "become a follower of O9A" prior to 2018, Gov't Opp'n 4, is not a crime. It is certainly not the specific offense of conspiring to murder,

12

kidnap, or maim individuals outside of the United States in violation of § 956(a), as charged in Count Six of this indictment.

## II.   This Court should rule that §§ 1114 and 1117 do not apply extraterritorially and dismiss Counts Three and Four.

The government is wrong that *United States v. Al Kassar*, 660 F.3d 108 (2d Cir. 2011), and *United States v. Siddiqui*, 699 F.3d 690 (2d Cir. 2012), foreclose Mr. Melzer's claim that §§ 1114 and 1117 do not apply extraterritorially. Gov't Opp'n 35. Those decisions do not bind this Court because subsequent Supreme Court decisions, including *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090 (2016), have significantly undermined them. *See, e.g., In re S. Afr. Apartheid Litig.*, 15 F. Supp. 3d 454, 459 n.39 (S.D.N.Y. 2014) (collecting cases and finding that district courts are not bound by Second Circuit decisions that have been called into question or seen their rationales implicitly overruled by intervening Supreme Court decisions); *United States v. Emmenegger*, 329 F. Supp. 2d 416, 429 (S.D.N.Y. 2004) (district courts must follow Second Circuit precedent unless a subsequent Supreme Court decision "so undermines it that it will almost inevitably be overruled by the Second Circuit").

*RJR Nabisco*'s holding that a criminal statute applies extraterritorially only where "Congress has affirmatively and unmistakably instructed that the statute will do so," 136 S. Ct. at 2100, was a clear rejection of the Second Circuit's then-held view that the presumption against extraterritoriality does not apply to criminal statutes and that a statute's extraterritorial reach must be inferred from the "nature of the offense," *see, e.g., Al Kassar*, 660 F.3d at 118 (citing *United States v. Bowman*, 260 U.S. 94, 98 (1922)). As the D.C. Circuit recently observed when holding that § 1114

does not apply extraterritorially, *Al Kassar* and *Siddiqui* did not "grapple[] with the Supreme Court's recent admonitions regarding the presumption against extraterritoriality." *United States v. Garcia Sota*, 948 F.3d 356, 360 (D.C. Cir. 2020). They accordingly do not bind this Court.

The government is similarly wrong that *Bowman* and its focus on the nature of the offense should guide this Court's extraterritoriality analysis. Gov't Opp'n 36–37. Though *Bowman* may remain binding on lower courts, it at a minimum "sits uneasily" with recent Supreme Court jurisprudence. *United States v. Al-Imam*, 373 F. Supp. 3d 247, 257 (D.D.C. 2019). In the Second Circuit in particular *Bowman* plays such a diminishing role in extraterritoriality analysis that it is virtually a dead letter. The leading Second Circuit case on the extraterritoriality of criminal statutes in recent years, *United States v. Epskamp*, 832 F.3d 154 (2d Cir. 2016), did not even reference *Bowman*, much less rely on its nature-of-the-offense analysis. *Epskamp* instead held that the presumption against extraterritoriality applies fully to criminal statutes and that whether it has been rebutted is a matter of statutory construction, *not* an inquiry into the offense's nature. 832 F.3d at 162 ("[W]hether Congress evinces an intent for [a criminal] law to apply extraterritorially is [] a question of statutory interpretation."). Second Circuit decisions addressing extraterritoriality in the criminal context since *Epskamp* have followed its interpretive framework. *See, e.g.*, *United States v. Napout*, 963 F.3d 163, 178 (2d Cir. 2020) (holding that extraterritoriality turns on "whether the statute gives a clear, affirmative indication that it applies extraterritorially") (internal quotation marks omitted); *United States*

*v. Hoskins*, 902 F.3d 69, 95 (2d Cir. 2018) (same). The government's reliance on *Bowman* is therefore misplaced.

The government's claim that there is a "sufficient domestic nexus" to salvage Counts Three and Four is also incorrect. Gov't Opp'n 37–38. When a statute does not apply extraterritorially, courts then ask whether the case involves a permissible domestic application of the statute, which turns on the statute's "focus." *Napout*, 963 F.3d at 178 (citing *RJR Nabisco*, 136 S. Ct. at 2101). "The focus of a statute is 'the object of its solicitude,' which can include the conduct it 'seeks to regulate,' as well as the parties and interests it 'seeks to protect' or vindicate." *WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2137 (2018) (quoting *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 267 (2010)). "If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad; but if the conduct relevant to the focus occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory." *RJR Nabisco*, 136 S. Ct. at 2101.

The focus of § 1114 ("Protection of officers and employees of the United States") is protecting U.S. officers and employees, including service members, from being killed while engaged in official duties. *See United States v. Peltier*, 446 F.3d 911, 914 (8th Cir. 2006) ("In recognition of the interest of the United States in protecting federal functions, § 1114 criminalizes the killing of federal officers engaged in the

performance of their official duties."). That specific protection is the core of the statute, the "object[] of its solicitude." *Morrison*, 561 U.S. at 267.

Here, all of the conduct relevant to § 1114's focus occurred abroad. Count Four's "to wit" clause identifies the gravamen of the offense as Mr. Melzer's "disclos[ing] classified U.S. Army information to members and associates of 09A to facilitate a deadly attack on his unit." Indictment ¶ 11. That unit—comprised of the U.S. officers and employees engaged in official duties whom the statute would seek to protect—was stationed in Italy, and was preparing to deploy to Turkey. And Mr. Melzer himself was in Italy when he allegedly disclosed the classified information. That is, per the indictment, all of Mr. Melzer's relevant actions occurred abroad, and his intended victims were located abroad; this precludes a finding that his case involves a permissible domestic application of §§ 1114 and 1117.[2] The mere fact that some of his communications might have reached someone in the U.S. is far too incidental, without more, to change this analysis. *See Morrison*, 561 U.S. at 266 ("[I]t is a rare case of prohibited extraterritorial application that lacks *all* contact with the territory of the United States.") (emphasis in original). The Court should dismiss Counts Three and Four.

---

[2] "Generally, the extraterritorial reach of an ancillary offense such as conspiracy is coterminous with that of the underlying criminal statute." *Hoskins*, 902 F.3d at 96 (cleaned up).

### III.  The Court should require the government to pare its multiplicitous indictment to avoid juror confusion.

The government is wrong that Counts One through Six are not multiplicitous of each other. The government suggests that if any two offenses have different elements they cannot be multiplicitous. *See, e.g.*, Gov't Opp'n 44 (arguing no multiplicity because each of the predicate offenses in Counts One, Two, Three, Four, and Six "requires proof of an element not required by Count Five"). Not so. "[S]eparate statutory crimes need not be identical either in constituent elements or in actual proof in order to be the same within the meaning" of the *Blockburger* test. *Brown v. Ohio*, 432 U.S. 161, 164 (1977).

Courts routinely find counts multiplicitous even where their elements are numbered, structured, and worded differently. Here are just some examples. In *Rutledge v. United States*, the Supreme Court held that a continuing criminal enterprise offense was multiplicitous with a conspiracy offense despite that the former required that a defendant act "in concert" with another, whereas the latter required proof of an actual agreement among the parties. 517 U.S. 292, 298 (1996). In *United States v. Peel*, the Seventh Circuit held that bankruptcy fraud and obstruction of justice were multiplicitous despite their differing elements where "convicting Peel of obstruction of justice did not require proof of any fact that didn't have to be proved to convict him of bankruptcy fraud." 595 F.3d 763, 767 (7th Cir. 2010). And in *United States v. Salad*, the district court found that hostage taking and kidnapping are multiplicitous where their elements, though structured and phrased differently, nevertheless "impermissibly overlap." 907 F. Supp. 2d 743, 750 (E.D. Va.

17

2012). Multiplicity thus turns not on the number or wording of the various elements, but on "whether each [offense] requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932).

Here, Counts One through Six are multiplicitous. The government cannot dispute that, on the allegations in the indictment, there is no way Mr. Melzer can have committed § 2339A as charged in Count Five without also necessarily having committed its predicate inchoate offenses.[3] As shown in Mr. Melzer's opening papers, for example, to convict him of having provided material support for the § 956(a) conspiracy charged in Count Six, the government must prove that (1) the § 956(a) conspiracy existed; (2) Mr. Melzer provided material support to that conspiracy; and (3) he did so knowing or intending that he would aid the conspiracy. *United States v. Sattar*, 395 F. Supp. 2d 79, 93 (S.D.N.Y. 2005).[4] But if the government successfully proves those elements, it will also necessarily have proven that he participated in the

---

[3] All of the offenses charged in Counts One, Two, Three, Four, and Six are inchoate in that they charge either conspiracies or attempts. *See United States v. Ojeda*, 951 F.3d 66, 75 (2d Cir. 2020) (describing attempts and conspiracies as inchoate crimes); *Mizrahi v. Gonzales*, 492 F.3d 156, 160 (2d Cir. 2007) ("The law generally recognizes three inchoate crimes: conspiracy, attempt, and solicitation."). The government is incorrect to categorize only conspiracies, but not attempts, as inchoate. *See* Gov't Opp'n 43.

[4] The government relies on out-of-circuit cases to argue that it need not prove that the inchoate offenses charged in Counts One, Two, Three, Four, and Six actually occurred in order to prove that Mr. Melzer violated § 2339A, Gov't Opp'n 43–44, but does not address in-circuit cases like *Sattar*.

18

underlying § 956(a) conspiracy, which is sufficient to convict him of Count Six. So too for the other predicate offenses.

Conversely, if the government proves that Mr. Melzer is guilty of any of the charged predicate offenses of § 2339A, it will also necessarily have proven that he is guilty of Count Five. This is because the indictment alleges that Mr. Melzer played a central role in each of the crimes, and was himself among the material support he provided to further them—he thus cannot have committed any predicate offense without necessarily having "provided" himself to do so.

Given these facts, the government has not even attempted to identify a way that Mr. Melzer might have violated Count Five without also having violated its predicate offenses, or vice versa. The Court should thus compel the government to elect the counts on which it will proceed to avoid a grave risk of juror confusion.

The need to pare the indictment is particularly acute here given that § 2339A is charged in furtherance of only inchoate offenses. *See* n.3, *supra.* At least one court has identified the potential problems in submitting for the jury's consideration a § 2339A count in such circumstances. In *United States v. Alahmedalabdaloklah*, the court noted that § 2339A is a "poor[] fit" with certain conspiracy offenses because such offenses—"thought crime[s] of shared understanding"—are "not open to prefatory crimes." No. 12 Cr. 1263 (NVW), 2017 WL 2730978, at *2 (D. Ariz. June 26, 2017). In considering charging the jury on a § 2339A offense in furtherance of a § 2332(b) conspiracy, the court wrote:

> This Court finds no authority for crimes of attempting to conspire, conspiring to conspire, intending to conspire, or aiding and abetting a conspiracy to come

into existence. The [jury instructions] would literally say 'in preparation for, or in carrying out' the formation of a non-existent agreement. To be sure, a conspirator himself can be said to 'carry out' the formation of a conspiracy, but only by making himself guilty of conspiring. It would mean 'attempts or conspires' to provide material support to the formation of a future agreement. That would be conspiring to conspire.

*Id.* This, the court warned, "threatens to be unintelligible. … It would be a gross imposition on a jury to charge them with the fate of an accused based on jibberish." *Id.* at *3.

The risk of juror confusion identified in *Alahmedalabdaloklah* applies with great force to the indictment in this case, which, absent a paring of the charges, will necessitate a set of jury instructions that even trained lawyers would struggle to understand. To take just one example, the operative offense charged in Count Three—conspiracy under § 1117—is *not* an enumerated offense of § 2339A, but the object of Count Three's conspiracy offense—murder under § 1114—*is*.[5] The jury will thus have to be instructed as to this distinction to ensure that it does not convict Mr. Melzer of providing material support for the conspiracy offense in Count Three, while allowing that it may convict him of providing material support for the offense in Count Four, which is the attempt offense of the Count Three conspiracy's object murder offense. The jury will likely have a very difficult time following such convoluted instructions.

---

[5] The government is thus incorrect that Count Three may serve as a valid predicate to Count Five. Gov't Opp'n 3.

20

This Court should thus address the indictment's multiplicity problem before trial. While the government is correct that *United States v. Josephberg*, 459 F.3d 350, 355 (2d Cir. 2006), authorizes courts to reserve decision on multiplicity claims until after trial, Gov't Opp'n 39, the government does not deny that this Court nevertheless retains discretion to require the prosecution to make a pre-trial election as to the Counts it will pursue. Nor could it. Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(ii), a defendant is *required* to raise a multiplicity argument before trial "if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits," precisely so that the Court may cure the problem before trial begins. *See United States v. Dervishaj*, 787 F. App'x 12, 15 (2d Cir. 2019) (multiplicity argument waived where defendant failed to raise it by pretrial motion).

Submitting this multiplicitous indictment to the jury would do exactly what the late Judge Weinstein warned against in *United States v. Polizzi*, 257 F.R.D. 33, 36 (E.D.N.Y. 2009), in that it would create "an exaggerated impression of [Mr. Melzer's] criminal activity." "Once such a message is conveyed to the jury, the risk increases that the jury will be diverted from a careful analysis of the conduct at issue." *United States v. Clarridge*, 811 F. Supp. 697, 702 (D.D.C. 1992) (cleaned up). Accordingly, the Court should exercise its discretion to require the government to elect the counts it will pursue at trial.

**Conclusion**

The Court should grant Mr. Melzer's pretrial motions.

Dated:      New York, New York
             July 7, 2021

                                    Respectfully submitted,

                                    Federal Defenders of New York, Inc.

                                    /s/_____
                                    Jennifer Willis, Esq.
                                    Jonathan Marvinny, Esq.
                                    Sarah Baumgartel, Esq.
                                    Anna Schneider, Esq.
                                    Attorneys for Ethan Phelan Melzer
                                    52 Duane Street, 10th Floor
                                    New York, New York 10007
                                    Tel.: (212) 417-8700