

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 22, 2021

**BY ECF and EMAIL**

Honorable Gregory H. Woods
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

        Re:    *United States* v. *Ethan Phelan Melzer*, S1 20 Cr. 314 (GHW)

Dear Judge Woods:

       The Government respectfully submits this letter in response to the defendant's letter, which cites Judge Torres's decision in *United States v. Scott*, 2021 WL 2643819 (S.D.N.Y. June 28, 2021) in support of his argument that the indictment should be dismissed because of an alleged Fifth Amendment violation. *See* 20 Cr. 314 (GHW), ECF No. 73. Judge Torres's decision is incorrect and should not be followed. Instead, this Court should reject the defendant's argument, just as Judges Crotty, Oetken, Failla and Marrero did in response to identical claims.

       By way of background, and as noted in the Government's prior briefing (Gov't Br. at 9, 28), "[t]o succeed on a Fifth Amendment equal protection challenge to a criminal jury selection system, the defendant must establish that (1) there is a cognizable group, (2) that is substantially underrepresented by reason of (3) a selection procedure that is not racially neutral, i.e., is the result of intentional discrimination by the District." *United States v. Rioux*, 97 F.3d 648, 659 (2d Cir. 1996).

       Here, the defendant has argued that his rights under the Equal Protection Clause of the Fifth Amendment were violated because of underrepresentation of certain minority groups in the pool from which the White Plains-based grand jury that indicted him was drawn. (See Def. Br. at 5, 6). Numerous defendants in this District have filed identical claims in recent months. Until *Scott*, such claims had been uniformly rejected. *See, e.g.*, *United States v. Charles*, 2021 WL 2457139, at *6 (S.D.N.Y. June 16, 2021) (Marrero, J.); *United States v. Segovia-Landa*, 2021 WL 1966117, at *3 (S.D.N.Y. May 12, 2021) (Oetken, J.); *United States v. Schulte*, 2021 WL 1146094, at *3 (S.D.N.Y. Mar. 24, 2021) (Crotty, J.); *United States v. Balde*, 20 Cr. 281 (KPF) (S.D.N.Y. May 17, 2021) (Failla, J.) (transcript of oral decision attached as Exhibit A); see also *United States v. Allen*, 20 Cr. 336 (NSR), 2021 WL 431458, at *11 (S.D.N.Y. Feb. 8, 2021) (Roman, J.) (rejecting similar claim).

In Scott, Judge Torres employed standard deviation analysis to conclude that there was substantial underrepresentation of Black and Latinx people in the White Plains Qualified Wheel. *Scott*, 2021 WL 2643819, at *11-12. She then reviewed the potential causes of such underrepresentation, finding that most were racially neutral but, as relevant here, one alleged cause was not: "the Government's exercise of its unfettered authority to opt to present the Defendant's case to a grand jury drawn from an unrepresentative White Plains Division wheel." *Id*. at *13. Judge Torres did not explain how the prosecutor's decision as to where to seek an indictment constituted a part of the "jury selection process." But she found that this was "susceptible to abuse," leading her to presume intentional racial discrimination "based on the Government's decision-making process." *Id*. Judge Torres then found that the Government had failed to rebut that presumption by explaining the race-neutral reasons for its decision where to indict. *Id*. at *14.

Judge Torres's decision is wrong and should not be followed, for several reasons.

*First*, Judge Torres erroneously concluded that the Government's decision where to seek an indictment is "a jury selection process." *Id*. at *13. It manifestly is not. In this District, grand jury venires are selected pursuant to a plan that was adopted by the judges of this Court and is administered by courthouse personnel. (*See* Gov't Br. at 13). As noted, to establish a Fifth Amendment equal protection challenge to a criminal jury selection system, the defendant must establish that there is "a selection procedure that is not racially neutral, i.e., is the result of intentional discrimination by the District." *Rioux*, 97 F.3d at 659 (emphasis added). Thus, the other judges to have considered and rejected this argument have properly recognized that the focus is on the operation of the District's jury plan. *See*, *e.g.*, Balde, Tr. 29 (finding that defendant has "not shown how the jury plan might itself potentially be susceptible to abuse" (emphasis added)); *Schulte*, 2021 WL 1146094, at *3 ("[T]he Court will not assume or infer that this District has been operating under an intentionally discriminatory Jury Plan since 2009." (emphasis in original)); *Segovia-Landa*, 2021 WL 1966117, at *3 (same). Once the Jury Plan has been carried out and venires are selected, the Government's subsequent decision to seek an indictment in a particular courthouse has no bearing whatsoever on the already-completed process of selecting the grand jury sitting in that courthouse.

Judge Torres nevertheless found that the Government's decision can be considered part of the jury selection process, because of the nature of a Fifth Amendment claim. Her analysis misstates the law, asserting that "the issue is whether, when selecting a jury, the Government intended to discriminate by keeping out members of that [cognizable] group." *Scott*, 2021 WL 2643819, at *13 (emphasis added). There are two errors in that sentence. First, it confuses what it means to "select[] a jury." The Government's choice as to which grand jury among multiple, already empaneled juries, might colloquially be described as "selecting a jury," but it is not "jury selection" in the sense relevant here. Jury selection is the process by which a jury is empaneled— a process carried out according to the District's Jury Plan. *See Rioux*, 97 F.3d at 659 (defendant must establish that there is "a selection procedure" which is the result of intentional discrimination "by the District"). Second, the question is not whether "the Government," i.e., prosecutors,

intended to discriminate, but rather whether there was intentional discrimination "by the District," which is the entity that carries out jury selection. *Id*. (emphasis added).

For her erroneous proposition, Judge Torres cites (but does not quote) *Alston v. Manson*, 791 F.2d 255 (2d Cir. 1986), but that case concerned a challenge to a statutory quota system for jury selection, not any action by prosecutors. Similarly, her comparison of this case to the "key-man system" in *Castaneda v. Partida*, 430 U.S. 482 (1977) is inapt, because the key-man system was a process by which juries were in fact selected by the court and court-appointed commissioners. Whatever method might be available to challenge the Government's exercise of its discretion where to seek an indictment, a claim directed at the jury selection process is not it. As such, Judge Torres erred by considering the Government's decision-making process under this rubric.

*Second*, Judge Torres's opinion clearly misunderstands the purpose and effect of the standard deviation analysis that it employs. She credits a defense affidavit stating that the underrepresentation of either Blacks or Latinx individuals on the White Plains Qualified Wheel is more than three standard deviations from the White Plains Division population, and says this shows that the disparity is not the product of random chance, thus giving rise to a presumption of intentional racial discrimination. *Scott*, 2021 WL 2643819, at *11. But the Government has never contended that the disparity is the product of random chance. To the contrary, it has painstakingly documented the various aspects of the jury selection process which give rise to that disparity, including the user of voter registration lists, exclusion of inactive voters from certain counties, and refilling the master wheel every four years. (Siskin Report ¶¶ 24-38).

Judge Torres agrees that these are benign, race neutral explanations. *Scott*, 2021 WL 2643819, at *11-*12. But she then erroneously turns her focus to the Government's decision to seek an indictment in White Plains. As noted, however, that prosecutorial decision has nothing to do with the process by which the White Plains grand jury is empaneled, and thus plays no role whatsoever in creating the non-random disparity which Judge Torres seeks to explain. Her analysis thus relies on a disparity that undisputedly is not caused by any prosecutorial action to infer intentional racial discrimination by prosecutors. That makes no sense.

*Third*, Judge Torres erred by finding that the Government failed to rebut any presumption of discriminatory purpose. As an initial matter, even if statistical analysis properly gave rise to an presumption of discrimination, it would be a presumption of discrimination in the operation of the jury plan. Accordingly, the presumption would be rebutted not by evidence of the prosecutor's motives, but rather of the non-discriminatory nature of the jury plan itself. *See, e.g., Charles*, 2021 WL 2457139, at *6 (finding that Government's expert report analyzing causes of disparity rebutted any presumption); *Balde*, Tr. at 29 (finding that causes of disparity in operation of plan are "facially race-neutral" and that defendant had not shown how "the jury plan might itself potentially be susceptible to abuse").

In any event, even if the prosecutor's motives in seeking an indictment in White Plains were relevant, the Government sufficiently rebutted any presumption of discrimination. As the Government's brief in Scott noted, the indictment was returned "amidst a global pandemic that suspended grand juries across the country." Although the Government concededly should have been more explicit in that brief, this was a reference to the fact that the indictment had been sought in White Plains because of these constraints on the availability of grand juries. The unprecedented COVID-19 pandemic and the challenges it presented to the administration of justice clearly constitute a non-discriminatory exigency sufficient to rebut any presumption of discriminatory intent. *See*, *e.g.*, Charles, 2021 WL 2457139, at *6.

In any event, even assuming that Judge Torres was correct that the Government insufficiently articulated its non-discriminatory motives in *Scott*, let there be no doubt here: In this case, the Government sought an indictment in White Plains, rather than Manhattan, because of the constraints on grand jury availability imposed by the pandemic, and because the defendant posed a sufficiently serious risk to public safety that that it was untenable to delay his prosecution until grand juries were more readily available.

In particular, on both June 22, 2020, when the Government sought and obtained the Original Indictment, and on August 18, 2020, when the Government sought and obtained the Superseding Indictment in this case, grand jury availability was exceptionally limited – generally, and specifically in Manhattan – due to the pandemic, which, in March 2020, had unexpectedly shut down the federal courthouses in Manhattan and White Plains, including the operation of its grand juries. By late June 2020, there was limited grand jury operation in Manhattan, which was insufficient to accommodate all cases for which indictments were being sought on a time-sensitive basis, especially given the backlog created when no grand jury was available for several months. Specifically, on or about June 3, 2020, a single grand jury became operational again within the District, in White Plains. A second grand jury became operational again in White Plains on or about June 23, 2020. It was not until on or about Thursday, June 25, 2020, that a single grand jury became operational again in Manhattan; thus, no Manhattan grand jury was operational at the time the Government sought and obtained the Original Indictment. Even after the third Manhattan-based grand jury became operational on June 25, 2020, each of these three grand juries had limited availability, two days or less per week, particularly the grand jury sitting in Manhattan. Accordingly, to indict the instant case expeditiously, and to protect public safety, the Government sought and obtained the Original and Superseding Indictments in White Plains, where grand juries were available.

For the foregoing reasons and those set forth in the Government's prior briefing, the defendant's motion should be denied.

Respectfully submitted,

AUDREY STRAUSS
United States Attorney

by: _____
Samuel Adelsberg / Matthew Hellman
Assistant United States Attorneys
Tel: (212) 637-2494/2278

cc: Counsel of Record (by ECF)