```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/14/2021
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
UNITED STATES OF AMERICA,

        Plaintiff,

   -against-

ETHAN PHELAN MELZER,
  a/k/a "Etil Reggad,"

        Defendant.
------------------------------------------------------------- X

1:20-cr-314-GHW

ORDER

GREGORY H. WOODS, United States District Judge:

  Defendant Ethan Melzer was a private in the United States Army. The United States has charged that Mr. Melzer conspired with others to arrange for an attack on his Army unit by Al-Qaeda. Mr. Melzer is charged with a number of crimes, including attempted murder of his fellow service members and provision of material support in support of terrorism. This decision addresses Mr. Melzer's motion to dismiss just one of the eight charges against him—Count VI, which charges that he conspired to murder and maim others in a foreign country in violation of 18 U.S.C. § 956(a). Mr. Melzer argues that the charge against him should be dismissed because he was not "within the jurisdiction of the United States" at the time of the overt acts alleged in the indictment. Because the overt acts described in the indictment are sufficient to support the charge that Mr. Melzer conspired "within the jurisdiction of the United States" regardless of how that term is defined, the indictment is adequate on its face. Therefore Mr. Melzer's motion to dismiss Count VI of the indictment is denied. The Court need not resolve the issue raised by Mr. Melzer's motion regarding the correct statutory interpretation of the term "within the jurisdiction of the United States" in 18 U.S.C. § 956(a).

## I. BACKGROUND

### a. Factual Background

The grand jury returned the operative superseding indictment on August 18, 2020 (the "Indictment"). Dkt. No. 31. The Indictment charges Mr. Melzer with a variety of offenses, including conspiracy to murder U.S. nationals, attempted murder of U.S. nationals, conspiracy to murder U.S. service members, attempted murder of U.S. service members, provision and attempted provision of material support to terrorists, and illegal transmission of national defense information. Count VI of the Indictment charges Mr. Melzer with conspiracy to murder and maim in a foreign country in violation of 18 U.S.C. §§ 956(a)(1) and (a)(2)(A), and 3238.

Count VI charges that

> [f]rom at least in or about 2019 up to and including in or about May 2020, in an offense begun and committed outside of the jurisdiction of any particular State or district of the United States . . . the defendant, who was first brought to and arrested in the Southern District of New York, and others known and unknown, knowingly and intentionally combined, conspired, confederated, and agreed together and with each other, within the jurisdiction of the United States, to commit, at a place outside the United States, acts that would constitute the offenses of murder and maiming if committed in the special maritime and territorial jurisdiction of the United States.

Indictment ¶ 15. The Indictment then points to a number of overt acts that Mr. Melzer allegedly undertook in furtherance of the conspiracy. *Id.* ¶ 16. All of the overt acts identified in the Indictment took place in May 2020, when Mr. Melzer sent a series of communications to an online chatroom to further the objectives of the conspiracy. Among other things, "on or about May 17, 2020, MELZER exchanged electronic communications . . . regarding the anticipated deployment of MELZER's U.S. Army unit and passed information regarding the deployment to a purported member of al Qaeda." *Id.* ¶ 3(b). On May 23, he is alleged to have communicated that "the attack would cause a 'new war'[] and that the attack would result in 'mascal,' which another participant explained meant 'mass casualty.'" *Id.* ¶ 3(c). And on May 24 and May 25, Mr. Melzer is charged to

have "sent electronic messages with specific, classified information about his unit's anticipated deployment, including . . . information about the facility's surveillance and deployment capabilities." *Id.* ¶ 3(e). Mr. Melzer "promised to provided additional information after he deployed in order to try to maximize the likelihood of a successful attack on his unit." *Id.*

The complaint reveals that throughout the month of May 2020, when Mr. Melzer was allegedly sending off these communications, he was stationed at Camp Ederle, a U.S. military facility in Vicenza, Italy. Complaint, Dkt. No. 1, ¶ 10(g). Mr. Melzer relies on this fact as the basis for his motion: Because Mr. Melzer undertook the overt acts charged in the Indictment from a U.S. military base in Italy, he argues, he was not "within the jurisdiction of the United States" at the time that he conspired to commit the charged offense.

The United States has proffered that it will establish at trial that Mr. Melzer joined the conspiracy within the territorial United States—before his deployment abroad. Opposition, Dkt. No. 71 (the "Opposition"), at 31-32. In particular, the United States has proffered that it "will establish at trial that he joined the conspiracy in the United States in 2019, that he committed overt acts in the United States prior to deploying to Italy, and that he caused overt acts in the United States while at Camp Ederle by transmitting communications to this country." *Id.* at 31. Among the evidence to be presented at trial, the Government proffers the following:

> The defendant admitted following his arrest that he joined [the extremist group] O9A while he was in the United States prior to joining the military. He also described infiltrating other groups, including a street gang and Antifa, to acquire training and experience necessary to further the goals of O9A and recruit O9A members, and that he joined the United States military as a full-fledged member of O9A for the same reasons. Evidence of the nature of O9A and the defendant's decisions to join O9A and the military are sufficient to establish that he joined the conspiracy while he was in the United States.

*Id.* at 32. This information regarding the nature of the proof that the Government expects to offer at trial regarding where the defendant joined the conspiracy is not included in the Indictment. However, the Government has noted that it "anticipates filing a superseding indictment setting forth

overt acts in the United States for purposes of Count Six." *Id.* at 32 n. 11.

### b. Defendant's Motion to Dismiss Count VI

The defendant moved to dismiss a number of charges in the Indictment on May 24, 2021. Dkt. No. 64. The Court resolved that motion with respect to all issues other than the one addressed here from the bench.

In his motion, the defendant argues that Count VI must be dismissed because all of the overt acts that are specified in the Indictment took place in Italy. Dkt. No. 65 at 6-9. Because the overt acts described in the Indictment took place outside of the territorial United States, the defendant argues that he did not conspire with others "within the jurisdiction of the United States," as required by 18 U.S.C. § 956(a)(1).

In full, 18 U.S.C. § 956(a)(1) reads as follows:

> Whoever, *within the jurisdiction of the United States, conspires* with one or more other persons, regardless of where such other person or persons are located, to commit at any place outside the United States an act that would constitute the offense of murder, kidnapping, or maiming if committed in the special maritime and territorial jurisdiction of the United States shall, if any of the conspirators commits an act within the jurisdiction of the United States to effect any object of the conspiracy, be punished as provided in subsection (a)(2).

18 U.S.C. § 956(a)(1) (emphasis added). The defendant's motion focuses on the issue of whether a U.S. military base outside of the territorial United States falls "within the jurisdiction of the United States." But the motion rests on an underlying premise that the location where a defendant conspires is the location of the overt acts taken in furtherance of the conspiracy.

In its opposition to the defendant's motion, the Government argues that the Indictment is sufficient for a number of reasons. The Government's first two arguments present issues of statutory interpretation—contending that the "jurisdiction of the United States," as referenced in § 956, extends beyond the territorial limits of the United States. Opposition at 28. First, it argues that because the military base where Mr. Melzer was located at the time of his communications falls

within the "special maritime and territorial jurisdiction of the United States," as defined in 8 U.S.C. § 7, it falls "within the jurisdiction of the United States." *Id.* at 29. Second, the Government argues that because Mr. Melzer was an active member of the military at the time of the charged crimes, his conduct was subject to the Uniform Code of Military Justice (the "UCMJ"). *Id.* at 28-30. Because he was subject to sanction under the UCMJ, the Government argues, he should be considered to be "within the jurisdiction" of the United States for purposes of § 956 regardless of where he was physically located at the time of his offense. *Id.*

The Government's third argument is more prosaic: it argues that it will prove at trial that the defendant conspired within the territorial United States. As described above, the Government asserts that its evidence at trial will show that he joined the conspiracy in the United States in 2019, and that he committed overt acts within the territorial United States in addition to those specifically set forth in the Indictment. *Id.* at 31-32.

## II.    LEGAL STANDARD

Rule 7(c)(1) of the Federal Rules of Criminal Procedure requires that an indictment contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ." "This requirement performs three constitutionally required functions: It fulfills the Sixth Amendment right 'to be informed of the nature and cause of the accusation;' it prevents a person from being subject to double jeopardy as required by the Fifth Amendment; and it serves the Fifth Amendment protection against prosecution for crimes based on evidence not presented to the grand jury." *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999).

"An indictment is sufficient as long as it (1) 'contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend,' and (2) 'enables [the defendant] to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Wedd*, 993 F.3d 104, 120 (2d Cir. 2021) (quoting *United States v. Alfonso*, 143 F.3d 772,

5

776 (2d Cir. 1998) (internal quotation marks omitted)). "'[A]n indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.'" *Id.*[1]

The Second Circuit has twice recently reminded us that a district court does not evaluate the adequacy of the facts set forth to satisfy the elements of a charged offense. "At the indictment stage, we do not evaluate the adequacy of the facts to satisfy the elements of the charged offense. That is something we do after trial." *Id.* at 121; *see also United States v. Dawkins*, 999 F.3d 767, 779–80 (2d Cir. 2021). "We have previously explained that 'summary judgment does not exist in federal criminal procedure.' 'Unless the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial . . . , the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment.'" *Wedd*, 993 F.3d at 121 (internal citations omitted).

### III.   DISCUSSION

####     a. The Indictment Adequately Alleges All of the Elements of A Conspiracy Within the Jurisdiction of the United States

The Defendant's motion rests on a false premise—namely, that a conspiracy occurs only in the location of the overt acts taken in furtherance of it. Because that premise is false, and because the Court does not evaluate the adequacy of the facts asserted in the indictment to support the other elements of the charged offense, the motion should be denied.

Section 956(a) requires that the defendant have conspired within the jurisdiction of the United States to commit one of the specified offenses. 18 U.S.C. § 956(a)(1) ("Whoever, within the

---

[1] There are a number of "very rare cases in which an indictment that tracked the statutory language and furnished the pertinent dates was held insufficient." *United States v. Stringer,* 730 F.3d 120, 125 (2d Cir. 2013). The Second Circuit described those circumstances in *United States v. Pirro*, concluding the following: "In sum, for an indictment to fulfill the functions of notifying the defendant of the charges against him and of assuring that he is tried on the matters considered by the grand jury, the indictment must state some fact specific enough to describe a particular criminal act, rather than a type of crime." 212 F.3d 86, 93 (2d Cir. 2000). This is not such a rare case.

jurisdiction of the United States, conspires with one or more other persons . . . to commit at any place outside the United States an act that would constitute the offense of murder . . . ."). An indictment charging conspiracy must track the language of the relevant statute, as described above, and must allege all of the essential elements of conspiracy, which are "(1) that the defendant agreed with at least one other person to commit an offense; (2) the defendant knowingly participated in the conspiracy with the specific intent to commit the offenses that were the objects of the conspiracy; and (3) that during the existence of the conspiracy, at least one of the overt acts set forth in the indictment was committed by one or more of the members of the conspiracy in furtherance of the objectives of the conspiracy." *United States v. Salameh*, 152 F.3d 88, 145–46 (2d Cir. 1998).

On its face, the Indictment is sufficient. The language in Count VI of the Indictment tracks the language of § 956(a). It identifies the approximate time frame and location of the alleged crime. It also pleads all of the elements of a conspiracy. Indictment ¶ 15 ("From at least in or about 2019 up to an including in or about May 2020 . . . the defendant . . . and others known and unknown, knowingly and intentionally combined, conspired, confederated, and agreed together and with each other, within the jurisdiction of the United States, to commit, at a place outside the United States, acts that would constitute the offense[] of murder . . . ."). The Indictment identifies specific overt acts taken by the defendant in furtherance of the conspiracy. *Id.* at ¶¶ 3, 16.

The defendant's motion is rooted in the premise that the overt acts taken in connection with a conspiracy charged under § 956 must occur within the jurisdiction of the United States. As a result, he argues that the Indictment is insufficient because it does not allege overt acts that occurred within the United States. The Court does not believe that premise to be correct—the statute requires that the defendant *conspire* within the jurisdiction of the United States, and the essential act for conspiracy is the agreement.

"The essence of a conspiracy is 'an agreement to commit an unlawful act.'" *United States v.*

7

*Jimenez Recio*, 537 U.S. 270, 274 (2003) (quoting *Iannelli v. United States*, 420 U.S. 770, 777 (1975)); *see also United States v. Torres*, 604 F.3d 58, 65 (2d Cir. 2010) ("The essence of conspiracy is agreement."). The "*actus reus*" for criminal conspiracy is the criminal agreement itself. *United States v. Shabani*, 513 U.S. 10, 16 (1994).

So when asking the question if the defendant "conspired" within the jurisdiction of the United States, the Court does not believe that the answer is limited to the locations where the overt act occurred. Instead, if the *actus reus*—the agreement itself—happened within the jurisdiction of the United States, the defendant conspired within the jurisdiction of the United States even if the overt acts in furtherance of it were taken outside of the jurisdiction of the United States, however defined.[2] This is what the United States has proffered that it expects to prove at trial here—namely that the defendant entered into his criminal agreement within the territorial United States and that he took overt acts in furtherance of it after he arrived overseas and had the wherewithal to implement his agreement. Even if the overt acts alleged in the Indictment took place outside of the jurisdiction of the United States, the defendant can be found to have conspired within the jurisdiction of the United States.

Two provisions of § 956(a)(1) are easily conflated. In order to convict a defendant under § 956, the United States must also establish that one of the conspirators has committed an "an act within the jurisdiction of the United States to effect any object of the conspiracy." 18 U.S.C. § 956(a)(1) ("Whoever . . . conspires . . . shall, *if any of the conspirators commits an act within the jurisdiction of the United States to effect any object of the conspiracy*, be punished . . . .") (emphasis added). As the statute is written, this requirement is additive to the requirement that the defendant conspire within the jurisdiction of the United States. The fact that this is an additional requirement demonstrates

---

[2] Were it otherwise, two conspirators could sit down at a table in Manhattan and agree with to commit murder abroad, but would not have conspired within the jurisdiction of the United States so long as the overt acts in furtherance of their agreement took place overseas.

that Congress was aware of the point that the Court made above—namely that all of the overt acts in furtherance of the defendant's conspiracy need not take place within the jurisdiction of the United States. If, as defendant assumes, one conspires "within the jurisdiction of the United States" for purposes of § 956 only if the overt acts in furtherance of the conspiracy take place there, the statute would not need to include this additional requirement.

In most situations, this would be a distinction without a difference. The substantive difference between the statute's requirement that the Government prove that a conspirator took "an act within the jurisdiction of the United States to effect any object of the conspiracy" and the requirement that the Government prove that a conspirator took an overt act in furtherance of the conspiracy is vanishingly small. As a result, some courts, including the Fourth Circuit, have compressed the two separate statutory requirements—that there be an overt act by a conspirator in furtherance of the conspiracy to prove the existence of a conspiracy and that a co-conspirator take an action to effect its purposes within the jurisdiction of the United States—into a single element "that a conspirator, not necessarily a defendant or an appellant, committed an overt act in furtherance of the conspiracy within the jurisdiction of the United States." *United States v. Hassan*, 742 F.3d 104, 112 (4th Cir. 2014).[3] This is a reasonable shorthand to present the statute's requirements.

In the narrow context of this motion, however, the distinction matters. It defeats the defendant's motion, which is predicated on an assumption that all overt acts taken in furtherance of

---

[3] Defendant's brief points to the Fourth Circuit's decision in *United States v. Hassan* to argue that the overt act in furtherance of the conspiracy must take place within the jurisdiction of the United States. 742 F.3d 104 (4th Cir. 2014). In *Hassan,* the Fourth Circuit wrote the following: The Fourth Circuit described the elements of the offense as follows: "To prove the Count Two conspiracy alleged under 18 U.S.C. § 956(a), the government was obliged to show as to each appellant: (1) that he entered into a conspiracy; (2) knowing and intending that the objective of the conspiracy was murder, kidnapping, or maiming outside the United States; (3) that the conspiracy was entered into within the United States; and (4) that a conspirator, not necessarily a defendant or an appellant, committed an overt act in furtherance of the conspiracy within the jurisdiction of the United States." *Id.* at 112.

the conspiracy must take place within the jurisdiction of the United States. The Indictment tracks the statutory language and offers specific overt acts that are consistent with the Government's allegation that the defendant conspired within the jurisdiction of the United States, regardless of how that phrase is interpreted. Because the overt acts alleged are sufficient to support the conspiracy charge, the defendant's motion amounts to a challenge to the sufficiency of the evidence that the Government will present at trial to establish the statute's separate requirement that a member of the conspiracy took "an act within the jurisdiction of the United States to effect any object of the conspiracy" in order to sustain the sufficiency of the Indictment. There is no obligation for the Government to include those facts in the Indictment, and the Court does not assess the adequacy of the facts to be presented at trial in the context of a motion to dismiss an indictment. Therefore the Indictment is sufficient on its face, regardless of whether Mr. Melzer, a soldier at his military base in Italy, was within the jurisdiction of the United States at the time of the overt acts alleged in the Indictment.

### b. The Statutory Meaning of "Within the Jurisdiction of the United States" Under § 956(a)

As described above, the parties dispute the meaning of the phrase "within the jurisdiction of the United States" in § 956(a). The Seventh Circuit recently commented on the challenges inherent in determining the meaning of the phrase:

> The Supreme Court has remarked that "jurisdiction . . . is a word of many, too many, meanings". . . . Still, using a word such as "jurisdiction" without a definition or cross-reference begs for trouble. Maybe the word means the territory of the United States, see 18 U.S.C. § 5; maybe it means prescriptive authority; maybe it means something like the "special maritime and territorial jurisdiction of the United States," a phrase defined in 18 U.S.C. § 7. A court would be sorely tempted to invoke the Rule of Lenity and hold that ambiguity must be resolved in favor of the accused.

*United States v. Leija-Sanchez*, 820 F.3d 899, 901–02 (7th Cir. 2016) (internal citations omitted).

Thanks to the issue highlighted above, the Court need not wade into this issue in order to resolve

this motion at this time. While the Court has considered the question deeply, it is, as the Seventh Circuit recognized, a complex one, better reserved for decision in the context of the jury charge, after the Government's evidence has been presented, or post-trial briefing.

### IV.   CONCLUSION

For the reasons stated above, Mr. Melzer's motion to dismiss Count VI of the Indictment is denied. For the reasons discussed on the record during the July 26, 2021 conference, Mr. Melzer's remaining pretrial applications are denied.

The Clerk of Court is ordered to terminate the motions pending at Dkt. Nos. 37 and 64.

SO ORDERED.

Dated: October 14, 2021
New York, New York

_____
GREGORY H. WOODS
United States District Judge