

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

GILBERTO VALLE,

                                   Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/9/13

**ORDER**

12 Cr. 847 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

On November 15, 2012, Defendant Gilberto Valle was charged with
conspiracy to commit kidnapping, in violation of 18 U.S.C. § 1201(c), and accessing a
federal database without authorization in violation of 18 U.S.C. § 1030(a)(2)(B). (Dkt.
No. 9)

The essence of the kidnapping conspiracy charge is that the Defendant
agreed with others – over the internet – to kidnap women, and discussed cooking and
eating victims.  The Indictment does not name any co-conspirators and refers to only one
potential target – a woman referred to as "Victim-1."  Discovery indicates, however, that
the Defendant discussed violent sexual fantasies – involving kidnap, rape, murder, and
cannibalism – with more than twenty individuals in internet "chats."  The Government
has also produced files maintained by the Defendant concerning 84 women; the
Government appears to contend that each was at least a potential kidnapping target.  The
defense will argue at trial that the Defendant "committed no acts of violence against
women, never agreed to commit acts of violence, and never intended for any acts of
violence to be committed," and that "[h]is words were purely role-playing fantasy on the
internet."  (Gatto Decl., ¶ 9)

On December 31, 2012, Defendant filed a motion seeking an order: (1) requiring the Government to provide a bill of particulars pursuant to Fed. R. Crim. P. 7(f); (2) ordering disclosure of Jencks Act (18 U.S.C. § 3500) and Giglio material no later than January 14, 2013; and (3) directing the Government to correct misstatements of fact made at prior bail hearings. (Dkt. No. 23)

On January 7, 2013, Defendant moved the Court to compel the Government to provide the following materials pursuant to Rule 16: (1) "documents relating to Count Two of the Indictment in which Mr. Valle is charged with accessing a federal database without authorization;" and (2) "complete cell site material." (Dkt. No. 31)

Trial is scheduled for January 22, 2013. (Dkt. No. 10)

For the reasons stated below, the Defendant's motion for a bill of particulars will be granted in part and denied in part; Defendant's motion for early disclosure of Jencks Act and Giglio material will be denied; Defendant's motion for an order directing the Government to correct the record will be denied; and Defendant's motion to compel production of documents will be denied.

## DISCUSSION

### I.   MOTION FOR A BILL OF PARTICULARS

The Defendant seeks a "Bill of Particulars to which the government will be held at trial and in which the government identifies: (1) Mr. Valle's alleged co-conspirators; (2) the alleged targets of the purported conspiracy to kidnap; and (3) the overt acts allegedly committed in furtherance of the conspiracy, including but not limited

to specific claims of surveillance/stalking purportedly conducted by Mr. Valle." (Def. Br. at 2)

### A.    Applicable Law

Rule 7(f) of the Federal Rules of Criminal Procedure permits a defendant to seek a bill of particulars where necessary to "'prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense.'" United States v. D'Amico, 734 F. Supp. 2d 321, 335 (S.D.N.Y. 2010) (quoting United States v. Davidoff, 845 F.2d 1151, 1154 (2d Cir. 1988)). "A bill of particulars is not a general investigative tool, a discovery device or a means to compel the government to disclose evidence or witnesses to be offered prior to trial." United States v. Gibson, 175 F. Supp. 2d 532, 537 (S.D.N.Y. 2001). "Instead, its purpose is to supplement the facts contained in the indictment when necessary to enable defendants to identify with sufficient particularity the nature of the charges against them." United States v. Gotti, No. S4 02 CR 743, 2004 WL 32858, at *8 (S.D.N.Y. Jan. 6, 2004). The decision to grant or deny a bill of particulars "rests within the sound discretion of the district court." United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987). "Generally, if the information sought by defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required." Id.

### B.    Disclosures to Dates

#### 1.    Charging Instruments

As noted above, the Indictment (1) provides no information concerning who the Government will contend at trial agreed with the Defendant to kidnap women; and (2) references only one intended victim, identified solely as "Victim-1." The

Indictment sets forth three overt acts: Valle's July 9, 2012 electronic communications with an unidentified co-conspirator concerning Victim-1; Valle's travel to Maryland on July 22, 2012 to meet Victim-1; and Valle's May 31, 2012 unauthorized use of a law enforcement database. (Dkt. No. 9)

The criminal complaint filed against the Defendant (Dkt. No. 1) sets forth the same charges found in the Indictment, but likewise does not identify any co-conspirator. The complaint recounts electronic communications that the Defendant had with an unidentified co-conspirator in July 2012 concerning Victim-1, and electronic communications between the Defendant and a second unidentified co-conspirator in February 2012 concerning another woman, referred to as "Victim-2." (Id.)

### 2.    Rule 16 Discovery

Since November 21, 2012, the Government has made twelve separate productions of discovery materials pursuant to Fed. R. Crim. P. 16.[1] (Gov't Br. at 3) The bulk of the discovery consists of electronic communications (emails and chat logs),

---

[1] The Government has produced "search warrant applications for certain computers and certain email accounts"; "Valle's criminal history, and a Form 302 memorializing Valle's post-arrest statement"; "consent to search forms signed by Mr. Valle's wife, and an additional search warrant application, and documents showing Valle's access to . . . law enforcement databases"; "a copy of a hard drive from a computer used by Valle, emails from one of Valle's accounts, and the email accounts of two co-conspirators"; Valle's bank records; "a hard drive containing a[n] imaged copy of a Mac Laptop used by Valle, Valle's iPhone, and instructions on how to access the material on the harddrive"; "cellsite data from Valle's iPhone, and emails from two email accounts used by co-conspirators"; "Valle's NYPD Hiring Package, and a FBI list of items seized incident to Valle's arrest"; "emails from another email account used by Valle"; "an FBI 302 memorializing the statement of a co-conspirator"; "Valle's Trafic and Parking Ticket details, a License Plate Reader report related to Valle's car, and Valle's NYPD psychiatric report"; "FBI Form 302s memorializing interviews of women about whom Valle communicated"; "Valle's NYPD time-sheets"; "two NYPD Memo Books belonging to Valle's supervisor"; and "98 computer 'screen shots.'" The Government has also made seventeen of the Defendant's NYPD memo books available for review. (Gov't Br. at 3-4)

files from the Defendant's computers and iPhone, eleven months of cell site data, and

FBI reports. (Gov't Br. at 3-5) According to defense counsel, a "paper dump . . . without

. . . particularization" of "close to 1,000,000 pages (if not more)" has been produced."

(Def. Br. at 1; Dkt. No. 26 at 2 (Defendant's Motion for Temporary Release Pursuant to

18 U.S.C. § 3142(i)))

       Defense counsel represents that the "government has produced hundreds

of thousands of emails and instant message communications in which Mr. Valle and

others talked about their violent sexual fantasies." (Def. Br. at 5 (citing Gatto Decl., ¶

10)) During the time period charged in the Indictment, the Defendant communicated

about violent, sexually-related acts – i.e., kidnapping, murder, rape and/or cannibalism –

with more than twenty 20 individuals. (Id. (citing Gatto Decl., ¶ 11)) The Defendant's

computer files on women, and his electronic communications, yield the names of

approximately 84 women who could be viewed as potential kidnap targets. (Id. at 7

(citing Gatto Decl., ¶ 20))

### 3.    **Informal Disclosure**

       In addition to formal Rule 16 discovery, the Government has provided

additional information to the defense in letters. For example, in a December 28, 2012

letter, the Government identified three known co-conspirators: Michael Vanhise[2],

"Moody Blues," and "Ali Khan." (Gatto Decl.; Exh. B (Waxman Dec. 28, 2012 Ltr.) at

1) The Government cautioned that its investigation is ongoing and that it "believes that

there are, or may be co-conspirators who have not yet been identified." (Id.)

---

[2] Michael Vanhise was arrested by Federal authorities on January 4, 2013. See United
States v. Michael Vanhise (Dkt. No. 13 Mag 0011).

As to alleged targets of the charged kidnapping conspiracy, the Government has merely referred defense counsel to the Defendant's computer files concerning the eighty women and to FBI Form 302 reports reflecting interviews of many of these women. (Gatto Decl., Exh. B (Waxman Dec. 28, 2012 Ltr.) at 2)

### C. **Analysis**

#### 1. **Identification of Co-Conspirators and Kidnap Targets**

"There is no clear rule in the Second Circuit as to when a bill of particulars for unindicted co-conspirators should be granted." United States v Kahale, 789 F. Supp. 2d 359, 372 (E.D.N.Y. 2009), affd sub nom. United States v Graham, 477 Fed Appx. 818 (2d Cir. 2012) See, e.g., United States v. Nachamie, 91 F. Supp .2d 565, 572 (S.D.N.Y. 2000) ("A review of the case law in this district reveals no clear distinction among circumstances in which courts grant a request for the names of known unindicted co-conspirators and circumstances in which they do not.") Indeed, "[t]he Second Circuit has upheld decisions [both] granting and denying requests for the identity of co-conspirators." United States v. Chalmers, 410 F. Supp. 2d 278, 286 (S.D.N.Y. 2006) (collecting and comparing cases).

In deciding whether to require the Government to identify known co-conspirators, courts consider the following factors:

> (1) the number of co-conspirators; (2) the duration and breadth of the alleged conspiracy; (3) whether the Government otherwise has provided adequate notice of the particulars; (4) the volume of pretrial disclosure; (5) the potential danger to co-conspirators and the nature of the alleged criminal conduct; and (6) the potential harm to the Government's investigation. If there are a large number of co-conspirators and a long-running conspiracy, a defendant is more likely to be surprised by the identity of other co-conspirators, whom he may never have met. If the Government has failed to provide adequate notice of the particulars, or if the discovery has been voluminous, identification of known unindicted co-

6

> conspirators will help a defendant focus his investigation and prepare for trial.  On the other hand, considering the potential danger to the co-conspirators and the risk of compromising continuing investigations allows a court to balance a defendant's need for the information against legitimate law enforcement concerns.

United States v Nachamie, 91 F. Supp. 2d 565, 572-73 (S.D.N.Y 2000)

Analysis of these factors here demonstrates that the Government should be required to identify (1) the individuals the Government will contend at trial are co-conspirators of the Defendant; and (2) the individuals the Government will contend were intended targets of the charged kidnapping conspiracy.[3]

First, the number of potential co-conspirators is large, apparently more than twenty.  Second, the alleged duration and breadth of the charged conspiracy are both significant.  The Government alleges that the conspiracy continued for at least ten months, and given that the Defendant allegedly conspired with others over the internet, his co-conspirators could be anywhere in the world.  Because "a large number of co-conspirators and a long-running conspiracy" increase the risk of unfair surprise at trial, both of these factors weigh in favor of granting a bill of particulars.  Id. at 572-73 (granting bill of particulars identifying known unindicted co-conspirators in case involving a "large number of co-conspirators" and lasting a "significant period of time"); see also United States v. Oruche, No. 07–cr–0124, 2008 WL 612694, at *4 (S.D.N.Y.

---

[3] The Court does not anticipate a multiple conspiracies problem at trial, because there is only one defendant charged in the indictment.  See United States v Atkins, 10 CR 391-04 CM, 2012 WL 1415625, at *2 (S.D.N.Y. Apr. 19, 2012) ("[Defendant's] multiple conspiracies argument fails on its face, since multiple conspiracy analysis is inapplicable to a trial of a single defendant.")  Sand, Modern Federal Jury Instructions, Instruction 19–5 Commentary (2012) (citing cases).  Nevertheless, the Government's intention to introduce alleged conspiratorial agreements between the Defendant and multiple unrelated individuals obviously increases the risk that the Defendant will be unfairly surprised.

Mar. 5, 2008) (finding that "breadth of the conspiracies" which spanned a "number of years and continents" weighed "in favor of disclosure of the unindicted co-conspirators").

The fourth factor – the volume of pre-trial disclosure – addresses both whether the Government has "provided significant detail to the defendants" and whether the Government has "unfairly overwhelmed [a defendant] with mountains of unorganized discovery." United States v Barret, 824 F. Supp. 2d 419, 443 (E.D.N.Y. 2011) (quoting United States v. Kahale, 789 F. Supp. 2d 359, 372 (E.D.N.Y. 2009)); see also Nachamie, 91 F. Supp. 2d at 573 (finding that because "the Government has produced a substantial number of documents—more than 200,000 pages—but has failed to give defendants adequate notice of the particular charges against them," disclosure of co-conspirators was appropriate).

Here, according to defense counsel, the Government has produced the equivalent of a million or more pages of documents. (Def. Br. at 1; Dkt. No. 26 at 2 (Defendant's Motion for Temporary Release Pursuant to 18 U.S.C. § 3142(i)))  Given these circumstances, defense counsel argues that the Government's refusal to identify who it will contend at trial Defendant conspired with, and who it will contend were targets of the kidnapping conspiracy, has "stymie[d] the defense's trial preparations." (Def. Br. at 1)  Because the amount of discovery is massive, and because the defense must prepare for the possibility that the Government will argue at trial that any one of more than 20 individuals is a co-conspirator, and any one of more than 80 women was an intended kidnap target, this factor weighs in favor of requiring the Government to disclose who it will contend at trial is a co-conspirator or kidnap target.

The fifth factor (danger to co-conspirators) and sixth factor (potential harm to Government's investigation) also favor disclosure. The Government has offered no evidence or arguments suggesting that requiring particulars would present a risk of danger to a co-conspirator or someone else. As to jeopardizing an ongoing investigation, the Government says only that its "investigation is ongoing, and [that] the disclosure of identities of co-conspirators . . . could jeopardize the investigation." (Gov't. Br. at 11) This conclusory statement is not sufficient to defeat the Defendant's application, particularly given that the trial – at which co-conspirators must be disclosed – is less than two weeks away.

The cases cited by the Government (Gov't Br. 10) are not to the contrary. United States v. Torres, 901 F.2d 205, 233-34 (2d Cir. 1990) was a heroin conspiracy case in which the Government charged twelve defendants. Given the charges in the indictment and the discovery provided in that case, the defendants could not credibly argue that they were uncertain as to who the Government contended they had conspired with.

Similarly, United States v. Guerrero, 669 F. Supp. 2d 417 (S.D.N.Y. 2009) was a four-defendant murder case in which a defendant sought to require the Government to disclose the identity of co-conspirators in an underlying narcotics conspiracy. The court denied the defendant's application, in large part because disclosure of the co-conspirators presented a serious risk of harm to "potential cooperating witnesses." Guerrero, 669 F. Supp.2d at 429. The Court also noted that "[t]he nature of the crimes is such that the defendant can be expected to have met, and thus already know, the identities of his co-conspirators." (Id. at 428). Neither factor is present here, of course. The

9

Government has articulated no risk of harm to anyone from disclosure of particulars concerning alleged co-conspirators and kidnapping targets, and Valle is not alleged to have met any of the individuals he allegedly conspired with.

As to particulars concerning alleged kidnap targets, the Government's production of the Defendant's electronic file folders concerning more than 80 women, and FBI 302 reports reflecting interviews of many of these women, is not sufficient to give the Defendant fair notice of who the Government will claim at trial the Defendant conspired to kidnap. As discussed above, the Government's obligation is not satisfied by "providing mountains of documents to defense counsel" where the indictment is not specific. United States v. Bortnovsky, 820 F.2d 572, 575 (2d Cir. 1987). It is entirely unclear whether the Government will contend that there were conspiratorial agreements to kidnap each of the 84 women, or whether there was a conspiracy to kidnap only a small subset of these 84 women. Requiring the Government to identify who it contends were the targets of the charged kidnapping conspiracy creates no risk of harm to these individuals or to the ongoing investigation, because the Government has already produced to the Defendant the information it has concerning the more than 80 potential victims.

Under the highly unusual circumstances of this case, identification of known alleged co-conspirators and alleged kidnap targets is necessary to ensure that the Defendant receives a fair trial. Accordingly, the Government will disclose by January 14, 2013, who it will contend at trial (1) conspired with the Defendant to commit a kidnapping; and (2) was a target of the agreement or agreements to commit a kidnapping.

10

## 2.     Identification of Overt Acts

The Defendant also seeks an order requiring the Government to list all overt acts allegedly committed in furtherance of the charged conspiracy, including but not limited to specific claims of surveillance/stalking purportedly conducted by Valle. (Def. Br. at 2, 8-9)  The Government argues that it has disclosed numerous overt acts in the Complaint, in the Indictment, and at multiple detention hearings.  (Gov't. Br. at 11)

As an initial matter, the Court's order requiring the Government to identify co-conspirators and intended kidnapping victims should substantially assist the Defendant in analyzing the discovery material.

Moreover, "[a]s a general rule, the defendant does not 'need' detailed evidence about the conspiracy in order to prepare for trial properly.  It is well settled that defendants need not know the means by which it is claimed they performed acts in furtherance of the conspiracy nor the evidence which the Government intends to adduce to prove their criminal acts." United States v Feola, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987). Accordingly, "disclosure of all the overt acts in furtherance of the conspiracy . . . is not properly the function of a bill of particulars." United States v Jimenez, 824 F. Supp. 351, 363 (S.D.N.Y. 1993) (observing that requests for bills of particulars disclosing "whens" "wheres" and "with whoms" are routinely denied).

Here, the Court finds that the Government has disclosed in the complaint, the indictment, at detention hearings, and through discovery – in the form of files from Valle's computers, FBI 302 reports, License Plate Reader Reports, Parking Ticket Details, and cell site data – information sufficient for the Defendant to assess the overt acts allegedly committed in furtherance of the conspiracy, including specific claims of

surveillance/stalking.  It is not practical to require the Government to list all overt acts it intends to prove at trial, and there is no legal authority requiring it to do so.  See, e.g., Jimenez, 824 F. Supp. at 363 (government "may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which a defendant committed the crime charged, or to give a preview of its evidence and legal theories").  The Defendant's motion for a bill of particulars identifying overt acts will be denied.

## II.     MOTION FOR EARLY DISCLOSURE OF JENCKS ACT AND GIGLIO MATERIAL

### A.     Jencks Act Material

Defendant seeks early production of prior statements made by prospective Government witnesses pursuant to the Jencks Act.  See 18 U.S.C. § 3500 et seq.  The statute does not require the Government to produce Jencks Act material until after a witness has testified on direct examination, however, and district courts have no authority to compel early disclosure of Jencks Act material.  In re United States, 834 F.2d 283, 287 (2d Cir. 1987).  Here, the Government has represented that it intends to produce Jencks Act material on January 18, 2013.  Trial is scheduled to begin on January 22, 2013. Defendant has not explained why disclosure of prior statements four days before trial is insufficient, and in any event the Court lacks the power to compel earlier production. The motion for early production of Section 3500 material will be denied.

### B.     Giglio Material

Defendant seeks early production of evidence that may be used to impeach the credibility of any of the Government's witnesses pursuant to Giglio v. United States

12

405 U.S. 150, 154 (1972).  Defense counsel seeks production of <u>Giglio</u> material on

January 14, 2013; the Government has agreed to provide it on January 18, 2013.

          The Second Circuit has stated that the Government is only required to

produce <u>Giglio</u> material "in time for its effective use at trial."  <u>United States v. Coppa</u>,

267 F.3d 132, 146 (2d Cir. 2001).  Once again, Defendant has not explained why

production of <u>Giglio</u> material four days before trial is insufficient in what is expected to

be a short trial.  The motion for early production of <u>Giglio</u> material will be denied.

**III.**  **<u>MOTION DIRECTING GOVERNMENT TO CORRECT THE RECORD</u>**

          The Defendant asks "the Court [to] direct the government, in a filing both

in the District Court and with the Court of Appeals, to correct . . . three misstatements

made at prior bail hearings."  (Def. Br. at 10)  This Court's order detaining the defendant

is currently on appeal before the Second Circuit (<u>see</u> <u>United States v. Valle</u>, Dkt. No. 12-

4771), and the Defendant has not cited any authority which would permit this Court to

supplement the record on an issue already before the Court of Appeals.[4]  In any event, as

discussed below, the Court concludes that the Government has already adequately

addressed its alleged misstatements, which in any event do not appear material to the bail

determination.

          The Defendant first argues that "the government inaccurately described

Mr. Valle's relationship with 'Victim-1' at the bail hearing before this Court."  (Def. Br.

---

[4]  Under 18 U.S.C. § 3145, "[a]n appeal from a . . . detention order, or from a decision
denying revocation or amendment of such order, is governed by the provisions of [28
U.S.C. § 1291] . . . ."  Section 1291 establishes the court of appeals' jurisdiction over "all
final decisions of the district courts."  28 U.S.C. § 1291.  The filing of a notice of appeal
normally "'divests the district court of [jurisdiction] over those aspects of the case
involved in the appeal.'"  <u>United States v. Camacho</u>, 302 F.3d 35, 36 (2d Cir. 2002)
(quoting <u>Griggs v. Provident Consumer Disc. Co.</u>, 459 U.S. 56, 58 (1982)).

at 10)  The Government told the Court that Victim-1 "was not an old college friend; this was a women who he casually knew in college, and they really had very little, if anything to do with each other in the intervening years." (Nov. 20, 2012 Tr. at 27-28)  The Government has since conceded, in writing (Gatto Decl., Exh. D (Waxman Dec. 31, 2012 Ltr.) at 1), that Victim-1 considers the Defendant a "good friend," that they met when the Defendant traveled to Maryland, and that they had communicated since college by telephone and through texting.  While the nature of the Defendant's relationship with Victim-1 has been clarified, the new information does not alter the extremely disturbing statements the Defendant made over the internet about what he intended to do to Victim-1.  (See Cmplt. at 3-4)

The Defendant also contends that the Government incorrectly argued that the personal information the Defendant shared over the internet concerning "Victim-1," including her purported last name, place of birth, and college, were accurate.  (Def. Br. at 13)  The Defendant contends that some of the information the Defendant shared over the internet concerning Victim-1 was false.  (Id.)  The Government has agreed, again in writing.  (Gatto Decl., Exh. D (Waxman Dec. 31, 2012 Ltr.) at 1)  Defendant has not demonstrated that personal information concerning other alleged kidnap targets was inaccurate, however.  Proof that some of the details concerning Victim-1 were inaccurate does not change the fact that the Defendant apparently disseminated other information concerning Victim-1 and other kidnap targets that was accurate.

Finally, Defendant complains that "the government has . . . argued that Mr. Valle 'downloaded a chloroform recipe,' and that 'a recipe for chloroform' was found in Mr. Valle's apartment." (Def. Br. at 13)  According to the Defendant,

"[a]lthough there are electronic communications in which Mr. Valle appears to have cut and pasted a link to an internet website which has a recipe, there is no evidence that Mr. Valle 'downloaded' the recipe or that a hard copy of the recipe was discovered in his apartment." (Def. Br. at 13)  The Government contends that it never suggested that a hard copy of a chloroform recipe was found in the Defendant's apartment, and that it merely intended to argue that the Defendant accessed a website containing such a recipe. (Gatto Decl., Exh. D (Waxman Dec. 31, 2012 Ltr.) at 2)  The Defendant apparently e-mailed the chloroform recipe to the alleged co-conspirator with whom he discussed Victim-1. (See Cmplt. at 5)  Under these circumstances, it does not appear material whether the Defendant printed out the chloroform recipe or simply accessed it electronically.

The Defendant's motion to order the Government to correct the record is denied.

## IV.    MOTION TO COMPEL DISCOVERY

Defendant has moved this Court to compel the Government to provide the following material pursuant to Fed. R. Crim. P. 16:  (1) "documents relating to Count Two of the Indictment in which Mr. Valle is charged with accessing a federal database without authorization"; and (2) "complete cell site data." (Dkt. No. 31 at 3)

As to discovery related to Count Two, the Government represents that it "has produced all relevant documents in its possession." (Dkt. No. 35 at 1)  With respect to the cell site data, the Government states that it "produced to the defendant, on December 10, 2012, all of the data provided to the FBI by the phone company." (Id. at 2)  In a January 6, 2013 letter, the Government offered "to address any concerns about the

15

production," and offered to make the FBI's cell site expert available to speak with the Defendant's cell site expert.  (Id.)

It appears that the Government has complied with its discovery obligation concerning Count Two-related material and cell site data.  To the extent the Defendant believes that the Government's production is deficient, this issue can be addressed at today's court conference.  Defendant's motion to compel is denied.

## CONCLUSION

Defendant Valle's motion for a bill of particulars is granted in part and denied in part; Defendant's motion for early disclosure of Jencks Act and Giglio material is denied; Defendant's motion for an order directing the Government to correct the record is denied; and the Defendant's motion to compel production of documents is denied.  The Clerk of the Court is directed to terminate the motion.  (Dkt. No. 23)

Dated: New York, New York
       January 9, 2013

SO ORDERED.

Paul G. Gardephe
United States District Judge

16