UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

UNITED STATES OF AMERICA           :        S1 20 Cr. 314 (GHW)

            - v. -                 :

ETHAN PHELAN MELZER,               :

            *Defendant.*           :

-----------------------------------------------------------------x

## ETHAN MELZER'S OPPOSITION TO THE GOVERNMENT'S MOTION TO ADMIT PRIOR ACTS AS DIRECT OR RULE 404(b) EVIDENCE

Federal Defenders of New York
52 Duane Street, 10th Floor
New York, New York 10007
Tel.: (212) 417-8700
Counsel for Ethan Phelan Melzer

TO:    United States Attorney's Office
       Southern District of New York
       One St. Andrew's Plaza
       New York, New York 10007

# Table of Contents

Background ....................................................................................................... 1

Applicable Law............................................................................................... 2

Argument ........................................................................................................ 4

I. The Court should deny the government's motion as untimely.............................. 4

II. Nothing Melzer did prior to 2019 should be admitted as evidence of an "insight role" or O9A affiliation, because Melzer did not learn about O9A until 2019. ............................................................................................................ 6

III. Evidence related to the 2017 marijuana incident is not admissible. .................. 11

A.    The 2017 marijuana incident is not direct evidence of the charged crimes or "inextricably intertwined" with admissible evidence. ..................... 12

B.    The 2017 marijuana incident is not admissible under Rule 404(b). ............... 14

C.    The 2017 marijuana evidence should be excluded under Rule 403. ............... 16

IV. The government's other proffered evidence is not admissible. ............................ 20

V. Even if some evidence of Melzer's prior acts is admitted, evidence of the 2017 marijuana incident should still be precluded under Rule 403..................... 22

Conclusion...................................................................................................... 23

# Table of Authorities

## Federal Cases

*Arlio v. Lively*, 474 F.3d 46 (2d Cir. 2007) ..................................................... 4

*Huddleston v. United States*, 485 U.S. 681 (1988) .................................... 2, 4

*Old Chief v. United States*, 519 U.S. 172 (1997)........................................ 3

*United States v. Aboumoussallem*, 726 F.2d 906 (2d Cir. 1984) ................ 4

*United States v. Aminy*, 15 F.3d 258 (2d Cir. 1994) ................................. 15

*United States v. Caputo*, 808 F.2d 963 (2d Cir. 1987) .............................. 15

*United States v. Carboni*, 204 F.3d 39 (2d Cir. 2000)............................... 21

*United States v. Concepcion*, 983 F.2d 369 (2d Cir. 1992) ....................... 16

*United States v. Cruz*, 343 F. Supp. 2d 226 (S.D.N.Y. 2004) ................... 20

*United States v. Curley*, 639 F.3d 50 (2d Cir. 2011) .................... 3, 18, 19, 22

*United States v. Edwards*, 342 F.3d 168 (2d Cir. 2003) .............................. 3

*United States v. Frazier*, 2019 WL 761912 (S.D.N.Y. Feb. 21, 2019) ............. 5, 7, 8

*United States v. Garcia*, 291 F.3d 127 (2d Cir. 2002)........................... 15, 16

*United States v. Giffen*, 379 F. Supp. 2d 337 (S.D.N.Y. 2004) ................... 5

*United States v. Gomez*, 763 F.3d 845 (7th Cir. 2014) ............................... 3

*United States v. Gonzalez*, 2009 WL 1834317 (S.D.N.Y. June 24, 2009) ............ 16

*United States v. Gordon*, 987 F.2d 902 (2d Cir. 1993)........................... 15, 16

*United States v. Kaiser*, 609 F.3d 556 (2d Cir. 2010) ............................... 21

*United States v. Li*, 2022 WL 1740416 (2d Cir. May 31, 2022)................... 15

*United States v. Martino*, 759 F.2d 998 (2d Cir. 1985).............................. 15

*United States v. Massino*, 546 F.3d 123 (2d Cir. 2008) .............................. 3

*United States v. McCallum*, 584 F.3d 471 (2d Cir. 2009)................... 2, 14, 15

*United States v. Midyett*, 603 F. Supp. 2d 450 (E.D.N.Y. 2009) ............... 19

*United States v. Muniz*, 60 F.3d 65 (2d Cir. 1995) .................................. 17

*United States v. Nachamie*, 91 F. Supp. 2d 565 (S.D.N.Y. 2000)................ 5

*United States v. Pitre*, 960 F.2d 1112 (2d Cir. 1992)................................ 15

*United States v. Sampson*, 385 F.3d 183 (2d Cir. 2004)............................. 3

*United States v. Scott*, 677 F.3d 72 (2d Cir. 2012)................................... 2

*United States v. Stein*, 424 F. Supp. 2d 720 (S.D.N.Y. 2006)..................... 5

*United States v. Stein*, 521 F. Supp. 2d 266 (S.D.N.Y. 2007).................... 16

*United States v. Tubol*, 191 F.3d 88 (2d Cir. 1999) ............................. 16, 17

*United States v. Vilar*, 530 F. Supp. 2d 618 (S.D.N.Y. 2008)..................... 5

*United States v. Williams*, 585 F.3d 703 (2d Cir. 2009) ........................... 19

*United States v. Zackson*, 12 F.3d 1178 (2d Cir. 1993) ............................ 15

*United States v. Zhong*, 26 F.4th 536 (2d Cir. 2022)............................................ 3, 21

**Federal Rules**

Fed. R. Evid. 104(b) ......................................................................................... 4
Fed. R. Evid. 403................................................................................... passim
Fed. R. Evid. 404(b) ............................................................................... passim

Months after the government was supposed to submit its motions in limine and provide Rule 404(b) notice, the government now moves ("GM") to admit a variety of prior bad acts allegedly committed by Ethan Melzer. The government's motion should be denied. It is untimely. The motion's factual assertions are directly contradicted by the government's own evidence. And the identified prior acts are not admissible as direct evidence or under Federal Rules of Evidence 404(b) and 403.

## Background

The government's 11th hour motion is not entirely clear as to (i) what specific prior acts the government now seeks to introduce at trial or (ii) the evidence the government would use to try and prove these acts. However, it appears that the government seeks to introduce the following:

- Evidence related to a January 2017 shooting that allegedly occurred when Melzer was buying a personal use quantity of marijuana near his then-home in Louisville, Kentucky (the "2017 marijuana incident"), including testimony and medical records from the drug dealer who was shot. *See* GM 5-7.

- Evidence that that Melzer was affiliated with the Bloods street gang from around 2015 to 2017. GM 5.

- Evidence that Melzer previously dealt marijuana and ecstasy around 2016 or 2017, or wanted to deal drugs in the future. GM 4-5, 7.

- Evidence that Melzer "trained with" Antifa at some unspecified time and location. GM 8.

- Evidence that Melzer was interested in Neo-Nazi ideology and expressed racist and homophobic views, prior to joining the military. GM 7-8.

None of this evidence is admissible.

1

**Applicable Law**

Federal Rule of Evidence 404(a) states that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."

Rule 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, other act evidence "may be admissible for another purpose, such as proving motive, … intent … [or] knowledge." *Id.*

Before admitting evidence under Rule 404(b), a court must consider (1) whether the evidence is offered for a proper purpose; (2) if it is relevant to a material issue in dispute; and (3) if the probative value of the evidence substantially outweighs its prejudicial effect. *See United States v. Scott*, 677 F.3d 72, 79 (2d Cir. 2012) (citing *Huddleston v. United States*, 485 U.S. 681 (1988)). The court must also give a proper limiting instruction when admitting any Rule 404(b) evidence. *See id.*

The Second Circuit has adopted an "inclusionary" approach to other act evidence but has "emphasized that this inclusionary rule is not a carte blanche to admit prejudicial extrinsic act evidence when, as here, it is offered to prove propensity." *Scott*, 677 F.3d at 79; *see also United States v. McCallum*, 584 F.3d 471, 475 (2d Cir. 2009).

To ensure that Rule 404(b) evidence is offered for a proper purpose, the proponent should do more than assert a non-propensity basis to admit the evidence.

The proponent should articulate the chain of reasoning by which the evidence is relevant for that purpose, without resort to any propensity inference. *See, e.g.*, *United States v. Edwards*, 342 F.3d 168, 178 (2d Cir. 2003) (holding other acts evidence was not relevant to "identity" because reasoning called for the "very propensity inference prohibited under Rule 404(b)"); *United States v. Sampson*, 385 F.3d 183, 192-93 (2d Cir. 2004) (finding other act evidence inadmissible because government's theory depended on jury reasoning that event showed defendant was a drug dealer, and therefore was more likely to have dealt drugs on a different occasion); *see also United States v. Gomez*, 763 F.3d 845, 856 (7th Cir. 2014) (en banc) (finding Rule 404(b) "allows the use of other-act evidence only when its admission is supported by some propensity-free chain of reasoning" and emphasizing importance of "specifically asking how the evidence tends to make a particular fact … more or less probable").

Even when there is a permissible basis to admit evidence of other acts or uncharged criminal conduct, a court may only admit the evidence if its probative value substantially outweighs the risk of unfair prejudice or confusing the issues. *See, e.g.*, *United States v. Zhong*, 26 F.4th 536, 552-53 (2d Cir. 2022) (holding court erred by admitting prior act evidence that should have been excluded under Rule 403). Evidence is unfairly prejudicial when "it tends to have some adverse effect" on a defendant "beyond tending to prove the fact or issue that justified its admission," or when it tends "to excite emotions against the defendant." *United States v. Curley*, 639 F.3d 50, 57 (2d Cir. 2011) (quoting *United States v. Massino*, 546 F.3d 123 (2d Cir. 2008)); *see also Old Chief v. United States*, 519 U.S. 172, 180 (1997) (stating evidence

is unduly prejudicial when it has a "tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one").

Similarly, under Rule 403, other act evidence should be excluded if it would necessitate a trial within a trial on an ancillary matter. *See, e.g.*, *Arlio v. Lively*, 474 F.3d 46, 53 (2d Cir. 2007) (upholding Rule 403 exclusion of evidence related to prior proceeding, recognizing that admitting evidence about previous cases "inevitably" results in trying those case before the jury); *United States v. Aboumoussallem*, 726 F.2d 906, 912 (2d Cir. 1984) (upholding exclusion of relevant evidence that would have required a "trial within a trial" and distracted the jury).

Finally, other act evidence is only admissible if the government provides sufficient proof of the other act, and a court concludes a jury could find that act by a preponderance of the evidence. *See, e.g.*, *Huddleston v. United States*, 485 U.S. 681, 689 (1988); *see also* Fed. R. Evid. 104(b) ("When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist.").

## Argument

## I.   The Court should deny the government's motion as untimely.

The government's motion in limine to admit this evidence should be denied as untimely. The Court set a deadline of February 1, 2022 for motions in limine. On that same date, the government gave its notice pursuant to Federal Rule of Evidence 404(b). Now, over four months later, the government for the first time moves to admit

evidence that it has known about since 2020. The government offers no explanation or justification for its late motion and late Rule 404(b) notice. There is none.

Rule 404(b)(3) requires a prosecutor to provide written notice of any evidence he will seek to admit under the rule sufficiently in advance of trial "to allow the defendant a fair opportunity to meet the evidence, unless the court excuses that requirement upon a showing of good cause." *See* Fed. R. Crim. P. 404 Advisory Committee Notes, 2020 Amendments; *see also, e.g.*, *United States v. Vilar*, 530 F. Supp. 2d 618, 640 (S.D.N.Y. 2008) (Sullivan, J.) (explaining notice rule is designed to reduce surprise and promote the early resolution of evidentiary issues; recognizing court has discretion to set notice deadline; and requiring Rule 404(b) notice 60 days prior to trial); *United States v. Nachamie*, 91 F. Supp. 2d 565, 577 (S.D.N.Y. 2000) (requiring notice 30 days prior to trial, since government offered "no good reason" for a later deadline); *United States v. Giffen*, 379 F. Supp. 2d 337, 345 (S.D.N.Y. 2004) (requiring Rule 404(b) notice 45 days before the start of trial); *United States v. Stein*, 424 F. Supp. 2d 720, 728 (S.D.N.Y. 2006) (requiring notice 30 days before trial).

The government's failure to comply with Rule 404(b)'s notice requirements warrants exclusion of the proffered prior act evidence. *See, e.g.*, *United States v. Frazier*, 2019 WL 761912, at *8 (S.D.N.Y. Feb. 21, 2019) (holding prior conviction evidence inadmissible under Rule 404(b) because the government failed to provide reasonable notice of its intent to introduce the evidence).

Here the government can show no good cause for disregarding this Court's motion deadline. Nor does the government explain why it was not able to provide

reasonable notice of its intent to offer this Rule 404(b) evidence, which it has known about since 2020.

The government's late notice means that Melzer will not have adequate time to investigate and prepare to meet these allegations prior to the start of trial, particularly the allegations related to the 2017 marijuana incident. The government notes that it previously disclosed certain evidence about this incident in discovery. *See* GM 2. However, the incident was well outside the timeframe of the charges in the indictment and had no apparent relevance to the current charges. Melzer accordingly had no reason to believe that it would be at issue in this trial—a view confirmed by the government's failure to move on this evidence at any time prior to its current motion. Because the government has given late notice, without cause, and Melzer will not have adequate time to prepare to address this evidence prior to the start of trial, the Court should deny the government's motion.

## II.   Nothing Melzer did prior to 2019 should be admitted as evidence of an "insight role" or O9A affiliation, because Melzer did not learn about O9A until 2019.

The indictment charges specific offenses between 2019 and May 2020. But the government argues that alleged bad acts Melzer committed years earlier are somehow direct evidence or inextricably intertwined with the charged offenses. This argument hinges on the government's claim that acts Melzer allegedly committed in 2018, 2017, and earlier were undertaken as O9A "insight roles." *See* GM 13. To the contrary, the government's own evidence conclusively demonstrates that Melzer did not learn about O9A until 2019 and did not know what an "insight role" was before

2019. As a result, nothing Melzer did prior to 2019 relates to his later affiliation with O9A and it should not be admissible on that basis.

The government has produced Melzer's chats from the messaging application Discord, which he joined on February 25, 2019, while he was in the Department of Labor's Job Corps program in Kentucky. *See* GX 1006 (2/25/19 email from Discord thanking Melzer (who had registered under username "daggerlite") for creating a Discord account) (attached as Ex. A). Melzer's Discord chats show conclusively that he was unaware of O9A until that time, and that he in fact learned about O9A primarily through Discord.

On February 28, 2019, for example, Melzer entered a channel on Discord for people interested in the occult and introduced himself by saying "Hello. … I have questions about some group I found. Don't know if you all could help." *See* USA0_012508 - UvM_000031801 (attached as Ex. B).[1] He explained, "Ok so I was going down the rabbit hole and found this group called temple [sic] ov blood [the U.S.-based O9A affiliate] … But there's literally no info I can find on them." *Id.* Melzer was then asked why he was interested in the group and whether he wished to join, and he responded: "Somebody in the comments talked about there [sic] connected to some shit called O9A. No just morbid curiosity." *Id.* Melzer explained that he was

---

[1] Melzer's Discord chats were obtained from Discord by the government pursuant to a search warrant. The chats were produced to the defense as Excel spreadsheets. Melzer is "Deleted User 831034ef#9727." For the Court's convenience, in our exhibits, which are excerpts of those chats, we have highlighted Melzer's communications in purple. All formatting errors are original to the government's production.

"[a]lways interested in really obscure shit" and that O9A and Tempel ov Blood seemed "really bizarre." *Id.* After another chat participant told Melzer that "Tempel ov Blood is vampirism," Melzer asked, "So [are they] like generic vampires or what[?]." *Id.* A chat participant informed Melzer that members of the group are "serious" vampires and involved in "the infiltration and manipulation of organizations" including "neo-nazi groups." *Id.* Melzer then said, "So there [sic] Nazi vampires. Ok then." *Id.*

The next day, March 1, 2019, Melzer entered another occult channel on Discord and told the group that he "used to go on /x/ a lot," referring to a well-known paranormal channel on the website 4chan. *See* USA0_012518 - UvM_000031811 (attached as Ex. C). Melzer said that he had decided to download Discord and come to the occult channel "mainly because somebody on [/x/] was ta[l]king about some group called O9A and I wanted to dig deeper into that." *Id.* He then asked in reference to O9A: "What are they[?]"; "Is [O9A] a meme or is it real[?]"; and, "What do they even believe in ... if anything?" *Id.* Melzer stated, "The only thing I've found even related to this is something called temple [sic] ov blood," which is "[r]eally out there they only have a website which half the shit I don't really understand." *Id.*

When another chat participant asked Melzer, "What makes you interested in these cults[?]", he replied, "Really morbid curiosity. Seemed fucked up so I said fuck it and looked it up more." *Id.*

That Melzer did not begin researching O9A until joining Discord in 2019 is further confirmed by the fact that all O9A-related documents found on his electronic devices—including all such documents the government will introduce at trial—came

into his possession in 2019 or later. In fact, he obtained many of those documents from a "library" on Discord itself. The documents include: "The Seven Fold Way of the Order of Nine Angles" (GX 901); "A Brief Order of Nine Angles Glossary" (GX 902); "Alchemical and Hermetic Antecedents of the Seven Fold Way" (GX 903); "Guide to the Kulture and Sinister Ethos of the ONA" (GX 904); "Hostia" (GX 905–06); "The Requisite ONA" (GX 911); and "The Joy of the Sinister" (GX 913), among others. These are the very documents the government relies upon to establish Melzer's understanding of O9A "insight roles." *See* GM 13-14 (citing GX 901 and 903 as informing Melzer's understanding). Yet the metadata for these documents— including, most notably, the documents' "created" date—shows that Melzer came into possession of them, at the earliest, in March 2019 (and sometimes much later), precisely at the time his Discord chats show that he had begun researching O9A. *See* Metadata for GX 901-13 (attached as Ex. D).

Put another way, there is not a single piece of evidence showing that Melzer had any O9A-related document in his possession prior to March 2019. This all amounts to overwhelming—indeed, dispositive—proof that Melzer could not possibly have been performing O9A insight roles in 2017 or 2018, since he had not yet learned about O9A and would have had no idea what an insight role was or that O9A advocated them.[2]

---

[2] It also proves that Melzer did not join the Army as an insight role or because of O9A, since, as the government observes, he enlisted with the Army in December 2018, prior to his researching O9A on Discord. GM 8.

In its motion, the government tacitly acknowledges this point by gesturing toward the fact that its own evidence shows that Melzer did not begin researching O9A until well after he supposedly performed his gang- and drug-related insight roles in 2017. *See* GM 8 ("In 2018, Melzer enrolled in the U.S. Department of Labor's Job Corps program, and at that time researched O9A and its American affiliate, the Temple [sic] ov Blood."). Though the government has the year Melzer began researching O9A incorrect—as shown above, it was 2019, not 2018—even on the government's own account it is unclear how Melzer could have been performing an O9A insight role in 2017.

Though the government's suggested timeline concerning Melzer's research and interest in O9A is not a model of clarity, a close reading of its motion shows that it has zero evidence that Melzer researched O9A prior to 2019, apart from Melzer's own online bluster in Telegram chats with CC-1. The government asserts that two of Melzer's friends, Witness-1 and -2, said in interviews that Melzer had committed crimes with a gang. But neither claimed that he did so pursuant to any supposed membership in O9A or as any kind of insight role on behalf of the group.[3] *See* GM 6-8. And though Witness-2 may have "described Melzer as being interested in neo-Nazi ideology years before he joined the military, and Melzer growing an interest in radical

---

[3] In addition, neither witness linked Melzer's supposed gang affiliation with the 2017 marijuana incident. As discussed in greater detail below, the government has no evidence that the 2017 marijuana incident was related to gang activity.

extremism as he got older," crucially, Witness-2 did *not* say that Melzer ever told Witness-2 that he was a member of or even interested in O9A prior to 2019. *Id.* at 7.

To be sure, in May 2020 Melzer told CC-1 in a Telegram chat that he had performed an insight role as a "runner" for the "bhbs" many years before. But this was nothing more than hot air, as the incontrovertible evidence described above demonstrates. As will be shown at trial, this was hardly the only false and exaggerated information Melzer put into his Telegram chats—he lied to his interlocutors regularly. The government accordingly cannot rely only on his obvious bluster to justify the claim that any of Melzer's pre-2019 conduct had anything to do with O9A when its own evidence proves it false. In fact, the evidence that Melzer did not learn of O9A until 2019 is so overwhelming that the government should affirmatively withdraw its characterization of any of Melzer's pre-2019 conduct as an insight role for O9A. It would violate Melzer's Fifth Amendment due process rights to allow the government to advance its demonstrably false and misleading theory to the jury.

## III.   Evidence related to the 2017 marijuana incident is not admissible.

In its motion, the government alleges that in January 2017 Melzer was involved in a shooting in Louisville, Kentucky. According to the person who was shot, this person was a drug dealer and Melzer arranged to buy less than an ounce of marijuana from him. When this person met Melzer to make the sale, Melzer tried to run away with the marijuana without paying for it. The drug dealer chased Melzer,

a physical struggle ensued, and the drug dealer was shot in the arm.[4] GM 6. This drug dealer received medical treatment, but never reported this incident to the police. Melzer was not charged or convicted of any crime in connection with the incident.

Nothing about this incident should be admitted at Melzer's trial.

### A.   The 2017 marijuana incident is not direct evidence of the charged crimes or "inextricably intertwined" with admissible evidence.

To start, the Court should reject the government's argument that evidence related to this 2017 marijuana incident is direct evidence or somehow "inextricably intertwined" with evidence of the crimes charged in the indictment.

Melzer is charged with discrete offenses that allegedly occurred between 2019 and May 2020, when the government asserts that he conspired and attempted to murder U.S. service members abroad. Melzer is alleged to have committed these offenses while in the army and stationed in Italy, through online conversations with alleged coconspirators that occurred in April and May of 2020.

There is no connection between the current charges and the 2017 marijuana incident. The government argues that Melzer was motivated to commit the charged 2020 crimes because of an affiliation with O9A. But, as described above, the government's own evidence demonstrates that Melzer did not even know about O9A

---

[4] According to a different person's account, this person heard that Melzer was selling and not buying drugs, and that Melzer tried to take another person's money without providing drugs before the fight started. GM 7.

until 2019, so any affiliation that he had with O9A between 2019 and 2020 cannot relate back to something he did in 2017.

Significantly, the government does not and cannot proffer *any* evidence of a relationship between this 2017 marijuana incident and O9A. The government argues that, in certain 2020 online chats, Melzer claimed that he affiliated with the Bloods gang as part of an O9A insight role. Even if the Court were to credit this statement—a determination foreclosed by other evidence—Melzers' chats do not reference the alleged 2017 marijuana incident. In his 2020 online chats, Melzer never said that he tried to steal marijuana, or that he shot someone as part of an O9A insight role—he did not discuss this alleged 2017 marijuana incident at all.

Nor is there any evidence that this 2017 marijuana incident was somehow gang-related, as the government repeatedly suggests throughout its motion. GM 13.

As a result, the government has no evidence that the 2017 incident related to O9A or anything that Melzer did between 2019 and 2020, and the evidence is not admissible as direct proof of the charged crimes.[5]

---

[5] For this reason, cases admitting evidence of a defendant's prior terrorism affiliations in trials related to terrorism charges are simply irrelevant. *See* GM 18-19 (citing terrorism prosecutions where the government entered evidence of a defendant's prior affiliation with a terrorist group). It bears repeating: the government has zero evidence that the 2017 marijuana incident was related to O9A in any way.

**B.    The 2017 marijuana incident is not admissible under Rule 404(b).**

Just as this 2017 marijuana incident is not direct evidence of the current charges, it is not admissible for any proper purpose at trial. The 2017 marijuana incident says nothing about Melzer's motive or intent to commit completely separate and unrelated offenses three years later.[6]

The government argues that the 2017 incident is relevant to Melzer's "intent," because it shows that Melzer was "previously willing to engage in violence," meaning that he was "serious about his stated plan to commit an illegal and violent attack" in 2020. GM 13-14. In other words, if Melzer committed a real-world violent act in 2017, this makes it more likely that he intended to commit a real-world violent act in 2020. This is a transparent attempt to improperly admit evidence that suggests Melzer has a bad character, some criminal propensity, or a propensity for violence. It is nothing more than "propensity evidence in sheep's clothing." *See McCallum*, 584 F.3d at 477.

Nor is the 2017 marijuana incident sufficiently similar to the charged offenses to permit a jury to draw any reasonable inferences about what Melzer knew or intended in 2019 and 2020. Even when a defendant's state of mind or intent is at issue, the government must "identify a similarity or connection between [] two acts that makes the prior act relevant to establishing knowledge of the current act."

---

[6] The government also argues that the 2017 marijuana evidence shows a lack of "mistake" or "accident" in 2020. GM 19-20. This argument is even more unpersuasive than the government's intent argument but, in any event, Melzer will not argue at trial that he committed the charged offenses by mistake or accident.

14

*McCallum*, 584 F.3d at 475 (quoting *United States v. Garcia*, 291 F.3d 127 (2d Cir. 2002)). The relevance of any prior act depends primarily on whether there is a "close parallel" between the prior act and the charged crimes. *United States v. Gordon*, 987 F.2d 902, 908 (2d Cir. 1993). "If the government cannot identify a similarity or some connection between the prior and current acts, then evidence of the prior act is not relevant to show knowledge and intent." *Garcia*, 291 F.3d at 137.

Per the government's own account, the 2017 incident involved a brief altercation over marijuana, where Melzer reportedly shot a drug dealer, possibly in self-defense, as that dealer chased and physically attacked him. The 2020 charges involve an alleged premeditated plot with coconspirators to enlist an overseas terrorist group to attack Melzer's army unit. One has no connection or meaningful similarity to the other.

Because of the significant factual differences between the 2017 and 2020 allegations, most of the cases cited by the government are simply inapposite. The 2017 and 2020 allegations do not involve the same type of crime. *Compare, e.g.*, *United States v. Martino*, 759 F.2d 998, 1005 (2d Cir. 1985) (prior drug offense admitted in new drug offense trial); *United States v. Aminy*, 15 F.3d 258, 260 (2d Cir. 1994) (same); *United States v. Pitre*, 960 F.2d 1112, 1119 (2d Cir. 1992) (same); *United States v. Caputo*, 808 F.2d 963, 968 (2d Cir. 1987) (prior credit card fraud admitted in credit card fraud trial). And they do not involve the same parties or coconspirators. *Compare, e.g.*, *United States v. Li*, 2022 WL 1740416 (2d Cir. May 31, 2022) (summary order) (prior act involved same participants as charged offense); *United States v.*

15

*Zackson*, 12 F.3d 1178, 1183 (2d Cir. 1993) (same); *United States v. Concepcion*, 983 F.2d 369, 392 (2d Cir. 1992) (same).

Indeed, courts in this Circuit have regularly rejected the admission of significantly more similar prior act evidence because it was not meaningfully probative of a defendant's knowledge or intent—and therefore would only tend to show that the defendant had some criminal propensity. *See, e.g.*, *Gordon*, 987 F.2d at 908-09 (holding trial court committed prejudicial error by admitting evidence of prior drug transaction that was dissimilar from current drug charge); *Garcia*, 291 F.3d at 137-38 (holding prior drug offense was not admissible in later drug offense trial, although both involved cocaine); *United States v. Tubol*, 191 F.3d 88, 95-96 (2d Cir. 1999) (holding district court erred by admitting evidence defendant previously planted a bomb in trial of charge of bank robbery threatening use of a bomb); *United States v. Gonzalez*, 2009 WL 1834317, at *2 (S.D.N.Y. June 24, 2009) (excluding evidence of prior drug convictions in drug case where defendant's intent was at issue, even though they involved the same type of drugs, because the incidents were otherwise factually dissimilar); *United States v. Stein*, 521 F. Supp. 2d 266, 274 (S.D.N.Y. 2007) (excluding various proffered prior bad acts of tax evasion in tax fraud trial, based both on relevance and undue prejudice grounds).

## C.   The 2017 marijuana evidence should be excluded under Rule 403.

Even if there were a proper basis to admit evidence of the 2017 marijuana incident, this evidence should be excluded under Rule 403's balancing test. The

minimal probative value of this evidence is far outweighed by the risk of undue prejudice, confusion of the issues, and wasting time.

First, admitting this evidence would require a trial within a trial. Melzer has no prior criminal convictions and was never arrested or charged with any offense in connection with the 2017 marijuana incident. For this evidence to be relevant, the government would have to prove (i) exactly what happened, (ii) that Melzer was the person involved in this incident, (iii) that any actions Melzer took were somehow unlawful and not taken in self-defense, and (iv) that these actions were part of a premeditated "sinister" plot to commit violence.

The government has no such proof. At best for the government, assuming *arguendo* the involved drug dealer could identify Melzer and that the witnesses are truthfully recounting what happened, this drug dealer chased and physically assaulted a fleeing Melzer, who then shot him in the arm. This account on its own suggests that Melzer was acting in self-defense, and that any violence was instigated by the drug dealer himself and not planned by Melzer. (The government's motion does not disclose whether this drug dealer had a weapon, though drug dealers often carry guns. *See, e.g.*, *United States v. Muniz*, 60 F.3d 65, 71 (2d Cir. 1995).)

The evidence is also unduly prejudicial. The charges against Melzer do not involve any actual, real-world violence. His alleged crime consisted of talking with people online. An actual, physical shooting is of a different character. *See Tubol*, 191 F.3d at 95-96 (finding prejudicial error and reversing convictions where defendant

was charged with robbing a bank by writing note threatening to use a bomb and government entered evidence defendant had previously planted an actual bomb).

In addition, although Melzer has lawfully possessed and carried guns—like many citizens of this country—a New York jury will likely be unduly prejudiced against Melzer based exclusively on the allegation that he used a gun outside of the context of his military service, even if it was to defend himself.

This case is analogous to *United States v. Curley*, 639 F.3d 50 (2d Cir. 2011), where the Second Circuit vacated the defendant's conviction and ordered a new trial based on the erroneous admission of other act evidence. In *Curley*, the defendant was charged with stalking and harassing his wife by making repeated verbal threats, including threats to "kill" her. *See id.* at 54. The government sought to admit other act evidence, including evidence that the defendant's brother had previously abused the wife, and that, during a traffic stop, the defendant was found in possession of rifles and ammunition. *See id.* at 55. The government argued that the brother's abuse was relevant to show the wife's fear of the defendant, and the rifles were relevant to show the defendant was planning to follow through on his threats and kill his wife; the court admitted the evidence on that basis. *See id.* at 55-56.

The Second Circuit held this evidence should not have been admitted. The Circuit noted that the evidence was not "sufficiently similar" and lacked the "necessary parallel to the charged acts" to be relevant. *Id.* at 59-61. In particular, the rifle possession could only relate to the charged crimes through a "tenuous and unduly long chain of inferences," without evidentiary support. *Id.* at 61.

18

At the same time, the evidence carried a "high risk" of unfair prejudice: the gun and ammunition were "significantly more sensational and disturbing" than the verbal threats the defendant had made, and "certain to arouse the jury's emotions" against him. *Id.* at 62. Further, "[t]he introduction of guns into the trial was especially troubling because it tended to show [the defendant] was more violent and disturbed than he appeared from the other evidence." *Id.* Thus, the Circuit held that admission of this evidence was an abuse of discretion and vacated the conviction.

For similar reasons, evidence concerning the 2017 marijuana incident carries a high risk of undue prejudice, which far exceeds any slight probative value. The 2017 marijuana incident can only be connected to the current charges through a tenuous and speculative chain of inferences that are totally unsupported by evidence. And Melzer's alleged possession and use of a gun, and the actual violence involved in the 2017 marijuana incident, are far more sensational than the conspiracy and attempt charges against Melzer. *See Curley*, 639 F.3d at 62. The evidence would also tend to excite jurors' emotions against Melzer and encourage the jury to find him guilty on an improper basis or because they believed he had some criminal propensity. *See, e.g.*, *id.* at 62-63; *United States v. Williams*, 585 F.3d 703, 709-10 (2d Cir. 2009) (vacating conviction where court improperly admitted evidence of prior gun possession and drug dealing in gun possession trial, due to "shocking" nature of prior act evidence); *United States v. Midyett*, 603 F. Supp. 2d 450, 456 (E.D.N.Y. 2009) (excluding evidence of a defendant's prior "scuffle and assault" involving police officer, since the evidence would be "more inflammatory, sensational and/or disturbing to the jury"

than the pending drug charges, and the lack of similarity between the two incidents assured that the prior act evidence would be "inflammatory and non-probative"); *United States v. Cruz*, 343 F. Supp. 2d 226, 232 (S.D.N.Y. 2004) (excluding evidence of prior robberies, since evidence might suggest defendant was "a habitual armed robber").

### IV.   The government's other proffered evidence is not admissible.

In addition to evidence related to the 2017 marijuana incident, the government apparently moves to admit evidence that Melzer (i) affiliated with the Bloods street gang around 2015 to 2017, *see* GM 5; (ii) dealt marijuana and ecstasy around 2016 or 2017, or wanted to deal drugs in the future, *see* GM 4-5, 7; (iii) trained with Antifa at some unspecified time and location, *see* GM 8; and (iv) showed interest in Neo-Nazi ideology and expressed racist and homophobic views prior to joining the military, *see* GM 7-8. None of this evidence is admissible as it is both irrelevant and unduly prejudicial.

To begin, any government argument that any of this conduct was part of an O9A insight role fails for the same reason as the government's argument on the marijuana incident: the incontrovertible evidence shows that Melzer was unaware of O9A, and insight roles, until 2019. Any conduct he engaged in prior to 2019—whether

it involved gang activity, training with Antifa,[7] or drug dealing—simply cannot have been connected to O9A; the government should not be permitted to argue otherwise.

Nor is this evidence admissible for any other proper purpose. Absent any link to an O9A insight role, evidence of gang activity, drug dealing, or training with Antifa has nothing to do with Melzer's actual charges and so would be nothing more than impermissible propensity evidence. Melzer is not charged, for example, with any drug offenses, so evidence that he had previously dealt drugs or that he wanted to deal drugs in the future is irrelevant. And none of this remote, dissimilar evidence makes it any more likely that Melzer intended to murder U.S. service members many years later. This evidence is thus not needed "to complete the story of the crime on trial" or to demonstrate some fact in issue. *United States v. Kaiser,* 609 F.3d 556, 570 (2d Cir. 2010) (quoting *United States v. Carboni,* 204 F.3d 39, 44 (2d Cir. 2000)); *see also Zhong*, 26 F.4th at 552 ("If necessary, the government may introduce evidence of uncharged criminal conduct to complete the story of the crime on trial, not to tell a new one.") (cleaned up). The sheer irrelevance of this evidence is no doubt the reason the government never moved to admit any of it previously, either as direct or Rule 404(b) evidence. There is nothing new that has suddenly rendered it admissible.

As for evidence that Melzer expressed Neo-Nazi, racist, and homophobic views before joining the military, whatever minimal probative value such evidence might

---

[7] The government's evidence that Melzer trained with Antifa is particularly thin. It appears that there is no evidence of this whatsoever, apart from Melzer's own statement to CC-1 in Telegram chats.

21

have is substantially outweighed by its risk of prejudice. Indeed, the government's proposed testimony invoking Melzer's views on the Pulse Nightclub or Route 91 Harvest Festival shootings would serve no purpose other than to link Melzer in the jury's mind to horrific acts of violence that occurred many years before the charged offenses and that he had nothing to do with. Moreover, the evidence this Court has already ruled admissible will amply demonstrate that Melzer held abhorrent views at the time of his charged crimes (and before), so calling a witness (or witnesses) to add sensational content to those beliefs would lead to "undue delay, wasting time, or needlessly presenting cumulative evidence," and should be precluded under Rule 403.

## V.  Even if some evidence of Melzer's prior acts is admitted, evidence of the 2017 marijuana incident should still be precluded under Rule 403.

Finally, even were the Court to admit some evidence of Melzer's alleged gang or drug-dealing activities, it should still decline to admit evidence concerning the 2017 marijuana incident under Rule 403 for the reasons discussed above. *See* Point III.C, *supra*. That evidence carries a particularly heightened risk of prejudice vis-à-vis the government's other proposed evidence since it concerns an alleged act of actual violence on Melzer's part. This evidence would so severely "excite emotions against the defendant," *Curley*, 639 F.3d at 57, that admitting it under any circumstances would deprive him of a fair trial.

Moreover, if the government's goal is to establish that Melzer's supposed gang or drug activity was an O9A insight role, then it is unnecessary to introduce evidence that Melzer supposedly shot someone to further that goal. Melzer's supposed

commission of any particular act of violence does not make it more or less likely that any gang or drug activity on his part was pursuant to an insight role. He could have been performing an insight role and committed no act of violence; or he could have committed an act of violence yet not have been performing an insight role. That he supposedly committed any specific act of violence is irrelevant in that context. The Court should preclude all evidence of the 2017 marijuana incident.

## Conclusion

The Court should exclude the government's proffered other act evidence.

Dated:  New York, New York
        June 16, 2022

Respectfully submitted,

Federal Defenders of New York, Inc.

/s/ _____
Sarah Baumgartel
Jonathan Marvinny
Ariel Werner
Hannah McCrea
Attorneys for Ethan Melzer
52 Duane Street, 10th Floor
New York, New York 10007
Tel.: (212) 417-8700