UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

UNITED STATES OF AMERICA        :        S1 20 Cr. 314 (GHW)

      - v. -        :

ETHAN PHELAN MELZER,        :

      *Defendant.*        :

-------------------------------------------------------------------x

**DEFENDANT ETHAN MELZER'S MEMORANDUM OF LAW IN
OPPOSITION TO THE GOVERNMENT'S MOTION *IN LIMINE* TO
PRECLUDE THE TESTIMONY OF DEFENSE EXPERT DR. DAVID
GREENFIELD**

Federal Defenders of New York
Attorney for Ethan Melzer
52 Duane Street - 10th Floor
New York, New York 10007
Tel.: (212) 417-8700

*Of Counsel*

To:   Damian Williams, Esq.
      United States Attorney
      Southern District Of New York
      One St. Andrew's Plaza
      New York, New York 10007
      Attn:  Samuel Adelsberg, Esq.
             Matthew Hellman, Esq.
             Kimberly J. Ravener, Esq.
             Assistant United States Attorneys

## Table of Contents

PRELIMINARY STATEMENT.............................................................................1

ARGUMENT ...................................................................................................2

    I.    Dr. Greenfield's testimony will be relevant and helpful ...................................2

    II.    Dr. Greenfield's testimony is the product of reliable methods .......................9

    III.    Dr. Greenfield's testimony does not contravene Federal Rule of Evidence 704(b), Federal Rule of Criminal Procedure 12.2(b), or the Insanity Defense Reform Act ...................................................................................................13

    IV.    Dr. Greenfield's testimony does not run afoul of Rule 403 ..........................15

CONCLUSION.............................................................................................16

Table of Authorities

## Cases

*Alto v. Sun Pharm. Indus., Inc.*, 2021 WL 4803582 (S.D.N.Y. Oct. 13, 2021).............3
*Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256 (2d Cir. 2002) .................10
*Arista Records LLC v. Lime Group LLC*, 2011 WL 1674796 (S.D.N.Y. May 2, 2021) 6
*Chen-Oster v. Goldman, Sachs & Co.*, 114 F. Supp. 3d 110 (S.D.N.Y. 2015).............3
*Davis v. Carroll*, 937 F. Supp. 2d 390 (S.D.N.Y. 2013) .............................10
*In re Zyprexa Prod. Liab. Litig.*, 489 F. Supp. 2d 230 (E.D.N.Y. 2007).....................8
*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999)...................................10
*Lickteig v. Cerberus Cap. Mgmt., L.P.*, 2022 WL 671630 (S.D.N.Y. Mar. 7, 2022) ...10
*McCullock v. H.B. Fuller Co.*, 61 F.3d 1038 (2d Cir. 1995).......................13
*Stagl v. Delta Air Lines, Inc.,* 117 F.3d 76 (2d Cir.1997) ..........................8
*U.S. v. D'Amelia*, No. 07 Cr. 548 (CM) (S.D.N.Y. Jan. 28, 2009).....................1, 7, 12
*United States v. Bright*, No. 19 Cr. 521 (PKC) (S.D.N.Y. Feb. 7, 2020) .................4, 6
*United States v. Cohen*, 510 F.3d 1114 (9th Cir. 2007) ................................9
*United States v. Dupre,* 462 F.3d 131 (2d Cir. 2006)..........................................14, 15
*United States v. Hankey*, 203 F.3d 1160 (9th Cir. 2000)..............................10
*United States v. Jones*, 2018 WL 1115778 (S.D.N.Y. Feb. 27, 2018) ....................3, 14
*United States v. Joseph*, 542 F.3d 13 (2d Cir. 2008)....................................6, 9, 10, 13
*United States v. Kidd*, 385 F. Supp. 3d 259 (S.D.N.Y. 2019) .........................9, 11, 12
*United States v. Laureys*, 866 F.3d 432 (D.C. Cir. 2017) ...........................7
*United States v. Litvak*, 808 F.3d 160 (2d Cir. 2015) .................................9
*United States v. Maxwell*, 2021 WL 5283951 (S.D.N.Y. Nov. 11, 2021)...................11
*United States v. McBride*, 786 F.2d 45 (2d Cir. 1986).......................................12, 15
*United States v. Onumonu*, 967 F.2d 782 (2d Cir. 1992) .......................9, 15
*United States v. Randall*, No. 19 Cr. 131 (PAE) (S.D.N.Y. Feb. 25, 2020)................7
*United States v. Ray*, 2022 WL 101911 (S.D.N.Y. Jan. 11, 2022)............................11
*United States v. Ray*, 2022 WL 292800 (S.D.N.Y. Feb. 1, 2022).........................14, 15
*United States v. Romano*, 794 F.3d 317 (2d Cir. 2015) .............................10
*United States v. Torres*, 2021 WL 1947503 (S.D.N.Y. May 13, 2021)........ 4, 10, 11, 12
*United States v. Valle*, 2013 WL 440687 at *7 (S.D.N.Y. Feb. 2, 2013)................6, 15

## Other Authorities

David N. Greenfield, *Overcoming Internet Addiction for Dummies* 158 (2021)........12
David N. Greenfield, *Psychological Characteristics of Compulsive Internet Use: A Preliminary Analysis*, CYBERPSYCHOLOGY & BEHAVIOR, Vol. 2, No. 5, 1999..........5

## Rules

Fed. R. Crim. Pro. 12.2(b)....................................................................14
Fed. R. Evid. 704................................................................................14

**Treatises**

Modern Federal Jury Instructions § 19-4 ...................................................................... 4

Modern Federal Jury Instructions § 19-6 ...................................................................... 4

## PRELIMINARY STATEMENT

The way that people behave and interact on the Internet is at the heart of this case. In particular, the government's case is premised on a supposed conspiracy between Ethan Melzer and alleged co-conspirators who met and communicated almost entirely through online chats. Dr. David Greenfield is a psychologist who specializes in Internet behavior and culture. His testimony is essential to Mr. Melzer's defense. The government's arguments for excluding Dr. Greenfield's testimony all lack merit.

Dr. Greenfield's testimony will be relevant and helpful to the jury. He will help contextualize the primary evidence in this case—chats on the messaging application Telegram, as well as images and videos shared in those chats. He will testify, as he has in a prior trial in this district, about the prevalence of lying, role playing, and fantasy on the Internet. *See U.S. v. D'Amelia*, No. 07 Cr. 548 (CM) (S.D.N.Y. Jan. 28, 2009) (transcript attached as Exhibit A). He will explain psychological dynamics such as "perceived anonymity," "disinhibition," "accelerated intimacy," "variable reinforcement," and "broadcast intoxication," all of which are relevant to the jury's understanding of the context and dynamics of the online chats at the center of this case.

Also contrary to the government's assertion, Dr. Greenfield's testimony will stem from reliable methodology, including his own research and writing on Internet use and behavior, his ongoing review of related academic literature, and his clinical work with thousands of patients over decades of practice. And while the government

complains that Dr. Greenfield's work is not tailored to the specific subset of people whose online lies, chats, and role playing relate to "violent crime, extremism, or terrorism-related activity," Gov't Mot. 20, the law does not require a defense expert's testimony to be so finely tailored to the government's narrative of a case.

Finally, Dr. Greenfield's testimony will not contravene the Federal Rules of Evidence, the Federal Rules of Criminal Procedure, or the Insanity Defense Reform Act. He will offer no conclusions about Ethan Melzer's individual mental condition, state of mind, or Internet use. He will offer no testimony about Mr. Melzer at all. Rather, Dr. Greenfield's testimony is relevant to helping the jury understand the types of online chats and communities that are central to this case. His testimony will help the jury understand why chat participants may have misrepresented their identities, or facts about themselves, and expressed the sort of offensive and inflammatory ideas contained in some of the chats, even if they did not necessarily intend to follow through on what they said or commit future acts of violence.

The government's motion to preclude Dr. Greenfield's testimony should be denied.

## ARGUMENT

## I.     Dr. Greenfield's testimony will be relevant and helpful

The government argues that Dr. Greenfield's testimony is irrelevant because he will not opine about Ethan Melzer's Internet usage in particular and because testimony about the "generic characteristics of Internet use" will not aid in the jury's understanding of the evidence. Gov't Mot. 11. The government also takes

issue with the fact that Dr. Greenfield's work is not focused on the specific behaviors and psychology of people chatting about "terrorism, white supremacy, or radicalization." *Id.*

Courts in the Second Circuit adhere to the "liberal admissibility standards of the Federal Rules of Evidence." *Alto v. Sun Pharm. Indus., Inc.*, No. 19 Civ. 9758 (GHW), 2021 WL 4803582, at *3 (S.D.N.Y. Oct. 13, 2021). "There is a presumption that expert evidence is admissible." *Chen-Oster v. Goldman, Sachs & Co.*, 114 F. Supp. 3d 110, 115 (S.D.N.Y. 2015), *objections overruled*, 325 F.R.D. 55 (S.D.N.Y. 2018). Dr. Greenfield's testimony easily meets "the low bar of relevance" under Federal Rule 702. *United States v. Jones*, No. 16 Cr. 553 (AJN), 2018 WL 1115778, at *9 (S.D.N.Y. Feb. 27, 2018). The government's contrary arguments all fail.

As an initial matter, the government is wrong to suggest that Dr. Greenfield's testimony is irrelevant because he will not testify that Mr. Melzer is an Internet addict. Dr. Greenfield is not only an expert in Internet *overuse*; he is an expert on Internet *use and behavior*. *See* Ex. A at 133 (testifying about his expertise on "internet behavior, internet addiction, and problems that come up from dealing with computers and the internet"); *id.* at 137 ("Internet addiction is the subcategory of the broader term of internet behavior. Some people become addicted to the internet, overuse it, or abuse it. But I have written about the general internet issues, as well as internet behavior in addition to problems with the internet or internet pathologies."). He will testify that a person's online activity can be problematic even when it does not rise to the level of a compulsion or addiction. The behavioral

3

phenomena Dr. Greenfield explores in his work—including role play, lying, accelerated intimacy, and disinhibition—occur among even non-addicted Internet users.

Relatedly, the government is mistaken when it argues that Dr. Greenfield's testimony could only be relevant if he specifically examined Mr. Melzer or were to opine on Mr. Melzer's state of mind in particular. To the contrary, the government routinely offers expert testimony, and courts routinely admit such testimony, where the expert has not personally examined the defendant or a particular witness if the testimony is otherwise helpful and relevant to issues at the trial. *See, e.g.*, *United States v. Torres*, No. 20 Cr. 608 (DLC), 2021 WL 1947503, at \*6-8 (S.D.N.Y. May 13, 2021) (admitting government expert testimony concerning "coercive control," even though expert had not personally examined the victim and could not opine on whether victim had been coercively controlled); *United States v. Bright*, No. 19 Cr. 521 (PKC) (S.D.N.Y. Feb. 7, 2020) (age play expert who did not evaluate the defendant nonetheless allowed to testify at trial).

Dr. Greenfield's testimony is relevant to the jury's assessment of evidence regarding Internet chats and relationships, and to the jury's consideration of whether the chat participants knowingly and willfully entered a conspiracy and specifically intended to further its purported aim. *See* Modern Federal Jury Instructions §§ 19-4, 19-6. Through Dr. Greenfield's own research on Internet behavior, his continued engagement with academic literature in his field, and his clinical practice, he has studied the way people engage with others online and the

4

frequency with which people lie, role play, and engage in fantasy in online exchanges. Ex. A at 150-51. In a 1999 study, Dr. Greenfield surveyed more than 17,000 people about their Internet use and behavior. *See* David N. Greenfield, *Psychological Characteristics of Compulsive Internet Use: A Preliminary Analysis*, CYBERPSYCHOLOGY & BEHAVIOR, Vol. 2, No. 5, 1999. In addition to confirming that people routinely lie online, the survey found that 41% of respondents and 75% of Internet-addicted respondents experienced "accelerated intimacy" online; 43% of respondents and 80% of Internet-addicted respondents reported experiencing "disinhibition" online; and 39% of respondents and 83% of Internet-addicted respondents reported experiencing a loss of boundaries online. *Id.* at 410. Over the last two decades, he has observed these same patterns in the work of other scholars and in his own clinical work with well over one thousand patients. Ex. A at 148.

Dr. Greenfield's understanding of these behavioral and psychological dynamics is further informed by his knowledge of the fundamentals of neurobiology, which he discusses in his writing and taught during his twenty years on the faculty of the University of Connecticut School of Medicine. *See* May 24, 2022 Expert Notice at 2-3 (attached as Exhibit B). Use of the Internet has been shown to elevate users' levels of dopamine, a pleasure-stimulating neurotransmitter. *Id.* The Internet's efficacy as a dopamine delivery platform is one factor in its addictive potential. And—like cocaine, gambling, sex, or anything else that impacts a person's dopamine levels—the Internet's dopaminergic impact is not limited to addicts. Dr.

5

Greenfield will explain how the biological impetus to pursue further dopamine hits can affect users' behavior, whether or not they can be classified as "addicts."

The government next suggests that Dr. Greenfield's testimony is not helpful, because "generic" Internet use is a "basic topic that jurors are capable of understanding on their own." Gov't Mot. 11. This contention misconstrues the nature of Dr. Greenfield's expertise and proposed testimony. Most jurors will have a basic familiarity with the Internet as a medium, but few if any will be knowledgeable about the behavioral and psychological dynamics Dr. Greenfield has explored for more than 20 years through his academic and clinical work, or how these dynamics affect Internet users. Dr. Greenfield is not being called to define what a chat room is; he is being called to explain what happens psychologically and neurobiologically when people engage one another in that chat room.

Courts in this district have allowed expert testimony regarding Internet behavior or fora that may be unfamiliar to jurors. *See Bright*, No. 19 Cr. 521 (PKC) (admitting expert testimony to define the concept of "age-based role play"); *United States v. Valle*, 12 Cr. 847 (PGG), 2013 WL 440687 at *7 (S.D.N.Y. Feb. 2, 2013) (admitting expert on Internet role-playing and online sexual fetish sub-culture); *Arista Records LLC v. Lime Group LLC*, No. 06 Civ. 5936 (KMW), 2011 WL 1674796 (S.D.N.Y. May 2, 2021) (allowing expert testimony about the "availability of free music on the internet, and the ways in which consumers access and use it"); *cf. United States v. Joseph*, 542 F.3d 13, 21-22 (2d Cir. 2008) (suggesting in *dicta* that it was error to exclude expert testimony on internet role-playing), *abrogated on*

6

*other grounds by Hedgpeth v. Pulido*, 555 U.S. 57 (2008). Indeed, Dr. Greenfield

himself has been qualified in this district as an expert on similar subjects—Internet

culture and behavior, including lying and role play—over the government's

objection. *D'Amelia*, No. 07 Cr. 548; *see also United States v. Laureys*, 866 F.3d 432

(D.C. Cir. 2017) (concluding that defendant was "denied his right to the effective

assistance of counsel by trial counsel's failure to secure expert mental health

testimony" in a case where counsel identified but did not call Dr. Greenfield as a

witness). Here, as in *D'Amelia*, Dr. Greenfield will not testify about any

examination or treatment of Mr. Melzer, but his testimony is nonetheless relevant

(indeed, critical to Mr. Melzer's case) and accordingly should be admitted at trial.

 The government also challenges the relevance of Dr. Greenfield's testimony

on the ground that he lacks specific expertise on "terrorism, white supremacy,

jihadism, or radicalization." Gov't Mot. 16-17. But Dr. Greenfield's expertise is

broadly applicable to the Internet and the way it impacts users' psychology and

behavior. The government offers nothing to suggest that these dynamics—such as

fantasy play and disinhibition—function differently when people chat about

"terrorists and terrorist organizations" online. And if the government seeks to show

otherwise, it is welcome to cross-examine Dr. Greenfield on the topic or to attempt

to elicit the testimony they seek from their own expert. *See, e.g., United States v.

Randall*, No. 19 Cr. 131 (PAE), ECF Dkt. 335 at 31-37 (S.D.N.Y. Feb. 25, 2020)

(rejecting challenge to expert witness whose research related to trauma bonds

involving underage foreign nationals, where victims in current case were domestic-

born adults, because the expert's method was generally reliable and the defense was "at liberty to cross-examine" the expert regarding the research, noting "'vigorous cross-examination' and the 'presentation of contrary evidence' are the central tools available to an adversary who wishes to debunk the expert's testimony"); *In re Zyprexa Prod. Liab. Litig.*, 489 F. Supp. 2d 230, 282 (E.D.N.Y. 2007) ("If the expert has educational and experiential qualifications in a general field closely related to the subject matter in question, the court will not exclude the testimony solely on the ground that the witness lacks expertise in the specialized areas that are directly pertinent.") (citing *Stagl v. Delta Air Lines, Inc.,* 117 F.3d 76, 80 (2d Cir.1997)).

At issue in this trial is whether Mr. Melzer and strangers on the Internet intended to form and carry out a plan of attack on a U.S. military base, or whether they were engaged in offensive but disingenuous and noncriminal Internet chats, as the defense will contend. During the trial, the jury will learn about concrete ways different chat participants misrepresented themselves. To take one example, the government's alleged "CC-1" held himself out in the chats to be a former Canadian paratrooper who had seen combat in Iraq. In reality, however, he was a 15-year-old child. Absent expert testimony, the jury will struggle to understand why a person might fundamentally misrepresent themselves in this way online, or might conclude that it must be aberrational behavior. Dr. Greenfield's testimony will help the jury contextualize CC-1's (and many others in the chats) misrepresentations.

In this way, Dr. Greenfield's testimony about Internet culture and behavior—including the extent to which people in online spaces lie and struggle to tell whether others are lying or pretending—will elucidate online dynamics and behavior that may not be "familiar to most jurors" and which would help them to understand this evidence. *See Joseph*, 542 F.3d at 22. It is essential to Mr. Melzer's defense and must not be excluded. *See United States v. Litvak*, 808 F.3d 160, 181-82 (2d Cir. 2015) (vacating conviction and remanding for new trial where district court excluded defense expert whose testimony went to the "central issue" in case); *United States v. Onumonu*, 967 F.2d 782, 789 (2d Cir. 1992) (reversing and remanding where exclusion of defense expert "may well . . . have produced a different verdict" and deprived defendant of a "fair opportunity to present his case to the jury"); *see also United States v. Cohen*, 510 F.3d 1114, 1127 (9th Cir. 2007) (improper exclusion of expert testimony is not harmless where "essential to the defense").

## II.    Dr. Greenfield's testimony is the product of reliable methods

The government is also wrong to suggest that Dr. Greenfield's testimony "is not rooted in any reliable bases or methodology." Gov't Mot. at 17. There is no question that Dr. Greenfield's testimony—rooted in his own research and writing, decades of clinical practice, and continued review of relevant academic literature—is reliable and based on widely recognized and accepted methodologies in his field. The test of an expert's reliability "is a 'flexible' one, and the considerations set forth in *Daubert* do not constitute a definitive checklist or test." *United States v. Kidd*, No. 18 Cr. 872 (VM), 385 F. Supp. 3d 259, 263 (S.D.N.Y. 2019) (quoting *Kumho Tire*

*Co. v. Carmichael*, 526 U.S. 137, 150 (1999)); *see also United States v. Romano*, 794 F.3d 317, 330 (2d Cir. 2015) (same). A district court has "broad discretion in determining what method is appropriate for evaluating reliability under the circumstances of each case." *Torres*, 2021 WL 1947503, at *5 (quoting *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002)). In social science fields like Dr. Greenfield's, "reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." *Joseph*, 542 F.3d at 21 (quoting *United States v. Hankey,* 203 F.3d 1160, 1169 (9th Cir. 2000)). This is so because "[s]ocial science research, theories and opinions cannot have the exactness of hard science methodologies," and "[p]eer review, publication, potential error rate, etc.... are not applicable to this kind of testimony." *Id.*; *see also Lickteig v. Cerberus Cap. Mgmt., L.P.*, No. 19 Civ. 5263 (GHW), 2022 WL 671630, at *18 (S.D.N.Y. Mar. 7, 2022) (noting that where expert testimony "does not rest on traditional scientific methods, the court may permit testimony 'where a proposed expert witness bases her testimony on practical experience rather than scientific analysis.'") (quoting *Davis v. Carroll*, 937 F. Supp. 2d 390, 412 (S.D.N.Y. 2013)).

Dr. Greenfield has been a scholar and practitioner of psychology related to Internet use and behavior for more than two decades. These topics became the focus of his career in the late nineties, when he founded the Center for Internet and Technology Addiction and conducted a seminal statistical study of thousands of Internet users. *See* Ex. B. In the years since, the conclusions of that study have been confirmed by other scholars, whose work is familiar to Dr. Greenfield. *See* Ex. A at

152. He has also deepened his understanding of Internet behavior and psychology through his extensive clinical work with well over a thousand patients. *Id.* at 150-51. As Dr. Greenfield can attest, in the field of psychology, reliance on such clinical work and observations is a generally accepted methodology.

Courts in this district routinely admit testimony by psychologists based upon their experience and training, clinical practice, and research by others in the field with which they are familiar employing similar methods and standards. *See, e.g.*, *United States v. Ray*, No. 20 Cr. 110 (LJL), 2022 WL 101911, at *11 (S.D.N.Y. Jan. 11, 2022) (admitting psychological testimony based training and clinical practice); *United States v. Maxwell*, No. 20 Cr. 330 (AJN), 2021 WL 5283951, at *3 (S.D.N.Y. Nov. 11, 2021) (rejecting, as "misplaced in the field of clinical psychology," defense objection to expert methodology based on personal experience with clients whose experience expert did not very as truthful and where expert could not identify any error rate); *Kidd*, 385 F. Supp. 3d at 264; *Torres*, 2021 WL 1947503, at *6-7 (admitting psychological testimony based on "qualitative interviews" and "synthesis and interpretation" of them).

Here, the government offers nothing to question the reliability of Dr. Greenfield's observations on or analysis of the behavioral and psychological effects of Internet use. The government's assertion that "Dr. Greenfield acknowledges throughout his book . . . that his theories lack general acceptance in the scientific community" is misleading, relying on cherry-picked quotes about the evolving scientific understanding of Internet addiction and its treatment. Gov't Mot. 18. And

while the government tells this Court that Dr. Greenfield's "concept of 'compulsive Internet addiction' is not recognized in the Diagnostic and Statistical Manual of Mental Disorders (DSM-5) or by the World Health Organization," *id.* at 19, the very page of Dr. Greenfield's book cited by the government for that assertion states that "there are numerous diagnostic labels for this disorder," the "most agreed-upon" being "Internet gaming disorder," which *does* appear in the DSM-5 and the World Health Organization's classification. *See* David N. Greenfield, *Overcoming Internet Addiction for Dummies* 158 (2021). He goes on to state that while "no final consensus exists on which diagnostic markers and symptoms are necessary to warrant" the label of addiction, "there is an overall agreement that a clinical problem exists with compulsive Internet and screen use." *Id.* at 148.[1] Moreover, the "mere fact that there may be conflicting testimony by experts" is not a sufficient basis to exclude evidence, because "not uncommonly, there is conflict among experts on most any subject." *United States v. McBride*, 786 F.2d 45, 51 (2d Cir. 1986). In any event, inclusion in the DSM is not required for a psychological expert's analysis to be reliable and admissible. *See, e.g., United States v. Kidd*, 385 F. Supp. 3d 259, 261 (S.D.N.Y. 2019) (admitting psychologist's testimony about the "pimp-prostitute" relationship, although not included in the DSM); *Torres*, 2021 WL 1947503 at *6-7

---

[1] Similarly misleading is the government's claim that "Dr. Greenfield specializes in providing laypeople with self-diagnostic tools and tests to evaluate their own or others' addiction to or use of technology," an attempt at reducing his 40-year career to a two-page self-assessment in his most recent book, a text on Internet addiction designed for popular audiences. Gov't Mot. 20. Dr. Greenfield is an experienced academic and clinician, as his C.V. and his testimony in *United States v. D'Amelia* make abundantly clear. *See* Ex. A; Ex. B.

(admitting psychologist's testimony about "coercive control," although not included in the DSM).

Repackaging its meritless relevance arguments, the government last argues that Dr. Greenfield's methodology is not reliable as applied to the facts of this case because he has not written, published, or presented on "the nexus between Internet addiction and violent crime, extremism, or terrorism-related activity." Gov't Mot. 20. But Dr. Greenfield's testimony is generally applicable to the subject of how people behave and perceive others online. The government provides no basis for its position that the dynamics about which he will testify function any differently when users are engaging with one topic or another. And to the extent that the government wishes to challenge this or any other aspect of Dr. Greenfield's training and experience, "the place to [do so] . . . is 'on cross-examination.'" *Joseph*, 542 F.3d at 21 (quoting *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1043 (2d Cir. 1995)). Any such challenge goes to his testimony's weight rather than its admissibility. *Id.* at 21-22.

### III. Dr. Greenfield's testimony does not contravene Federal Rule of Evidence 704(b), Federal Rule of Criminal Procedure 12.2(b), or the Insanity Defense Reform Act

The government contends that Dr. Greenfield's testimony "runs afoul of Rule 704(b)" and the Insanity Defense Reform Act (IDRA) by "improperly seek[ing] to raise a defense of diminished capacity or mitigation . . . without any Rule 12.2 notice." Gov't Mot. 22. This argument is meritless as well.

Rule 704(b) bars an expert witness from stating an opinion "about whether the defendant did or did not have a mental state or condition that constitutes an

element of the crime charged or of a defense." Fed. R. Evid. 704.  And Federal Rule of Criminal Procedure 12.2(b) requires a defendant who "intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on ... the issue of guilt" to provide written notice to the government that he intends to do so. Fed. R. Crim. Pro. 12.2(b). Because Dr. Greenfield will not testify about Ethan Melzer's specific mental state or about any mental disease or defect that Mr. Melzer might suffer, his testimony does not implicate either Rule 704(b) or Rule 12.2(b).

Nor is the IDRA implicated here. While the IDRA "restricts a criminal defendant's ability to utilize mental health evidence as an affirmative defense, courts have consistently held that 'the IDRA does not preclude a defendant from submitting evidence of mental health for the purpose of negating the intent element of a crime.'" *Jones*, 2018 WL 1115778, at *4 (quoting *United States v. Dupre,* 462 F.3d 131, 137 n.8 (2d Cir. 2006)); *see also United States v. Ray*, No. 20 Cr. 110 (LJL), 2022 WL 292800, at *9 (S.D.N.Y. Feb. 1, 2022) ("[N]otwithstanding the IDRA, a defendant may 'submit[ ] mental health evidence for the purpose of rebutting the prosecution's proof of the *mens rea* element of a specific intent crime.'") (quoting *Dupre*, 462 F.3d at 137 (2d Cir. 2006)). Dr. Greenfield's testimony does not run afoul of the IDRA because (i) he will not testify about Mr. Melzer's own mental health specifically, and (ii) his testimony goes to the intent element of the charged crimes— specifically, whether the chat participants necessarily meant everything that they said online, and seriously intended to conspire and attempt to commit murder, or

14

whether the chat participants might have said things that were not true or which did not reflect their true intent. *See Valle*, 2013 WL 440687, at *1, *7 (admitting expert testimony relevant to the issue of whether defendant's Internet chats reflected true criminal intent or mere sexual fantasies).

## IV.   Dr. Greenfield's testimony does not run afoul of Rule 403

Although expert testimony may be excluded if "its probative value is substantially outweighed by the dangers that it might confuse the issues, be unfairly prejudicial, cause undue delay or waste judicial resources," *McBride*, 786 F.2d at 49 (citing Fed. R. Evid. 403), where an expert's testimony is sufficiently "straightforward" and where the question before the jury is sufficiently narrow, it should not be excluded on 403 grounds. *See Onumonu*, 967 F.2d at 787.

Here, the government's professed fear that Dr. Greenfield's testimony will foster "undue prejudice and confusion" is misplaced. Unlike the experts in the cases cited by the government for this proposition, Dr. Greenfield's testimony will not concern Mr. Melzer's specific psychology or behaviors. *See Ray*, 2022 WL 292800, at *10 (excluding testimony that defendant possessed specific mental disorders that carried no relevance to the charged offenses); *Dupre*, 339 F. Supp. 2d at 542 (excluding expert testimony of psychologist who prepared a forensic evaluation of the defendant based on clinical interviews, psychological tests, prior statements, and a review of journals). To the contrary, Dr. Greenfield's testimony will address psychological and behavior phenomena observed in many Internet users. The government may seek to conduct cross-examination about the fact that Dr.

15

Greenfield can provide no diagnosis or conclusion targeted to Ethan Melzer or any alleged conspirator in this case, and they may argue about the weight of his testimony in closing argument.

The government's claim that Dr. Greenfield's testimony would "conflate the relevant issues" is similarly unavailing. The jury in this case will be asked to determine whether a few specific people chatting online meant and intended the things they said. Dr. Greenfield will testify not about "whether the defendant's characteristics are consistent with those of someone addicted to the Internet," Gov't Mot. 27, but about the fact that, on the broadest level, some Internet users play roles, say things they do not mean, and struggle to discern whether others are doing the same. This testimony provides helpful context for the jury and must not be excluded.

In summary, each of the government's concerns about Dr. Greenfield's expected testimony is unfounded. His testimony will be relevant and helpful to the jury, it is the product of reliable methods, and it does not contravene the Federal Rules of Evidence, the Federal Rules of Criminal Procedure, or the IDRA.

## CONCLUSION

For the foregoing reasons, the Court should deny the government's motion to preclude Dr. Greenfield's expert testimony.

Dated:          New York, New York
                June 16, 2022

                                    Respectfully submitted,
                                    Federal Defenders of New York, Inc.

                              By: _/s/_____
                                    Jonathan Marvinny
                                    Ariel Werner
                                    Sarah Baumgartel
                                    Hannah McCrea
                                    Attorneys for Ethan Phelan Melzer
                                    52 Duane Street, 10th Floor
                                    New York, New York 10007
                                    Tel.: (212) 417-8700

17