UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-*v.*-

ETHAN MELZER,

   a/k/a "Etil Reggad,"

                  Defendant.

S1 20 Cr. 314 (GHW)

## THE GOVERNMENT'S REPLY IN SUPPORT OF ITS SUPPLEMENTAL MOTION *IN LIMINE* TO ADMIT EVIDENCE OF THE DEFENDANT'S PRIOR PARTICIPATION IN AN INSIGHT ROLE AS DIRECT EVIDENCE AND PURSUANT TO RULE 404(b)

DAMIAN WILLIAMS
United States Attorney
Southern District of New York
*Attorney for the United States*
*of America*

Sam Adelsberg
Matthew J.C. Hellman
Kimberly J. Ravener
   Assistant United States Attorneys
   *Of Counsel*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................... 1

A. Applicable Law .................................................................................................. 2

B. Discussion ......................................................................................................... 3

1. The Government's Motion Is Not Untimely................................................... 3

2. Evidence of the Defendant's Prior Performance of an O9A Insight Role Is Relevant, Reliable, and Consistent with the Government's Other Evidence...................................... 6

3. Evidence Demonstrating that Melzer Committed a Prior Insight Role Is Admissible as Direct Evidence of the Charged Crimes ........................................ 13

4. Evidence Demonstrating that Melzer Committed a Prior Insight Role Is Admissible Under Rule 404(b) ..................................................................... 15

5. The Defendant's Performance of a Prior Insight Role Should Not Be Excluded Under Rule 403 .......................................................................... 17

CONCLUSION........................................................................................................... 24

## **TABLE OF AUTHORITIES**

**Cases**

*Costantino v. Herzog*, 203 F.3d 164 (2d Cir. 2000) ................................................... 18

*George v. Celotex Corp.*, 914 F.2d 26 (2d Cir. 1990) ................................................ 20

*S.E.C. v. Singer*, 786 F. Supp. 1158 (S.D.N.Y. 1992) ................................................ 12

*United States v. Abu-Jihaad,* 630 F.3d 102 (2d Cir. 2010)........................................ 23

*United States v. Amato*, 31 F. App'x 21 (2d Cir. 2002)............................................. 13

*United States v. Aminy*, 15 F.3d 258 (2d Cir. 1994) ................................................. 16

*United States v. Aref*, 285 F. App'x 784 (2d Cir. 2008) .............................................. 7

*United States v. Blanco*, No. 16 Cr. 408 (CS) (S.D.N.Y. 2018) ................................... 5

*United States v. Cave*, 2019 WL 2764081 (S.D.N.Y. 2019) ........................................ 2

*United States v. Curley*, 639 F.3d 50 (2d Cir. 2011) ........................................... 16, 18

*United States v. Diaz*, 176 F.3d 52 (2d Cir. 1999) .................................................... 13

*United States v. Diaz*, 878 F.2d 608 (2d Cir. 1989).............................................. 3, 8

*United States v. El-Mezain*, 664 F.3d 467 (5th Cir. 2011)........................................ 18

*United States v. Frazier*, 2019 WL 761912 (S.D.N.Y. 2019)....................................... 4

*United States v. Gallo*, 543 F.2d 361 (D.C. Cir. 1976)........................................ 20, 21

*United States v. Gillier*, 2022 WL 179204 (S.D.N.Y. 2022) ........................................ 4

*United States v. Inserra*, 34 F.3d 83 (2d Cir. 1994)................................................. 22

*United States v. Jones*, 2018 WL 1115778 (S.D.N.Y. 2018) ...................................... 12

*United States v. Kadir*, 718 F.3d 115 (2d Cir. 2013) .................................................. 9

*United States v. Kaiser*, 609 F.3d 556 (2d Cir. 2010)................................................. 3

*United States v. Martoma*, 2014 WL 31213 (S.D.N.Y. 2014)...................................... 6

*United States v. McCallum*, 584 F.3d 471 (2d Cir. 2009) .......................................... 15

*United States v. Mercado*, 2003 WL 21756084 (S.D.N.Y. 2003) ............................. 9, 23

*United States v. Nachamie*, 91 F. Supp. 2d 565 (S.D.N.Y. 2000) ................................. 2

*United States v. Naseer*, 775 F. App'x 28 (2d Cir. 2019).......................................... 21

*United States v. Ojeikere*, 299 F. Supp. 2d 254 (S.D.N.Y. 2004)................................. 6

*United States v. Otibu*, 2002 WL 1033843 (S.D.N.Y. 2002) ....................................... 6

*United States* v. *Ozsusamlar*, 428 F. Supp. 2d 161 (S.D.N.Y. 2006) ................................................ 2

*United States v. Raniere*, 2019 WL 2212639 (E.D.N.Y. 2019) ...................................................... 21

*United States v. Redden*, 169 F. App'x 6, 7 (2d Cir. 2006) ............................................................ 7

*United States v. Robinson*, 702 F.3d 22 (2d Cir. 2012) ............................................................... 20

*United States v. Rodriguez*, 2020 WL 5819503 (S.D.N.Y. 2020) ................................................... 6

*United States v. Salameh*, 152 F.3d 88 (2d Cir. 1998) ................................................................. 21

*United States* v. *Ulbricht*, 79 F. Supp. 3d 466 (S.D.N.Y. 2015) .................................................. 2

*United States v. Valenti*, 60 F.3d 941 (2d Cir. 1995) ..................................................................... 6

*United States v. Vilar*, 530 F. Supp. 2d 616 (S.D.N.Y. 2008) ...................................................... 2

**Rules**

Federal Rule of Evidence 401 ................................................................................................... 2, 12

Federal Rule of Evidence 402 ....................................................................................................... 2

Federal Rule of Evidence 403 ............................................................................................... passim

Federal Rule of Evidence 404 ............................................................................................... passim

**INTRODUCTION**

The Government respectfully submits this memorandum of law in further support of its supplemental motion *in limine* (Dkt. No. 123 ("Gov. Mem.")), and in response to the defendant's opposition to that motion (Dkt. No. 130 ("Def. Mem.").  For the reasons set forth below, and those detailed in the Government's brief in support of its motion, the Government respectfully submits that the Court should issue a pretrial ruling admitting evidence of the defendant's performance of prior O9A insight roles as direct evidence of the charged crimes or alternatively pursuant to Federal Rule of Evidence 404(b).

As detailed further below, the defense's arguments against admission of this evidence do not withstand scrutiny.  As an initial matter, the Government's notice was timely and directly responsive to newly crystallized defense arguments.  Furthermore, evidence of the defendant's prior insight roles is plainly relevant to establishing the background to the conspiracy and Melzer's intent to join with O9A members to commit the charged offenses.  That Melzer invoked these prior insight roles in his communications with his co-conspirators in the midst of planning the ambush only underscores how inextricably intertwined these roles were to establishing the trust necessary to execute on the attack.  This evidence—and, in particular, Melzer's prior violent conduct on behalf of O9A—is also highly probative to rebut defense arguments negating Melzer's intent to carry out an attack, by demonstrating that he previously engaged in real-world violence in furtherance of an insight role for O9A.  Furthermore, any risk of unfair prejudice does not substantially outweigh the probative value of the evidence.

### A. Applicable Law

"The trial court should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 164-65 (S.D.N.Y. 2006) (citations omitted).  Relevant evidence, however, is generally admissible and, consequently, not subject to preclusion.  *See* Fed. R. Evid. 402.  Evidence is relevant if it has "*any* tendency to make the existence of any fact that is of consequence to the determination of the action more *probable* or less probable than it would be without the evidence."  Fed. R. Evid. 401(a) (emphases added).  Under Rule 404(b), courts "may allow evidence of other acts by the defendant if the evidence is relevant to an issue at trial other than the defendant's character and if the risk of unfair prejudice does not substantially outweigh the probative value of the evidence."  *United States v. Ulbricht*, 79 F. Supp. 3d 466, 479 (S.D.N.Y. 2015).

Rule 404(b) also contains a notice requirement but "sets no minimum time for action by the government in this request, nor would any time limit be appropriate, since the evidence the government wishes to offer may well change as the proof and possible defenses crystallize." *United States v. Cave*, No. 18 Cr. 689 (AT), 2019 WL 2764081, at *1 (S.D.N.Y. July 1, 2019).  "The purpose of Rule 404(b)'s notice provision is to reduce surprise and promote early resolution of any challenge to admissibility of the proffered evidence." *United States v. Vilar*, 530 F. Supp. 2d 616, 640 (S.D.N.Y. 2008) (internal quotation marks omitted).  For that reason, courts in this district have held that 404(b) notice must be provided "sufficiently in advance of trial that the Defendant has time to object to the evidence and the Court has adequate time to decide such an objection." *United States v. Nachamie*, 91 F. Supp. 2d 565, 577 (S.D.N.Y. 2000).

Relevant evidence may be excluded pursuant to Rule 403 in the event of "unfair prejudice," which "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403, adv. cmte. note. But "[t]he 'logical inferences' resulting from proffered evidence do not engender the 'unfair prejudice' against which Rule 403 is directed." *United States v. Diaz*, 878 F.2d 608, 615 (2d Cir. 1989).

## B. Discussion

The Government's supplemental motion *in limine* sets forth the bases for the admissibility of the evidence that it will seek to offer in its case-in-chief and addresses many of the arguments now made by the defense in their opposition. Set forth below are additional responses to the defendant's arguments.

### 1. The Government's Motion Is Not Untimely

The Government's motion is not untimely. As an initial matter, and as set forth in the Government's supplemental motion *in limine* (Gov. Mem. at 13-18), evidence of the defendant's performance of an O9A "insight role" in 2017 is admissible as direct evidence of the charged crimes *without* any notice obligation. *See United States v. Kaiser*, 609 F.3d 556, 570-71 (2d Cir. 2010) (concluding that evidence regarding defendant's conduct prior to charged offenses was "inextricably intertwined" with evidence regarding the charged conduct and therefore was not subject to Rule 404(b) requirements); *see also* Weinstein's Federal Evidence § 404.20 [2][c] (observing that evidence the absence of which "would leave a chronological or conceptual void in the story of the crime" is "intrinsic evidence").

To the extent the Court concludes that this evidence is more suitable for admission pursuant to Rule 404(b), and not as direct evidence, the Government notes that the timing of its motion was

3

driven in large part by its more specific understanding of defense arguments in the lead-up to trial, and, in particular, arguments negating the defendant's intent to commit a violent attack at the Military Base. For example, on May 24, 2022, the defense noticed Dr. Greenfield as an expert witness to testify regarding, among other things, how (i) "it is often difficult to separate reality from fantasy on the Internet"; (ii) "the Internet is a forum where it can be difficult or impossible to discern what is true or real from what is false, fictitious, or fanciful"; and (iii) the Internet use can cause individuals to engage in "fantastical or role-playing behaviors and discussions." (Dkt. No. 122, Ex. A); *see also* Dkt. No. 98 (defense explaining that "the 'ultimate issue' at trial" is "whether Melzer genuinely intended to murder his Army unit or not"). As set forth further below, evidence that the defendant previously engaged in real-world violence in furtherance of an insight role for O9A directly rebuts this line of defense argument. For this very reason—namely, the fluid nature of trial preparation as defense arguments develop—courts have recognized that "[t]here is no minimum time for action by the government [in complying with Rule 404(b)], nor would any time limit be appropriate, since the evidence the government wishes to offer may well change as the proof and possible defenses crystallize." *United States v. Gillier*, No. 11 Cr. 409 (PAE), 2022 WL 179204, at *4 (S.D.N.Y. Jan. 19, 2022).

The only case cited by defense counsel to support its argument that preclusion is warranted on the basis of the timing of the Government's notice—*United States v. Frazier*, No. 15 Cr. 153 (VSB), 2019 WL 761912 (S.D.N.Y. Feb. 21, 2019)—is inapposite. In *Frazier*, the Government affirmatively represented that it did not intend to raise a prior conviction at trial, provided the defense with no notice of its intention to raise the conviction, and then raised the conviction during cross examination. *Id.* at *8. In contrast, here, the Government offered notice of its intent to

4

introduce the additional evidence weeks in advance of trial, and in direct response to defense arguments that crystallized in the lead-up to trial.

Furthermore, and as the defense acknowledges, much of the evidence that the Government seeks to introduce was provided in discovery to the defense almost two years ago, alleviating any risk of undermining the purpose of the notice provision of Rule 404(b).  The defense has been aware of the relevant allegations since at least August 21, 2020 and has had an adequate opportunity to investigate Shooting-1, in particular.[1]  On that date, the Government produced records of interviews of witnesses regarding Melzer's activities and beliefs prior to joining the military, including Shooting-1, Melzer's violent gang affiliations, his Satanist and other extremist beliefs, his desire to commit acts of violence, including as a hitman, and his interest in, and support for, jihadist attacks.  And the defense has investigated accordingly; for example, Witness-1 advised the Government that a defense investigator contacted Witness-1 shortly after Witness-1 had been interviewed by the Government.[2]  Notably, the defense has not indicated what additional investigation it would like to do.  *See United States v. Blanco*, No. 16 Cr. 408 (CS), Dkt. No. 168 at 5-19 (S.D.N.Y. July 7, 2018) (admitting evidence of defendant's prior drug trafficking as background evidence where the Government provided notice 10 days before trial and relying, in part, on (i) the defense's inability to articulate any specific additional investigative steps that were

_____

[1] The Government respectfully incorporates by reference the defined terms from its supplemental motion *in limine*, such as Shooting-1.  All such terms used herein have the meaning established in the prior submission.

[2] On April 22, 2022, the Government supplemented its earlier production with additional reports of interviews and other materials relating to Shooting-1.

5

foreclosed by the timing of the notice, and (ii) the defendant's prior relationship and familiarity with her former drug trafficking associates).

Ultimately, the determination of whether the Government has provided reasonable notice is left to the "sound discretion of the Court." *United States v. Rodriguez*, No. 19 Cr. 779 (AKH), 2020 WL 5819503, at *12 (S.D.N.Y. Sept. 30, 2020). And, as a general matter, "[c]ourts in this Circuit have routinely found that at least ten business days provides reasonable notice to a defendant under Rule 404(b)." *United States v. Ojeikere*, 299 F. Supp. 2d 254, 257 (S.D.N.Y. 2004); *see also United States v. Martoma*, No. 12 Cr. 973 (PGG), 2014 WL 31213, at *2 (S.D.N.Y. Jan. 6, 2014) (same). "Courts have approved shorter periods, however, depending on the circumstances," including, in some instances, notice provided during the trial itself. *Id.* at *2; *see also United States v. Valenti*, 60 F.3d 941, 945 (2d Cir. 1995) (holding that evidence submitted four days in advance of a trial was admissible); *see also United States v. Otibu*, No. 02 Cr. 104(AGS), 2002 WL 1033843, *1 (S.D.N.Y. May 21, 2002) (concluding that disclosure of 404(b) evidence at least 10 days in advance was adequate, and noting that the Second Circuit has approved disclosure of 404(b) material "as late as four days before trial, or even during trial, depending on the circumstances of the particular case"). Here, the defense has had access to the underlying allegations for 22 months and the Government provided notice more than three weeks prior to trial in direct response to defense arguments. Accordingly, the Court should deny the defendant's request to preclude the evidence on timeliness grounds.

## 2. Evidence of the Defendant's Prior Performance of an O9A Insight Role Is Relevant, Reliable, and Consistent with the Government's Other Evidence

The defense asserts that evidence of the defendant's prior insight roles should be precluded because the Government's own evidence proves that Melzer was not affiliated with O9A in 2017.

Citing no supporting law, the defendant proclaims that admitting such evidence would therefore "violate Melzer's Fifth Amendment due process rights." (Def. Mem. at 11). But contrary to the defense's claims, the Government intends to introduce powerful evidence establishing the defendant's participation in prior insight roles and nothing in the Government's evidence "conclusively demonstrates that Melzer did not learn about O9A until 2019 and did not know what an 'insight role' was before." (*Id.* at 7).

As an initial matter, the Government intends to introduce strong evidence of Melzer's gang and drug related insight role, including Melzer's own statements that his "first actual insight role was being a runner for some bhbs when I was younger. That was about 4-5 years." This admission—standing alone—is powerful evidence of the defendant's long-standing involvement with O9A and participation in insight roles. Indeed, the Second Circuit has upheld convictions in the face of sufficiency of the evidence claims based solely on a defendant's own admissions. *See United States v. Aref*, 285 F. App'x 784 (2d Cir. 2008) (concluding that the Government, in admitting evidence of the defendant's own admission of his conduct, presented sufficient evidence to prove money laundering conspiracy to provide material benefit to terrorism); *United States v. Redden*, 169 F. App'x 6, 7 (2d Cir. 2006) (sustaining a conviction for a drug count and only citing defendant's "admission to having provided crack to a team of workers who sold it throughout the neighborhood"). And the Government does not plan to just present Melzer's own admission of his prior insight role; rather, as outlined in its initial brief (*see* Gov. Mem. at 5-9), the Government is seeking to admit testimony from percipient witnesses who corroborate this conduct and Melzer's admissions regarding the conduct.

Consistent with the defense theory regarding Melzer's lack of intent to attack his fellow servicemembers and further the goals of O9A, the defense claims that Melzer's clear-cut admissions regarding prior insight roles were just "online bluster" and "hot air" (Def. Mem. at 10). While the defense is free to argue this theory to the jury, it is not a basis to preclude evidence corroborating the defendant's performance of prior O9A insight roles. In fact, it is precisely this defense argument that amplifies the relevance of the proffered evidence. The defendant's claim that he was not engaged in an O9A insight role in the military when he engaged in the charged offense, and that his statement to a coconspirator about his performance of an earlier O9A insight role with a violent gang engaged in drug dealing was mere bluster, necessitates providing the jury with evidence that the defendant actually committed that gang-related conduct, including evidence of his contemporaneous admissions to others about his gang activity and his involvement in a violent drug robbery. Indeed, to deprive the jury of this evidence, particularly in light of these defense arguments, would mislead the jury and cause significant prejudice to the Government's case. The most obvious and powerful counter to the defendant's "all talk" defense is evidence that the defendant was not blustering at all, but describing true events. Among the most natural questions a juror may ask is whether there is any proof the defendant did the things he claimed he did when he was setting forth his *bona fides* to CC-1 and proposing a future attack. Simply put, the defendant has made clear that he is primed to argue that he was just making it all up, and the Government should not be deprived of presenting powerful evidence demonstrating otherwise.

Moreover, it is well-established that alternative factual theories and similar "challenges go to weight rather than admissibility." *United States v. Diaz*, 878 F.2d 608, 615 (2d Cir. 1989);

*United States v. Mercado*, No. 02 Cr. 675 (WHP), 2003 WL 21756084, at *8 (S.D.N.Y. July 30, 2003) (admitting testimony over defense objection and noting that the factual "dispute" between the parties about the meaning of the testimony "goes directly to the weight of the evidence, not its admissibility, and is an issue ripe for jury consideration").  The purpose of a trial is to allow parties to argue opposing inferences and to allow the jury to settle factual disputes.  Accordingly, evidence of Melzer performing insight roles prior to joining the military is important for the jury to assess the merits of the defendant's "bluster" defense, and the defendant's alternative theory regarding Melzer's timeline for joining O9A is not a basis to preclude the evidence.

In any event, Melzer's 2019 Discord communications do not establish that Melzer was *not* in O9A in 2017, when he performed his gang and drug related insight role.[3]  At most, these communications prove that within *two days* of registering a particular account on Discord the defendant told others he already knew about a specific and lesser known subset of O9A (Temple ov Blood), its violent ideology, that there was limited information online, and that he sought additional information about it.  Indeed, contrary to defense arguments on this score, none of these communications "show conclusively that [Melzer] was unaware of O9A until that time." (Def. Mem. at 7).  It shows the opposite: he was seeking out like-minded individuals regarding

---

[3] It also bears noting that the 2019 Discord communications that the defendant cites are self-serving inadmissible hearsay, which Melzer appears to be relying on to prove the truth of the matter asserted—namely, that he was not a member of O9A in 2019.  *See United States v. Kadir*, 718 F.3d 115, 124 (2d Cir. 2013) ("A defendant may not introduce his own prior out-of-court statements because they are hearsay, and . . . not admissible." (internal quotation marks omitted)).

something about which he already possessed knowledge.[4]  Given the clandestine nature of O9A, openly discussing one's O9A affiliation—outside of the presence of other O9A members, such as in the Order of Nine Rapes Telegram channel—runs counter to O9A's core principles and practices.  (*See* 5/24/22 Tr. at 131 (Dr. Simi testifying that O9A has "historically been a very secretive group"); *id.* at 136 (Dr. Simi noting that given O9A's "focus" on "being secretive and clandestine" O9A adherents try to remain "anonymous")).  It is therefore not surprising that Melzer would be reluctant to openly advertise that affiliation in his 2019 communications in accessible Discord chat rooms and that he would be seeking to feel out other Discord users to ascertain whether they were similarly affiliated with O9A.  Further corroborating this inference, in mid-April 2019, the defendant messaged an associate that he had "99% of the [O9A] pdfs" and that he should let the defendant know if he "need[s] any of the books."  (*See* GX 1313).  That Melzer suddenly possessed a robust library of O9A books and pdfs—regarding an organization that prides itself on secrecy—barely a month after the defense argues that he was "unaware of O9A" (Def. Mem. at 7) strains credulity.  In any event, because Melzer was discussing O9A within days of starting his Discord account, and the available Discord records do not predate February 2019, the defendant's self-serving conclusion regarding the absence of chats prior to February 2019 holds little weight.

---

[4] Melzer's later chats confirm that he ultimately found like-minded O9A adherents on Discord and limited his communications to those individuals: In April 2020, Melzer complained that due to law enforcement, "[I] [c]an't even be on Discord really" and that "I just make sure I don't talk to [sic] much on there except with people I've known for a while."  (GX 240 at 5-6).

Similarly, the lack of other digital evidence of Melzer's possession of O9A documents from the time of his prior insight roles does not move the needle. (Def. Mem. at 9-10). The defendant's O9A materials were principally located on his two iPhones—his iPhone 8 and iPhone 11. Melzer appears to have begun using the iPhone 11 in April 2020 and the iPhone 8 in 2019. Given this timeline, it is hardly surprising that the Government did not obtain additional O9A materials on Melzer's devices from before 2018. In any event, and contrary to the defendant's arguments on this score, the timing of Melzer's possession of O9A materials is far from dispositive of when he joined the group.

The defendant next argues that the evidence should be precluded because none of the Government's witnesses claim that Melzer's gang-related conduct was done "pursuant to any supposed membership in O9A or as any kind of insight role on behalf of the group." (Def. Mem. at 10). First, and contrary to the defendant's arguments, Melzer's Neo-Nazi, Satanist, racist, anti-Semitic, pro-jihadist statements to Witness-1 and -2 are all corroborative of the defendant's alignment with O9A ideology during the relevant time period of his 2017 insight role. Moreover, as Dr. Simi's anticipated testimony, Melzer's Telegram chats, and Melzer's library of O9A documents make abundantly clear, Melzer would not have told anyone outside O9A that he was committing the gang, drug, and violent activity as an insight role. That practice is consistent with O9A's directives and Melzer's conduct in this case: for example, Melzer also did not reveal to his fellow soldiers in the 173rd Airborne that his military service was an insight role, and that while they were all training for their deployment, he had pledged himself to the RapeWaffen Division nexion of O9A and was providing sensitive information to O9A members to have them murdered. At bottom, the defense argument here appears to be that for the Government to prove

11

that Melzer performed an insight role in 2017, it would need to present definitive evidence from a percipient witness who attended an O9A swearing-in ceremony with the defendant prior to his gang and drug activity. The law does not require such evidence. The direct evidence demonstrating Melzer's commitment to the insight role at the time of Shooting-1, including Melzer's own admission of that very fact, is strong, and in any event Rule 401 allows the Government to present its case through circumstantial evidence. *United States v. Jones*, No. 16 Cr. 0553 (AJN), 2018 WL 1115778, at *9 (S.D.N.Y. Feb. 27, 2018) (finding testimony "satisfies the low bar of relevance"); *see also S.E.C. v. Singer*, 786 F. Supp. 1158, 1166 (S.D.N.Y. 1992) (noting that "evidence need not be conclusive in order to be relevant and admissible").

This is especially true since, as noted above, O9A members are instructed that they are "forbidden from telling anyone - however close a friend - why they are doing what they are doing. The Initiate must appear committed to the chosen task, as they must live and identify with the role they have chosen to such an extent that those around them believe they are genuinely committed to whatever task or profession or way of life they have chosen." GX 901 at 6. It is thus fully consistent with textbook O9A practices and procedures that the defendant did not share his O9A affiliation with others while conducting an insight role. Accordingly, the Government's evidence of the defendant's performance of a prior insight role—which includes the defendant's own admissions and the testimony of corroborating witnesses—far surpasses the "low bar" set by Rule 401 in that this evidence makes it "more . . . probable" that the defendant was a member of O9A and that he had the intent to commit violence on behalf of the group "than it would be without the evidence." Fed. R. Evid. 401(a).

**3. Evidence Demonstrating that Melzer Committed a Prior Insight Role Is Admissible as Direct Evidence of the Charged Crimes**

Melzer next argues that evidence of his performance of an O9A insight role in 2017, which included his commission of Shooting-1, is not direct evidence because it bears "no connection" to the charges in this case. (Def. Mem. at 12). That is incorrect.

Evidence proving that Melzer performed a gang and drug related O9A insight role prior to his military service serves to "inform the jury of the background of the conspiracy charged" and "to complete the story of the crimes charged." *United States v. Amato*, 31 F. App'x 21, 25 (2d Cir. 2002). Indeed, and as laid out in the Government's initial briefing (*see* Gov. Mem. at 13-18), Melzer's decision to perform his first insight role as a "runner" for a gang, provides important background to explain his commitment to O9A, his history in the organization, and his subsequent decision to betray his fellow servicemembers in a murderous plot in service of O9A. It also directly rebuts arguments the defense has indicated they intend to advance at trial, including that Melzer never joined O9A and that his Telegram messages were the product of online fantasy. Evidence corroborating Melzer's online statements that he previously committed illegal and violent acts outside the virtual realm and in service of O9A directly rebuts these claims and is highly probative for showing that Melzer genuinely intended to commit an illegal and violent attack against his servicemembers.

Finally, the evidence "explain[s] how the illegal relationship" between Melzer and CC-1 "developed" and their "mutual trust." *United States v. Diaz*, 176 F.3d 52, 79 (2d Cir. 1999). Melzer invoked his insight role as a drug runner to CC-1 to make clear that he was willing to break the law to further O9A's goals, and specifically, to infiltrate and subvert organizations for O9A. Even if Melzer did not know about O9A in 2017—as the defendant alleges despite clear evidence

to the contrary—at the moment he used this information to bolster his credentials to CC-1, Melzer explicitly adopted his past drug dealing and gang affiliation as part of his background and skills to offer to O9A.  In fact, in direct response to one vetting question from CC-1—namely, "What are your skills/traits you have?"—Melzer replied, "military training, survival, links to other groups," the latter of which appears to be a reference to Melzer's association with his former gang.  And in response to another question—"Are you ready to cause damage both mentally, physically and magickally, and be serious[?]," Melzer responded, "i already have so yes."  Evidence corroborating these admissions—by proving that Melzer in fact acted as a drug dealer as part of his 2017 insight role for a gang and caused physical "damage"—will allow the jury to understand how a relationship of trust developed between CC-1 and Melzer over the course of their planning the ambush together.  Moreover, and for the reasons outlined above, such evidence will directly address the defendant's claims that he was "blustering" and provide powerful proof of the defendant's intent; the defendant accurately described his own violent past when convincing CC-1 that he was serious about planning a deadly ambush.

The defense does not address any of these arguments.  Instead, it tries to create distance between the Shooting-1 allegations and the defendant's Telegram admissions regarding that first insight role, asserting first that there is no evidence of a relationship between Shooting-1 and anything gang-related.  (Def. Mem. at 13).  But there is no meaningful daylight here: shooting at a fellow drug trafficker while stealing his marijuana is fully consistent with the conduct of a drug runner for a gang.  And contrary to the defense's argument that Melzer's Telegram messages bear no connection to Shooting-1 (*id.*), Melzer does not have to tally or describe all of his drug trafficking exploits on Telegram—or refer specifically to any particular incident—before the

14

Government can corroborate his statement that he was a drug runner as part of a prior O9A insight role.

### 4. Evidence Demonstrating that Melzer Committed a Prior Insight Role Is Admissible Under Rule 404 (b)

The defense's arguments regarding Rule 404(b) do not fare better.  Its starting position is that the defendant performing violent acts in service of a 2017 O9A insight role "says nothing about Melzer's motive and intent" to perform violent acts in service of a 2020 insight role—when the defense is explicitly disputing Melzer's knowledge and intent to commit the charged crimes by disclaiming the veracity of his 2020 statements regarding his intent and prior acts.  (Def. Mem. at 14).  This unsupportable position is at odds with the Federal Rules of Evidence, case law, and common sense.  Far from being impermissible propensity evidence, as Melzer claims, evidence that he previously committed violent crimes in furtherance of an O9A insight role is highly probative of his knowledge of, and commitment to O9A, his desire to perform another insight role, and his motive and intent in conspiring with members of O9A in a violent plot.

The defendant's citation to *United States v. McCallum*, 584 F.3d 471, 476 (2d Cir. 2009), is inapposite and only supports admission of this evidence here.  In *McCallum*, the lower court admitted evidence of two prior convictions at trial under Rule 404(b) despite there being "no indication in the record that the District Court engaged at all in the Rule 403 inquiry, let alone the required conscientious one," *id.* at 476, and despite the Second Circuit being "unable to discern from the record why the District Court thought [knowledge and intent] were seriously in dispute or why the prior convictions were appropriate proof," *id.* at 477.  Here, the proffered evidence is directly relevant and responsive to the main arguments raised by the defendant in advance of

trial—namely, that he lacked the intent to commit an O9A-inspired attack on his platoon.  And as detailed below, Rule 403 does not counsel in favor of precluding this evidence.

The defendant then argues that evidence about Shooting-1 should be precluded because it is not "sufficiently similar to the charged offenses to permit a jury to draw any reasonable inferences about what Melzer knew or intended in 2019 and 2020." (Def. Mem. at 14).  Putting aside that one paragraph earlier Melzer contended that the incidents appeared to be so similar so as to suggest impermissible propensity, this next argument fails because it misses the forest for the trees.  By focusing on the discrepancy between the brute facts of Shooting-1 and the plot to attack the Military Base, the defense ignores the Government's actual argument—namely, that both events make clear that Melzer was willing to commit violence in furtherance of O9A insight roles, and prove his online admissions were more than bluster.  And the case law makes clear that the analysis is not a factual side-by-side comparison but rather an inquiry into whether the other act evidence "is relevant in that it provides a reasonable basis for inferring knowledge or intent." *United States v. Cadet*, 664 F.3d 27, 33 (2d Cir. 2011).  In this important way, Melzer's "prior [insight role] paralleled the charged conduct."  *United States v. Curley*, 639 F.3d 50, 59 (2d Cir. 2011); *see also United States v. Perez*, 325 F.3d 115, 129 (2d Cir. 2003) ("There is no necessity for synonymity but there must be substantial relevancy."); *Cadet*, 664 F.3d at 33 (other act evidence need not be "*identical*" to the charged conduct but only  "sufficiently similar" in order "to be relevant to—and indeed highly probative of—knowledge and intent").  Thus, "[b]ecause [Melzer] put his knowledge and intent in issue, other-act evidence that tended to show those mental states serve[s] a proper purpose." *United States v. Aminy*, 15 F.3d 258, 260 (2d Cir. 1994).

**5.   The Defendant's Performance of a Prior Insight Role Should Not Be Excluded Under Rule 403**

Rule 403 does not counsel in favor of precluding evidence of Melzer's performance of a 2017 insight role.  The defense's claim that admission of evidence regarding Shooting-1 would require a "trial within a trial" (Def. Mem. at 17) is hyperbolic and inaccurate; the Government anticipates that introduction of this evidence would be streamlined and only require the testimony of—at most—three additional witnesses with limited direct examinations.  The defense next seeks to obfuscate the incident by hypothesizing that Melzer was perhaps acting in self-defense, or the wholly unsupported speculation that perhaps Victim-1 also carried a gun, claims belied by the witness materials provided to the defendant and the anticipated witness testimony.  (Def. Mem. at 17).  As a threshold matter, the defendant offers no support for his claim that the Government would need to disprove a theory of self-defense to offer its evidence regarding Shooting-1.  Even if true, however, the testimony would still be highly probative of the defendant's intent and knowledge by establishing that Melzer brought a gun to, and shot an individual during, a drug deal during the relevant time period when the defendant said he was committing an insight role as a drug runner for a gang, and that the defendant was thus telling the truth when he described his past involvement in insight roles in his conversations with CC-1.

Melzer next claims that the evidence is unduly prejudicial because the "charges against Melzer do not involve any actual, real-world violence" and his "alleged crime consisted of talking with people online."  (Def. Mem. at 17).  But Melzer is not charged with initiating an online romance scam, cyberstalking, or making empty threats on social media; he is charged with conspiring and attempting to murder his fellow American servicemembers by having jihadists

17

ambush them and for revealing national defense information in the process. Put another way, the Government's evidence at trial will show that the defendant used the Internet to plan an "actual, real-world violen[t]" terrorist attack on American troops. These charges are indisputably more serious than shooting someone in the arm during a drug deal gone wrong. And the Second Circuit has long made clear that evidence that is neither "more sensational" nor "more disturbing" than the charged crimes will not be deemed unfairly prejudicial. *See, e.g.*, *Costantino v. Herzog*, 203 F.3d 164, 174 (2d Cir. 2000); *United States v. El-Mezain*, 664 F.3d 467, 508 (5th Cir. 2011) ("Because this [is] a case about supporting terrorists, it is inescapable . . . that there [will] be some evidence about violence and terrorist activity. It cannot be denied that [such] evidence [will be] unfavorable to the defendant[], but [the court] cannot conclude that it [will be] unduly prejudicial.").

The defense's reliance on *United States v. Curley*, 639 F.3d 50 (2d Cir. 2011), is misplaced. In *Curley*, a cyberstalking and harassment case, the Second Circuit concluded that the district court (i) did not abuse its discretion by admitting evidence regarding the defendant's prior abuse of his wife; (ii) abused its discretion by admitting evidence that the defendant's brother abused the defendant's wife 16 years earlier; and (iii) abused its discretion by admitting evidence of a *subsequent* traffic stop during which the defendant's last will and testament, rifles, ammunition, a bulletproof vest, and a ski mask were found in his rental car. *Id.* at 58-62. Each of these rulings is consistent with admitting evidence of Melzer's prior gang-related insight role. For one, the panel affirmed admission of the defendant's prior abuse of his wife because the "earlier acts demonstrated a pattern of activity that was probative of [the defendant's] intent." *Id.* at 59. So too here, Melzer performing violent acts in service of a prior O9A insight role "demonstrated a pattern

of activity" which bears directly on his intent and willingness to perform violent acts in service of the insight role at the center of the charged crimes. *Id.* The Second Circuit then faulted the lower court for admitting evidence of the defendant's *brother* abusing the defendant's wife, concluding that this "evidence was not sufficiently similar to the charged crimes" since it "did not parallel any of the underlying conduct." *Id.* The proposed evidence here, on the other hand, is all conducted by Melzer himself—not a separate actor as in *Curley*—and clearly parallels the charged conduct as both events make clear that Melzer was willing to commit violence in furtherance of O9A insight roles. And finally, the panel's conclusion that the lower court erred by admitting evidence of a traffic stop 14 months *after* the threats at issue is entirely consistent with admitting evidence of the defendant's *prior* insight role. The court found that these subsequent "events bore little similarity to [the defendant's] prior conduct," possessed "a weak correlation to the charged conduct," and "was certain to arouse the jury's emotions against [the defendant] because it was significantly more sensational and disturbing than the charged crimes." *Id.* at 62. In contrast, the defendant's prior insight role parallels—and was directly invoked during—the charged conduct, and is far less sensational than the charged crimes, which involve an attempt to murder U.S. soldiers. For these reasons, the Second Circuit's ruling in *Curley* counsels in favor of admitting evidence of the defendant's prior insight roles.

The defense next argues that the Court should preclude evidence of Melzer's prior insight roles—other than the defendant's involvement in Shooting-1—because "the incontrovertible evidence shows that Melzer was unaware of O9A, and insight roles, until 2019." (Def. Mem. at 20). The Government already addressed above how the record—including Melzer's own admissions and his 2019 Discord communications—belies this argument. The Government also

already addressed how evidence corroborating Melzer's prior insight roles makes it clear that his plan to murder his platoon members was "more than hot air," as the defense maintains. (Def. Mem. at 11). Similarly, Melzer's prior racist, homophobic, and pro-jihadist statements, including those in support of ISIS-affiliated jihadist attacks at the Pulse Nightclub and Route 91 Harvest Festival, plug an important hole for the jury: they explain Melzer's evolution into a card-carrying O9A member with jihadist leanings and rebut the defense's argument that Melzer exhibited one persona in the virtual realm and another in his real-life interactions.

Nor would such evidence be cumulative, as the defense argues. (Def. Mem. at 22). Pursuant to Rule 403, "[t]he court may exclude relevant evidence if its probative value is *substantially* outweighed by a danger of . . . *needlessly* presenting cumulative evidence." Fed. R. Evid. 403 (emphases added). "Because Rule 403 permits the exclusion of probative evidence, it is an extraordinary remedy that must be used sparingly." *George v. Celotex Corp.*, 914 F.2d 26, 31 (2d Cir. 1990).

The Government, because of its heavy burden of proof, is entitled to present arguably cumulative evidence so long as that evidence is relevant. *United States v. Gallo*, 543 F.2d 361, 365 (D.C. Cir. 1976) (affirming the admission of cumulative evidence and finding that the evidence was not "improperly cumulative" given its relevance to the defendant's knowledge, a disputed issue in the case); *see United States v. Robinson*, 702 F.3d 22, 37-38 (2d Cir. 2012) (affirming district court's admission of defendant's conversations with prostitutes other than the victim—even though defendant had already stipulated that he had "promoted prostitution on an occasion in the past"—and concluding that the conversations "were not cumulative of [the defendant's] stipulation" since the "stipulation did not 'complete the story'"); *United States v.*

*Raniere*, No. 18 Cr. 2041 (NGG), 2019 WL 2212639, at *8 (E.D.N.Y. May 22, 2019) (rejecting defense argument that evidence that "may corroborate" other evidence is needlessly cumulative). The assertion that evidence of a proposition is cumulative "implies that the other evidence . . . was more than sufficient." *Gallo*, 543 F.2d at 365. "The Government has a heavy burden of proof beyond a reasonable doubt as to all elements of the offense, and it is not to be restricted to a modest quantum of evidence that will support the indictment." *Id.*

Here, Melzer's prior statements are not cumulative of other evidence the Court has already admitted "demonstrat[ing] that Melzer held abhorrent views at the time of the charged crimes." (Def. Mem. at 22). These statements—made before Melzer joined the military and, in some instances, before he joined O9A—"furnish an explanation of the understanding or intent with which certain acts were performed," namely, Melzer's decision to join O9A and align with the organization's racist and jihadist tactics and goals. *Salameh*, 152 F.3d at 111. In particular, these statements demonstrate how and when the defendant embraced O9A's ideology, including its Neo-Nazi, racist, and homophobic elements, and its promotion of extreme violence in order to overthrow Western civilization. *See United States v. Naseer*, 775 F. App'x 28, 30 (2d Cir. 2019) (rejecting evidentiary objections, including cumulativeness, for jihadist materials and other related evidence, including al Qaeda training videos, because the evidence "helped establish the existence of a terrorism conspiracy, as well as the conspiracy's purpose and its *modus operandi*" and "provided necessary background that was critical to understanding Naseer's coded communications with al-Qaeda and his role in the broader terrorism conspiracy"). Relatedly, that Melzer expressed these views years before the charged crimes to those closest to him is relevant to show that his interest in O9A and its ideology was not just a passing fad for him or something

21

relegated to his virtual persona. (*See* Dkt. No. 93 at 17 (seeking to admit defendant's statements that "though he had some 'curiosity' about O9A, he believed it was 'weird,' 'out there,' and 'pretty much a cult,' and considered its beliefs to be the 'polar opposite' of his own")). Rather, this evidence is highly probative of the defendant's motive and intent in enlisting in O9A prior to his U.S. Army enlistment and "provide[s] the jury with the complete story of the crimes charged." *United States v. Inserra*, 34 F.3d 83, 89 (2d Cir. 1994).

Moreover, to the extent that any of these statements are cumulative, they are not *needlessly* so, particularly because the defendant has staked out a position vigorously disputing his membership in O9A, his commitment to their ideals, his decision to commit an attack with members of O9A, and his belief that providing sensitive information to members of O9A would lead to an attack. (*See, e.g.*, Dkt. No. 93 at 1 ("The government's efforts to paint Melzer as an O9A-devotee committed to murdering his fellow soldiers are overblown."); *id.* at 16 ("The fact is that, though Melzer admitted to providing certain information concerning his unit's deployment in the chats, he repeatedly denied sympathizing with O9A, intending to commit an attack, or believing that the people he was chatting with intended to commit an attack, either.")). As such, and consistent with the clear text of Rule 403 and the case law, the Government should be permitted to present these statements to meet its heavy burden.

The Court should also reject the defense's fallback position—specifically, admitting evidence of the defendant's drug dealing or gang activity, but precluding evidence of Shooting-1. (Def. Mem. at 22). The defense's stated reason for precluding this evidence—"since it concerns an alleged act of violence on Melzer's part" (*id*.)—is precisely why it is so highly probative. Melzer committing violence in the real world for O9A corroborates his intention to do just that to

his unit and directly rebuts defense arguments negating his intent. Introducing evidence of Melzer's performance of a prior insight role while omitting this incident would prevent the jury from grasping the full nature of Melzer's commitment to O9A and his intent to further its goals by murdering his fellow soldiers.

Finally, to the extent the Court has any concern about the risk of unfair prejudice in connection with the admission of the evidence regarding Melzer's performance of a prior insight role, this can be addressed through a limiting instruction to the jury. *See United States v. Mercado*, 573 F.3d 138, 142 (2d Cir. 2009) (upholding Rule 403 determination where challenged evidence was "not especially worse or shocking than the transactions charged" and district court "gave several careful instructions to the jury regarding what inferences it could draw from the admitted evidence"); *United States v. Abu-Jihaad*, 630 F.3d 102, 134 (2d Cir. 2010) (proper limiting instruction minimizes risk of undue prejudice from admission of relevant terrorist propaganda materials).

Accordingly, the Court should admit the evidence of the defendant's performance of prior O9A insight roles as direct evidence and pursuant to Rule 404(b).

## <u>CONCLUSION</u>

For the foregoing reasons, the Government's supplemental motion *in limine* should be granted.

Dated:  New York, New York
        June 20, 2022

                                        Respectfully submitted,


                                        DAMIAN WILLIAMS
                                        United States Attorney
                                        Southern District of New York


                        By:     __/s/_____
                                        Sam Adelsberg
                                        Matthew J.C. Hellman
                                        Kimberly J. Ravener
                                        Assistant United States Attorneys