**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

Southern District of New York
Jennifer L. Brown
*Attorney-in-Charge*

June 21, 2022

By ECF

Honorable Gregory H. Woods
United States District Judge
Southern District of New York
500 Pearl Street, Room 2260
New York, New York 10007

**Re:** *United States v. Ethan Phelan Melzer*, S1 20 Cr. 314 (GHW)

Dear Judge Woods:

    We write on behalf of Ethan Melzer in response to the Court's May 4, 2022 order directing the parties to confer regarding statements that should be admitted at trial pursuant to the rule of completeness. ECF No. 106. The parties have conferred but are not in agreement.

    At issue are eight chat conversations from the messaging application Telegram—four group chats and four sets of "direct messages" between two individuals ("DMs")—involving Melzer, the alleged coconspirators, the government's confidential source, and multiple other chat participants. All eight conversations took place during a period of just 41 days, from April 19 to May 30, 2020. The government intends to offer 57 separate exhibits (labeled from GX 200 to 290) pulled from these eight chats. The defense intends to offer the complete, unedited versions of the same eight conversations as DX A–H, subject only to minor redactions necessitated by Rules 403 and 404(b) of the Federal Rules of Evidence.

    The Court should admit the complete chats. They are not just evidence to support or refute the charges in this case—they *are* the case. The government alleges that, in these online conversations and only in these conversations, Melzer and others conspired to plan an attack on a U.S. military base. But, as Melzer will argue at trial, he never intended to see any attack occur and he did not believe any of the chatroom strangers did either. To fairly evaluate whether Melzer is guilty of

Hon. Gregory H. Woods  June 21, 2022
United States District Judge  Page 2 of 11

Re:   United States v. Ethan Melzer
      S1 20 Cr. 314 (GHW)

the charged conduct, the jury must gain a complete understanding of the chats that are the basis for the charges, including their volume, tenor, and linguistic conventions, and the range of topics they discuss.

## I.  Legal principles

### A.  Relevance

Evidence is relevant if "it has any tendency to make a fact [of consequence] more or less probable than it would be without the evidence." Fed. R. Evid. 401. Relevant evidence is generally admissible. Fed. R. Evid. 402. The Federal Rules of Evidence set a "very low standard for relevance." *United States v. Al-Moayad*, 545 F.3d 139, 176 (2d Cir. 2008). "[S]o long as a chain of inferences leads the trier of fact to conclude that the proffered submission affects the mix of material information, the evidence cannot be excluded at the threshold relevance inquiry." *United States v. Quattrone*, 441 F.3d 153, 188 (2d Cir. 2006) (citing *United States v. Ravich,* 421 F.2d 1196, 1204 n.10 (2d Cir. 1970)). Relevant evidence may be excluded under Rule 403, but only where "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

### B.  Rule of completeness

The rule of completeness finds its home in Federal Rule of Evidence 106, which provides: "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, *at that time*, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." (emphasis added). The purpose of the rule is "to correct, contemporaneously, the 'misleading impression created by taking matters out of context,'" *United States v. Williams*, 930 F.3d 44, 58 (2d Cir. 2019) (quoting Fed. R. Evid. 106 advisory committee note (1972 Proposed Rules)), and to ensure that the testimony "represent[s] the tenor of the utterance as a whole, and not mere fragments of it." *United States v. Castro*, 813 F.2d 571, 576 (2d Cir. 1987) (citations omitted). Underlying the rule is "a principle of fairness." *Phoenix Assocs. III v. Stone*, 60 F.3d 95, 102 (2d Cir. 1995).

Hon. Gregory H. Woods  
United States District Judge

June 21, 2022  
Page 3 of 11

Re: United States v. Ethan Melzer  
    S1 20 Cr. 314 (GHW)

    The Second Circuit has interpreted Rule 106 to require "that a statement be admitted in its entirety when this is necessary to explain the admitted portion, to place it in context, to avoid misleading the trier of fact, or to ensure a fair and impartial understanding of the admitted portion." *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982) (cleaned up); *see also Castro*, 813 F.2d at 576 ("[C]ourts historically have required a party offering testimony as to an utterance to present fairly the substance or effect and context of the statement.") (internal quotation marks omitted). In applying the rule, "it is the trial court's responsibility to exercise common sense and a sense of fairness to protect the rights of the parties while remaining ever mindful of the court's obligation to protect the interest of society in the 'ascertainment of the truth.'" *Id.* (citing Fed. R. Evid. 611(a)).

## II. The Court should admit the complete chats from which the government draws its exhibits.

    Rather than admitting the government's 57 separate chat excerpts—which have been stripped of important meaning, context, and tenor—the Court should admit in full the eight chat conversations from which the government's excerpts are drawn, subject only to minor redactions necessitated by Rules 403 and 404(b). Admitting the complete chats is the only way to ensure that the jury is not left with a distorted sense of the chats as a whole.

    Defense Exhibits A–H, the eight chats at issue, will be delivered to the Court on a disk along with a copy of this letter and a copy of the government's proposed exhibits for comparison.[1] The defense exhibits include:

- DX A: "RapeWaffen" (excerpted in GX 200–23)

- DX B: DMs of Melzer and Red Hourglass (government's confidential source) (excerpted in GX 230–31)

---

[1] We ask that the Court receive DX A–H under seal for the purposes of this letter—they will be redacted prior to trial in accordance with the Court's evidentiary rulings, including by redacting the name of the military base at issue.

Hon. Gregory H. Woods  June 21, 2022
United States District Judge  Page 4 of 11

Re:  United States v. Ethan Melzer
     S1 20 Cr. 314 (GHW)

- DX C: DMs of Melzer and FreiKorpz (government's "Individual-1") (excerpted in GX 240–44)

- DX D: "Op Hardrock" Part One, aka "Jihadist Caliphate" (excerpted in GX 255–57)

- DX E: "Op Hardrock" Part Two, aka "Jihad" (excerpted in GX 250–51, 260–64)

- DX F: "Order of Nine Rapes" (excerpted in GX 270–75)

- DX G: DMs of Melzer and GvlagKvlt (government's "CC-1") (excerpted in GX 280–89)

- DX H: DMs of GvlagKvlt and Red Hourglass (excerpted in GX 290)

### A.  The complete chats are not just relevant, but essential.

The eight complete chats are admissible on basic relevance grounds, independent of the rule of completeness. The chats are not just relevant evidence; they are essential evidence. This entire case turns on these chats. The government alleges that they are where Melzer disclosed national defense information and conspired with others to plan an attack. But while there will be no dispute at trial that chat participants discussed the *idea* of an attack, the question will be whether anyone in this anonymous online space—where people misrepresented themselves and shared ideas and content as edgy, offensive, and absurd as possible—actually intended to see an attack occur. The jury's appreciating the chats' full scope is critical to Melzer's defense that he was never serious about any attack and believed that the people he met online were unserious too.

To begin, multiple chat participants misrepresented themselves and said things they did not mean. CC-1, for example, under the screen name "GvlagKvlt," held himself out as a twenty-something Canadian ex-paratrooper who had served in the Gulf. In reality, he was a 15-year-old child. Another fixture in the chats, the government's confidential source, under the screen name "Red Hourglass," played the role of GvlagKvlt's girlfriend and a devoted O9A adherent. Melzer, too, misrepresented key aspects of his biography. For example, he claimed that his

Hon. Gregory H. Woods  June 21, 2022
United States District Judge  Page 5 of 11

Re:   United States v. Ethan Melzer
      S1 20 Cr. 314 (GHW)

father had been incarcerated and a member of the Aryan Brotherhood, that his mother had been a heroin addict, and that he had been interested in O9A long before he actually knew anything about the group. All of this was untrue. The jury should be fully apprised of the full extent of the various participants' misrepresentations.

Next, the overall tenor of the chats is juvenile and absurd. They are disorganized and nonlinear. They are laced with insults, profanity, and extraordinarily immature humor. GvlagKvlt makes puerile comments such as "I look like a bag of hammered dicks," DX A at 2258, and "We must place a dick on every mountain" "so we can rape the earth," *id.* at 2271, and "HUMANITY IS GAY," *id.* at 2199. In another stretch of conversation, GvlagKvlt, FreiKorpz, and another user go back and forth taunting each other: "youre a kike," "no u," "yes u," "no u," for 20 pages, until GvlagKvlt ends the exchange by saying, "my dick is currently inverted." DX A at 1186–1205.

The chats are replete with such nonsense. To take just one more example, in another of GvlagKvlt's more obviously childish rants—he is 15, after all—he writes:

> "PRAISE THE LORD OF PUSSY
> ALL SEEING KING OF CUM
> CUM IN YOUR MOUTH
> CUM ON THE COUCH
> CUM IN YOUR MOM
> CUM IN YOUR BONG
> HOW DO I SUMMON A CUM DEMON
> CUM FOR THE CUM GODS
> SEMEN SPITTER
> CUM CHUGGER
> MUM FUGGER
> SPERM SUCKING
> JENKEM HUFFING
> CUM DRENCHED DAUGHTER
> I JUST CAME IN MY OWN ASS
> THE CUM GODS ARE DISPLEASED WITH YOUR CUM

Hon. Gregory H. Woods  June 21, 2022
United States District Judge  Page 6 of 11

Re:  United States v. Ethan Melzer
     S1 20 Cr. 314 (GHW)

> ALL SEEING EYE OF SAURCUM
> CUM SPOTTERS, CAN SEE YOU CUMMING
> CUM CUM CUM CUM CUM CUM CUM CUM CUM CUM CUM CUM CUM CUM CUM CUM
> CUM CUM CUM CUM CUM CUM CUM CUM CUM CUM CUM CUM CUM CUM CUM CUM
> CUM CUM CUM CUM CUM CUM CUM CUM CUM CUM CUM CUM CUM CUM CUM CUM
> CUM CUM CUM CUM CUM CUM CUM CUM CUM CUM CUM CUM."

*See* DX A at 689.[2] It is no surprise that Red Hourglass refers to the group in another chat as a "confederacy of dunces." *See* DX E at 136.

    Far from being irrelevant, content like this is essential to understanding how Melzer and other members of these chat conversations viewed and engaged with one another. As Melzer will argue at trial, and as defense expert Dr. David Greenfield is expected to testify, people frequently play roles and say things they do not mean on the Internet. The content of the chats illustrates why Melzer did not believe the people he was chatting with were serious actors. As he stated in his post-arrest interviews with law enforcement, he believed that his interlocutors were "jokers" who had no intentions or capabilities of orchestrating an attack. The full chats are directly relevant to that defense. Moreover, the Court has admitted testimony of the government's expert, Dr. Simi, on the use of humor by white supremacist groups, including O9A. The jury must get a sense of how that humor actually played out in the critical chats in this case, rather than having it abstractly described for them by an academic.

    Also relevant is the way users come and go from the chats and how they explain their absences—Red Hourglass speaks of going to brunch, DX E at 210; CC-1 talks about drinking so much that he is suffering from alcohol-withdrawal symptoms, DX F at 201-2; and the government's "CC-2" (under screen name "Kurt Cobani") leaves to make toast, DX A at 2148. Melzer, for his part, is absent from the

---

[2] We regret the necessity of recounting here such obscene, juvenile content, which is certainly beneath the dignity of this Court. But the evidence is what it is.

Hon. Gregory H. Woods  
United States District Judge

June 21, 2022  
Page 7 of 11

Re:  United States v. Ethan Melzer  
     S1 20 Cr. 314 (GHW)

chats for long stretches of time as the conversation continues without him. Indeed, in the "Op Hardrock" chat, which is the main chat where the group discusses the concept of an attack, Melzer goes silent for long stretches at a time, including one stretch where he does not say a word for almost four full days. *See* DX E at 29–152 (Melzer not participating in the chat from May 25 to May 29, 2020, though it continues in earnest in his absence). The jury must get a sense of how often he does or does not participate in the chats, and how often he participates relative to others. All this nuance will be lost on the jury absent admission of the complete chats.

### B.  There is no legal basis to exclude the complete chats.

There is no legal basis to exclude the complete chats. They are definitionally not hearsay because they are not being offered for the truth of their contents, but for Melzer's state of mind. *See* Fed. R. Evid. 801(c)(2).[3] And there is of course no question as to foundation since they are merely the full versions of the chats from which the government has pulled its excerpts.

Nor does Rule 403 counsel their exclusion. It could hardly be argued, for example, that admitting the complete chats would confuse or mislead the jury. If anything, admitting only strategically selected excerpts from either side would be more likely to do so. In any event, under no analysis would any risk identified in Rule 403 "substantially outweigh[]" the complete chats' immense probative value, so the rule provides no basis to exclude them.

Finally, admitting the complete chats would promote efficiency by preventing the trial from getting waylaid daily by debate about which portions of the chats should and should not be admitted. If the complete chats are introduced at the outset, then each side will be free to highlight with individual witnesses the most relevant portions. In this way, the full chats would be akin to bank records at a financial fraud trial or numerous other similar sets of records, which, even where voluminous, are typically introduced in full and then deployed by each side as

---

[3] Moreover, any hearsay statements would still be admissible under the rule of completeness. *See, e.g.*, *United States v. Coplan*, 703 F.3d 46, 85 (2d Cir. 2012); *United States v. Johnson*, 507 F.3d 793, 796 (2d Cir. 2007).

Hon. Gregory H. Woods  
United States District Judge

June 21, 2022  
Page 8 of 11

Re:   United States v. Ethan Melzer  
      S1 20 Cr. 314 (GHW)

necessary through various witnesses. This is a tried and true method of administering an efficient trial.

### III. Under the rule of completeness, the complete chats should be introduced at the outset of trial, or when the government presents its selected chat exhibits to the jury.

The government's proposed Telegram exhibits illustrate how introducing the chats in clips will inevitably obscure their tenor and meaning. The government proposes to introduce the chats in 57 cherry-picked snippets, containing almost none of the juvenile absurdity described above and few conversations involving the informant Red Hourglass. These exhibits present what is unquestionably the central evidence of the case in a manner that is, at best, confusing and, in many instances, misleading. Pursuant to the rule of completeness, at the outset of the trial, or whenever the government attempts to admit any of its excerpts, the Court should require the admission of the chats in full. *See United States v. Gotti*, 457 F. Supp. 2d 395, 399 (S.D.N.Y. 2006) ("Rule 106 does not allow the Government to cherry pick the statements it wants … and create a skewed picture of the facts."); *United States v. Boylan*, 898 F.2d 230, 256 (1st Cir. 1990) (Rule 106 "protects litigants from the twin pitfalls of creative excerpting and manipulative timing.").

Identifying all the deficiencies in the government's proposed Telegram chat exhibits is a truly herculean task that by itself illustrates why admitting the complete chats is the much fairer way to proceed. To take just some examples, in many of government's exhibits—including GX 208, 209, 211, 212, 218, 219, 242, 243, 250, 251, 270, and 271—the government slices a single strand of conversation into multiple exhibits. By curating the chats in this way, the government attempts to isolate clips of dialogue while surgically excising the portions of the chats that provide the context necessary to appreciate their actual meaning.

GX 250 and 251, for example, are two exhibits from the same "Op Hardrock" chat, where the group discusses a notional attack, that have been separated by the government. The government's excluded portion is a critical discussion between Red Hourglass and GvlagKvlt where Red Hourglass refers to the youth of the group's members and remarks that Tempel ov Blood (or "ToB," the U.S.-based O9A affiliate)

Hon. Gregory H. Woods  
United States District Judge

June 21, 2022  
Page 9 of 11

Re:   United States v. Ethan Melzer  
      S1 20 Cr. 314 (GHW)

has not been in existence for long. DX E 60–64. The discussion culminates with Red Hourglass telling GvlagKvlt: "Don't come at me like this [the attack] is my idea, I've been gone for like 7 hours while you boys work yourself into a lather over CIA conspiracy theories. So relax." *Id.* at 64. This omitted portion is necessary to the jury's understanding the true nature of the chats, including Red Hourglass's central role in moving them forward.

There are other examples. In GX 218 and 219, the government presents two fragments of a single conversation during which GvlagKvlt (CC-1) and Kurt Cobani (CC-2) engage with Melzer about his upcoming deployment. By presenting the exchange in bits, rather than in whole, the government tries to hide from the jury that the alleged co-conspirators are easily diverted from their supposed planning to banter about toast and butter. DX A at 2148–50 ("Fine I'm make toast," "baste toast," "butter or no?" "No," "baste," "give recipe," "I'm hungry as shit."). This is a nakedly strategic choice by the government that results in unfairness to Melzer.

In addition, many of the government's proposed exhibits—including GX 201, 202, 208, 214, 221, 222, 271, 289, and 290—begin or end abruptly in the middle of an idea or conversation. For example, GX 202 begins with a user commenting, "Cleanse the world off [sic] the weak and feeble," omitting the user's comment just eight seconds prior, "Agios o Corona." *See* DX A at 119–20. Reading the two comments together, it appears that the user is—in extremely poor taste, to put it mildly—praising the Covid-19 virus for "cleans[ing] the world." But reading the second comment alone, in the format offered by the government, could suggest a call to commit genocide. GX 222 similarly strips a comment of its context. It begins with Melzer noting, "ToB is extremely busy." But the exhibit omits the exchange just before: A user asks, "Who here has actually honestly read siege?" and Melzer responds, "Anyone climbing [sic] to be ToB if you directly ask is most likely lying." *Id.* at 2595. To provide yet another illustration, GX 271 isolates part of a conversation—in which GvlagKvlt introduces alleged CC-3 ("Jaww") to Red Hourglass—from the rest of the conversation, where GvlagKvlt describes Red Hourglass as "my w*man and our recruiter." DX F at 199.

The list continues. In GX 208, the government excerpts Melzer commenting, "The only reason I'm saying this is because one of the ones I trained with had a copy

Hon. Gregory H. Woods  
United States District Judge

June 21, 2022  
Page 10 of 11

Re:   United States v. Ethan Melzer  
      S1 20 Cr. 314 (GHW)

of siege in his ruck while we were doing like a 3 day ftx over there." And then, "That was the only one I was cool with tbh." Confronting these messages in isolation, devoid of context, a juror might assume that Melzer is claiming to have been "cool" with only one member of his *own* unit, a soldier who possessed the extremist text "Siege." But a fuller reading of the chat, beyond the government's excerpt, reveals that when Melzer says, "the only one," he means the "only one" of the *Croatians he met in training*, not the only American soldier. *See* DX A at 798–99 ("Reminder that Croatians are pretty based" "At least the ones in the military are imo" "Trained with them they were alright"). It is also problematic to highlight Melzer's comments without showing the jury how those comments were received—with GvlagKvlt and a user named "Ivan" piling on Melzer for what his defense of Croatians revealed, in their view, about his limited understanding of geopolitics. *Id.* at 798–806 ("Wrong" "even wronger." "brvh." "We don't have time to get into this" "You're not ready" "you really dont understand." "My n— you're not ready"). Indeed, their critique of Melzer—omitted entirely from the government's selection—provides context for the next government exhibit as well, GX 209, in which Melzer seemingly attempts to end the discussion about how he's "not ready" and "[doesn't] understand" by saying "In other news" and sharing an upsetting image that he thinks might resonate with those belittling him. This close comparison of GX 208 and 209 with the surrounding chat sections left on the government's cutting room floor exemplifies how the government's chat exhibits more generally have been stripped of their context and meaning. Only by admitting the full chats into evidence can such distortions be avoided.

Next, just as some exhibits divide a single conversation into multiple excerpts, in other exhibits the government tries to condense hours of conversation into the false image of an intimate back-and-forth. In so doing, the government tries to disguise a sprawling, chaotic chat of approximately fifty users as a streamlined conversation among just a few. In GX 205, for example, the government omits, without explanation, approximately three hours of chat containing about 45 comments, suggesting a continuity, clarity, and coherence to the chats that the forum plainly lacks. *See* DX A at 430–40.

At trial, the jury will be asked to review the Telegram chat exhibits and conclude whether Melzer and other participants seriously intended to plan and

Hon. Gregory H. Woods  June 21, 2022
United States District Judge  Page 11 of 11

Re:  United States v. Ethan Melzer
     S1 20 Cr. 314 (GHW)

carry out an attack on his unit. This will be an impossible task if they are not given access to the chats in full, which show the volume and tenor of the chats, the amount of time users spent in these chat forums, the range of topics discussed, and the number of participants in each chat channel. They must see enough of the chats to appreciate their ebb and flow and their reciprocal nature—the way users engage in banter, building on one another's comments and ideas, often with increasing hyperbole, fervor, and absurdism. To show the jury only a curated selection of these conversations would be to deprive the jury of their essential nature, and to deprive Melzer of his right to a complete defense. *See generally Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) ("[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.") (quotation marks omitted).

## IV.  Conclusion

For the foregoing reasons, the Court should admit the eight chats contained in DX A–H in full, subject only to Rule 403 and 404(b) redactions.

New York, New York
June 21, 2022

Respectfully submitted,

/s/ _____
Jonathan Marvinny
Hannah McCrea
Ariel Werner
Assistant Federal Defenders
212.417.8700
jonathan_marvinny@fd.org

cc:  Government counsel