K99TMELA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                        20 CR 314 (GHW)

ETHAN PHELAN MELZER,

                Defendant.

------------------------------x
                                    New York, N.Y.
                                    September 9, 2020
                                    10:30 a.m.

Before:

                    HON. GREGORY H. WOODS,

                                      District Judge


                    APPEARANCES (Telephonic)

AUDREY STRAUSS
     Acting United States Attorney for the
     Southern District of New York
BY:  MATTHEW HELLMAN
     SAMUEL ADELSBERG
     SIDHARDHA KAMARAJU

FEDERAL DEFENDERS OF NEW YORK
     Attorneys for Defendant
BY:  JENNIFER WILLIS
     JONATHAN MARVINNY

K99TMELA

| | |
|---|---|
| 1 | (Via telephone) |
| 2 | THE COURT:  Is counsel for the United States on the |
| 3 | line? |
| 4 | MR. HELLMAN:  Yes, good morning, this is Matthew |
| 5 | Hellman.  I will be speaking this morning for the United |
| 6 | States, but I am also joined on the line by Assistant United |
| 7 | States Attorneys Sidhardha Kamaraju and Samuel Adelsberg. |
| 8 | THE COURT:  Thank you very much. |
| 9 | Is counsel for defendant on the line? |
| 10 | MR. MARVINNY:  Your Honor, Jonathan Marvinny of the |
| 11 | Federal Defenders of New York.  Ms. Willis will be joining the |
| 12 | call if she hasn't joined yet and she will be speaking for the |
| 13 | defense. |
| 14 | THE COURT:  Thank you.  Is the defendant on the line? |
| 15 | Mr. Melzer, are you on the line? |
| 16 | I'm not hearing from Mr. Melzer.  We'll wait for him |
| 17 | and Ms. Willis to join. |
| 18 | Mr. Melzer, is that you joining? |
| 19 | Mr. Melzer, have you joined the call? |
| 20 | Let's give it a moment. |
| 21 | Let me take the opportunity to ask everyone on call to |
| 22 | keep their phones on mute at all times if you're not a |
| 23 | participant in the call, and for the participants in the call |
| 24 | to please keep your phones on mute at all times when you're not |
| 25 | addressing the Court. |

K99TMELA

1          Has Mr. Melzer joined the call?

2          MS. WILLIS:  That was Jennifer Willis from the Federal

3     Defenders who joined the call.

4          THE COURT:  Thank you very much.  We're waiting for

5     Mr. Melzer to join the call.

6          Is Mr. Melzer on the line?

7          We'll wait for Mr. Melzer to join.

8          Let me ask whoever's digits are 452 to place your

9     phone on mute.  There's background noise coming from your

10    phone.  Please place your phone on mute.

11         Has Mr. Melzer joined the call?

12         We'll continue to wait.  I apologize for the delay.

13         Has Mr. Melzer joined the call?

14         SPEAKER:  I'm Ethan's stepfather.

15         THE COURT:  Thank you.  Please keep your phone on

16    mute.  We're waiting for Mr. Melzer, the defendant, to join the

17    call.  Everyone else should keep their phones on mute.  Thank

18    you.

19         THE DEFENDANT:  Ethan Melzer.

20         THE COURT:  Thank you very much.  Ethan Melzer just

21    joined the call.

22         Mr. Ethan Melzer, can you hear me?

23         THE DEFENDANT:  Yes, Judge.

24         THE COURT:  Good.  Thank you very much.  This is Judge

25    Woods, thank you for joining.

K99TMELA

1          This is the case of United States v. Ethan Melzer.

2    Good morning, Mr. Melzer, thank you for joining us.

3          I have already heard the appearances on behalf of each

4    of the parties, but just for Mr. Melzer's sake, could I ask who

5    is on the line on behalf of each of the parties?  First,

6    counsel for the United States.

7          MR. HELLMAN:  Yes, good morning, this is that Matthew

8    Hellman for the government, and I am also joined today by

9    Assistant United States Attorneys Sidhardha Kamaraju and Samuel

10   Adelsberg.

11         THE COURT:  Thank you very much.

12         Who is on the line representing the defendant?

13   Counsel?

14         MS. WILLIS:  Good morning, your Honor, Jennifer Willis

15   and Jonathan Marvinny, Federal Defenders of New York, on behalf

16   of Mr. Melzer.

17         THE COURT:  Thank you very much.  Let me first make a

18   few brief remarks about the protocol that I hope the parties

19   will follow during this conference just as basic organizing

20   principles.  The first thing that I want to remind you all is

21   that this is a public proceeding.  The dial-in information for

22   the conference is available on the Court's website.  Any member

23   of the public or press is welcome to audit the conference, so

24   please keep that in mind.

25         The second thing that I would like to ask everyone on

K99TMELA

1  the conference to do is please keep their phones on mute.  So

2  please keep your phone on mute, everyone, unless you are

3  Mr. Melzer or one of the lawyers.  And for Mr. Melzer and the

4  lawyers, please keep your phones on mute except when you're

5  addressing the Court or, with my permission, your adversary.

6         Counsel and Mr. Melzer, I would like to ask you to

7  please announce your name each time that you speak during this

8  conference.  That's because we're conducting this conference by

9  telephone and it's helpful for our court reporter to hear your

10  name so that the court reporter can accurately transcribe these

11  proceedings.

12         Now I'm inviting our court reporter to let us know if

13  the court reporter has any difficulty in hearing or

14  understanding anything that we say here today.  If the court

15  reporter asks any of us to do something that will make it

16  easier for the court reporter to do the court reporter's job,

17  please do your best to accommodate the request.  Because there

18  is a court reporter on the line who is transcribing these

19  proceedings, I'm ordering that there be no recording or

20  rebroadcast of all or any portion of the audio of this

21  proceeding.

22         So let me begin with just a few brief remarks about

23  the context in which this proceeding is taking place.  As you

24  all know, we're in the midst of the Covid-19 pandemic.  I'm

25  conducting this proceeding pursuant to the authority provided

K99TMELA

| | |
|---|---|
| 1 | by Section 15002 of the CARES Act and the standing orders |
| 2 | issued by our Chief Judge pursuant to that act which permits |
| 3 | the Court to conduct remote proceedings. |
| 4 | Counsel are appearing before me by telephone.  The |
| 5 | defendant is participating by telephone as well.  I understand |
| 6 | that all of the lawyers and Mr. Melzer can hear me from our |
| 7 | brief colloquy earlier.  What I'm going to do is to ask that |
| 8 | each of you let me know immediately if you have any difficulty |
| 9 | hearing me or an attorney or Mr. Melzer when they're speaking |
| 10 | to me. |
| 11 | Mr. Melzer, you should also please feel free to let me |
| 12 | know if at any point during this proceeding you would like to |
| 13 | speak to your lawyer.  I will do all that I can within my |
| 14 | technical capacity to give you the opportunity have a breakout |
| 15 | session with them.  If you would like to do so at any point |
| 16 | during this proceeding, please just let me know and I will do |
| 17 | what I can to make sure that that happens. |
| 18 | So I would like to begin with a brief colloquy |
| 19 | regarding the defendant's consent to proceed with what I expect |
| 20 | will be an arraignment on the superseding indictment and a |
| 21 | discussion of the next steps in this case. |
| 22 | So first I'm going to turn to counsel for defendant. |
| 23 | First I would appreciate a brief proffer regarding why we're |
| 24 | conducting this proceeding remotely, and I would also |
| 25 | appreciate counsel proffer regarding your communications with |

K99TMELA

1    the defendant regarding his right to appear here, the times at

2    which those conversations happened, and regarding whether he is

3    aware of those rights, that he's willing to waive his right to

4    appear in person for his arraignment for the remainder of this

5    proceeding.

6          Let me begin with you first, counsel for the

7    defendant, why we're doing it this way, and also regarding your

8    conversations with the defendant regarding his willingness to

9    consent to proceed with his arraignment by remote means.

10         Counsel for the defendant?

11         MS. WILLIS:  Yes, your Honor, this is Jennifer Willis

12    speaking.

13         As the Court has indicated, obviously we are still in

14    the midst of the Covid-19 pandemic.  That has created some

15    changes in the way in which the jail operates and the protocols

16    that they utilize when taking people to and from court.  So

17    primarily the reason that we are currently remote is that

18    counsel would have had some difficulties in terms of health and

19    the like getting to court.  But more importantly, because

20    Mr. Melzer is currently in custody, the current operating

21    protocol that the Bureau of Prisons has been utilizing is when

22    they take someone to court for a court appearance, because that

23    involves possible contact with people who were not in that

24    facility, when they are brought back to the facility they are

25    required to be quarantined for 14, or in some cases, 21 days.

K99TMELA

That is the procedure which would have led to Mr. Melzer having
a lack of access to phone calls, diminished access to his
attorneys and diminished ability to review his discovery and
prepare for his case.  So we had requested that this proceeding
be remote.  One, again, it is easier for the attorneys, but
more importantly, so that Mr. Melzer would not have to go
through that quarantine which would delay and limit the ability
to reach out better and also communicate with counsel.  So that
was the reason that today's proceeding is being held remotely.

          In terms of Mr. Melzer's consent and willingness to
proceed in this fashion, we have had ongoing conversations with
him via a video visioning system that the jail has put in place
during this pandemic.  We have been able to meet with him in
that capacity.  We have been able to have confidential legal
calls with him.  And as recently as this morning, prior to
today's court appearance, I was able to speak to him
confidentially again.

          In all of those conversations we have, of course,
discussed with him the fact that he has an absolute right, if
he wants, to be able to appear physically in the courthouse
before your Honor with his lawyers next to him, and he has
agreed and is waiving his right to appear physically in court
and he's willing to proceed today via teleconference for all of
the reasons that I just laid out for the Court.

          THE COURT:  Good.  Thank you.  And counsel, were you

K99TMELA

1    able to discuss with the defendant a potential written waiver

2    of Mr. Melzer's right to be physically present for his

3    arraignment today?  If not, why not?

4             MS. WILLIS:  Your Honor, I am sorry, that's an

5    oversight on my part.  We certainly have reviewed that waiver

6    in its entirety with him in the past because all of his

7    proceedings thus far have been remote in one capacity or the

8    other, either video or audio.  In preparing for today's

9    arraignment and conference, while I did discuss with him yet

10   again the fact that he has a right to be present and whether he

11   would agree to proceed remotely, I did not think -- quite

12   frankly, I'm sorry, your Honor -- to pull up that particular

13   document and go through it with him again, but he has certainly

14   had it read to him in the past and has authorized us or a judge

15   to sign that in the past on his behalf.

16            THE COURT:  Good.  Thank you.  Let me say a few brief

17   words.  At the outset, let me note that there is limited video

18   conferencing capacity available at the facility where

19   Mr. Melzer is currently incarcerated.  I requested video

20   conference for this conference but none was available.  As a

21   result, I find that video conferencing was not reasonably

22   available for purposes of conducting this proceeding.  The

23   defendant is able to participate in this proceeding by

24   telephone.  He is able to hear and understand me and the others

25   engaged in this conference.

K99TMELA

1          Now while I have not received a written waiver of the

2     defendant's presence at this proceeding, on the basis of the

3     proffer by counsel, pursuant to Rule 10(b) of the Federal Rules

4     of Criminal Procedure, I find a knowing and voluntary waiver of

5     the defendant's right to be present for the arraignment.  I

6     find, moreover, that the defendant has knowingly and

7     voluntarily consented to proceed to this conference by remote

8     means.  It was possible for defendant to have signed a written

9     waiver, but I understand that it was an omission by counsel and

10    I'm able to conclude that we can proceed in the absence of such

11    a waiver on the basis of the proffer.  I should also say that I

12    reviewed the transcript of the prior proceedings before Judge

13    Netburn in which she discussed with Mr. Melzer a written

14    consent form in which he authorized her to sign the document.

15    So I'm aware that he's familiar with the form itself in

16    addition to the representations by counsel for the defendant

17    here.

18          So let me turn now to the substance of this

19    conference.

20          Mr. Melzer, at this point you've been named in an

21    eight-count indictment, which is numbered S1 20 CR 314.  The

22    case has been assigned to me.  The purpose of this proceeding

23    is to do a number of things:  First, I want to make sure that

24    you have a copy of the superseding indictment.  I want to

25    inform you of the charges against you in the superseding

K99TMELA

1   indictment.  I would like to take your plea with respect to

2   each of the charges in the superseding indictment, then I

3   expect that we'll dedicate the remainder of this conference to

4   a discussion of what will happen next in this case.

5          So at the outset, I know that you've already had an

6   initial appearance before the magistrate judge who informed you

7   of a number of your rights.  Because of the importance of your

8   right to remain silent, I want to review that right for you

9   here now.  Mr. Melzer, you have the right to remain silent.

10  You do not have to say anything to anyone.  If you give up that

11  right and make a statement, the prosecutor can use everything

12  that you say against you.  Therefore, I strongly suggest that

13  you not say anything to anyone unless you and your counsel

14  decide that it is in your best interest to do so.  If you have

15  already given a statement, you don't have to say anything else.

16  If you decide to go ahead and make a statement, you have the

17  right to stop at any time.

18         Mr. Melzer, do you understand your right to remain

19  silent?

20         THE DEFENDANT:  Yes, Judge.

21         THE COURT:  Thank you.  And you understand that you're

22  being represented in these proceedings by counsel from the

23  Federal Defender's Office, is that correct, and do you wish

24  them to continue to represent you here?

25         THE DEFENDANT:  Yes, Judge.

K99TMELA

1          THE COURT:  Thank you.  Now Mr. Melzer, I'm going to

2    just ask to make sure, Mr. Melzer, if at any point you have any

3    difficulty understanding what is happening here today, I invite

4    you to let me know.  I'm happy to explain anything further, or,

5    as I say, I would be happy to give you the opportunity to

6    confer further with your counsel.

7          Let me turn first to you, Mr. Melzer, just to ask if

8    you have seen a copy of the superseding indictment which is the

9    indictment that's numbered S1 20 CR 314.  Have you seen that,

10   Mr. Melzer?

11         THE DEFENDANT:  No, Judge, I haven't been able to get

12   a copy of it yet.

13         THE COURT:  Let me turn to counsel for the defendant.

14   Counsel, have you had the opportunity to review the indictment

15   and to discuss it with Mr. Melzer?

16         MS. WILLIS:  Yes, we have, your Honor.  I think that

17   he was trying to be completely accurate.  He has not physically

18   seen a copy of the superseding indictment, but it has been read

19   to him in its entirety and we certainly have discussed it with

20   him as well.

21         THE COURT:  Thank you.  So Mr. Melzer, have you heard

22   the entirety of the superseding indictment?

23         THE DEFENDANT:  Yes, Judge.

24         THE COURT:  Thank you.  Let me turn to counsel for the

25   United States.  Counsel, could I ask you to please summarize

K99TMELA

1    the charges on which the defendant is being arraigned today.

2               MR. HELLMAN:  This is Matthew Hellman for the United

3    States.  I will do so.

4               The superseding indictment contains the original six

5    charges on which the defendant was first arraigned on July 6,

6    2020.  Those charges are:

7               One, conspiracy to murder U.S. nationals abroad, and

8    two, attempted murder of U.S. nationals abroad, both in

9    violation of Title 18, United States Code, Section 2332(b);

10   third and fourth, conspiracy to murder U.S. service members and

11   attempted murder of U.S. service members in violation of Title

12   18, United States Code, Section 1117 and 1114 respectively;

13   fifth, provision and attempted provision of material support

14   for terrorist acts in violation of Title 18, United States

15   Code, Section 2339A; and sixth, conspiracy to murder and maim

16   abroad in violation of Title 18, United States Code, Section

17   956(a).

18              Those are the same, again, six charges as in the

19   original indictment.  The superseding indictment, which was

20   filed on August 18, 2020, adds two counts:  Count Seven,

21   illegal transmission of national defense information in

22   violation of Title 18, United States Code, Section 793(d); and

23   Count Eight, transmission and attempted transmission of

24   national defense information to a faction or citizen of a

25   foreign country in violation of Title 18, United States Code,

1  Section 794(a).

2          Your Honor, all eight charges relate to the

3  defendant's activities in or about April and May 2020.  While

4  deployed overseas as a member of the United States Army, the

5  173rd Airborne Division, the defendant was also a member of a

6  white supremacist group which promoted and sought to incite

7  extreme violence, including rape, murder and acts of terrorism,

8  as means by which to accomplish the group's goals of destroying

9  plural society, initiating race and gender-based global

10  conflict, causing the collapse of democracies, including the

11  United States government, and accelerating the demise of

12  Western Civilization in an effort to create a world in which

13  specific groups of white men maintain exclusive power.

14          From at least April 2020, the defendant participated

15  in encrypted chat rooms and conspired with other members of

16  this group to attempt to cause the ambush murders of the

17  defendant's own military unit while deployed overseas, an

18  ambush to be conducted by foreign extremist or terrorist

19  fighters, including potential members of ISIS or al Qaeda.  As

20  part of this effort, the defendant passed classified

21  information during these chats to his co-conspirators regarding

22  defensive military installation and the United States military

23  and civilian personnel working there that his unit was

24  deploying to protect.  This conduct forms the basis for the

25  eight counts in the indictment.

K99TMELA

```
1          THE COURT:  Thank you, counsel.

2          Let me turn to you, Mr. Melzer.  Mr. Melzer, you have

3     the right for me to read the superseding indictment to you out

4     loud here on the record.  I would be happy to do that.  You

5     also can waive that right.

6          Mr. Melzer, would you like me to read the indictment

7     to you on the record here today?

8          THE DEFENDANT:  No, thank you, Judge.

9          THE COURT:  Thank you.  Counsel for defendant, does

10    the defendant waive formal reading of the indictment?

11         MS. WILLIS:  This is Jennifer Willis.  Yes, he does,

12    your Honor.

13         THE COURT:  Thank you very much.

14         So Mr. Melzer, I would like to ask, first, if you

15    understand what you've been charged with.  Do you, Mr. Melzer?

16         THE DEFENDANT:  Yes, Judge.

17         THE COURT:  Thank you very much.  So Mr. Melzer, I'm

18    now going to walk through each of the counts of the superseding

19    indictment and ask for your plea with respect to each of the

20    counts.

21         Count One, Mr. Melzer, charges you with conspiracy to

22    murder United States nationals in violation of 18, United

23    States Code, Sections 2332(b) and 3238.  How do you plead to

24    this count?

25         THE DEFENDANT:  Not guilty, Judge.
```

K99TMELA

1          THE COURT:  Thank you.  Count Two charges you with the

2     attempted murder of United States nationals in violation of

3     Title 18, United States Code, Sections 2332(b), 3238 and 2.

4     How do you plead to this count?

5          THE DEFENDANT:  Not guilty, Judge.

6          THE COURT:  Thank you.  Count Three charges you with

7     conspiracy to murder United States service members in violation

8     of 18, United States Code, Sections 1114, 1117, and 3238.  How

9     do you plead to this count?

10          THE DEFENDANT:  Not guilty, Judge.

11          THE COURT:  Count Four charges you with the attempted

12     murder of United States service members in violation of Title

13     18, United States Code, Sections 1114, 3238, and 2.  How do you

14     plead to this count?

15          THE DEFENDANT:  Not guilty, Judge.

16          THE COURT:  Thank you.  Count Five charges you with

17     provision and attempted provision of material support to

18     terrorists in violation of Title 18, United States Code,

19     Sections 2339A(a), 3238, and 2.  How do you plead to this

20     count?

21          THE DEFENDANT:  Not guilty, Judge.

22          THE COURT:  Thank you.  Count Six charges you with

23     conspiracy to murder and maim in a foreign country in violation

24     of Title 18, United States Code, Sections 956(a)(1),

25     956(a)(2)(A) and 3238.  How do you plead to this count?

K99TMELA

1              THE DEFENDANT:  Not guilty, Judge.

2              THE COURT:  Thank you.  Count Seven charges you with

3      illegal transmission of national defense information in

4      violation of Title 18, United States Code, Sections 793(d), and

5      2.  How do you plead to this count?

6              THE DEFENDANT:  Not guilty, Judge.

7              THE COURT:  Thank you.  Count Eight charges you with

8      illegal delivery of national defense information in violation

9      of Title 18, United States Code, Sections 794(a), and 2.  How

10     do you plead to this count?

11             THE DEFENDANT:  Not guilty, Judge.

12             THE COURT:  Thank you, Mr. Melzer, your pleas of not

13     guilty are accepted.

14             So let me turn back to counsel for the United States.

15     I heard a brief summary of the case from your description of

16     the acts that drove the charges here.  Is there anything else

17     that you would like to share with the Court regarding the

18     nature of the case?

19             MR. HELLMAN:  This is Matthew Hellman for the United

20     States.  Nothing in particular at this time, your Honor, but I

21     do think that relevant to today's conference and this

22     conversation we will turn to one of the aspects of the

23     government's case as relating to the charges that classified

24     information was passed by the defendant and what the government

25     anticipates discovery and further practice with respect to that

K99TMELA

1    classified information will entail.  And when the Court is

2    ready, the government can also turn to its provision of

3    discovery to date and how it anticipates to continue providing

4    discovery going forward.

5        THE COURT:  Good.  Thank you.  Those are both germane.

6    Let me turn to the defendant for just a moment.  Before we do,

7    counsel for the United States, at this point do you anticipate

8    filing any further superseding indictments adding defendants or

9    additional charges?

10       MR. HELLMAN:  Matthew Hellman for the United States.

11   Not at this point, your Honor.

12       THE COURT:  Thank you.  So Mr. Melzer, as your counsel

13   has likely told you, you have the right to some of the evidence

14   that's collected by the government.  I expect to now turn to a

15   discussion with the United States regarding what the evidence

16   looks like and when they expect to turn it over to you.  Then I

17   expect I will talk about how much time your counsel will need

18   in order to review it and to discuss it with you, Mr. Melzer.

19       So counsel for the United States, let me turn to the

20   topics that you identified.  What can you tell me about the

21   status of discovery at this point?

22       MR. HELLMAN:  Matthew Hellman for the United States.

23   Your Honor, the government has made two discovery productions

24   to date, those being on July 22nd and August 21st, 2020

25   respectively.

K99TMELA

1          The discovery to date I think can be fairly

2    characterized as significant and voluminous.  The discovery

3    includes, among other things, the following primary categories

4    of information, documents and materials:  First, chat records

5    from the chat or communications application called Telegram

6    pertaining to the group that I described earlier and direct

7    messages with members of the group in which the defendants

8    participated.

9          Next, the defendant's Army records:  Those include

10   records pertaining to the United States Army and Department of

11   Defense investigation of the defendant's conduct, records

12   relevant to the defendant's initial custody with the Army when

13   he was initially taken into custody by U.S. military personnel

14   in Italy on May 30, 2020.  There are reports from the Army

15   investigators involved in that investigation and records of the

16   initial military proceedings which took place.  There are also

17   personnel documents, information on training in connection with

18   his service in the Airborne division, briefings that the

19   defendant attended regarding his unit's upcoming deployment,

20   the defendant's classified clearance information clearance

21   records, that is, his information pertaining to his background

22   check and records pertaining to his receiving security

23   clearance, and the non-disclosure agreements related to

24   classified information that were signed by the defendant.

25          The government has also provided arrest records from

1    the defendant's transfer to FBI custody, photos and records

2    related to physical searches of the defendant's Army housing

3    space, his quarters and belongings, records pertaining to three

4    interviews in which the defendant participated after being

5    initially taken into custody, including audio and video

6    recordings of two of those interviews, and draft transcripts of

7    those recorded interviews.

8           The government has provided information obtained

9    pursuant to legal process, including subpoenas and law

10   enforcement requests for information, forensic extractions of

11   the defendant's two cellphones, as well as a PlayStation video

12   game console.  Those searches were conducted pursuant to search

13   warrant.  The search warrant and supporting materials have been

14   disclosed to the defendant as well.

15          The government executed numerous search warrants which

16   were obtained pursuant to the Stored Communications Act, and

17   any corresponding information received pursuant to those

18   warrants have also been provided to the defendant.  Those

19   include various facilities, such as email, social media

20   accounts, video game services and other electronic

21   communication services, approximately 17 in total.

22          The government has also provided reports of interviews

23   conducted by law enforcement with over 20 witnesses, and also

24   has provided records, background information and source

25   documents related to, among other things, the Order of Nine

K99TMELA

1    Angles and the RapeWaffen Division, which collectively were the

2    white supremacy groups in which the defendant claimed

3    membership.

4         So the government believes that at this point with

5    those records, discovery is very close to being complete.  The

6    government is preparing a third discovery production which it

7    anticipates will be provided to the defendant and counsel for

8    the defendant within about a week's time, certainly by the end

9    of next week, which will not be as voluminous as the prior

10   productions but includes records pertaining to, among other

11   things, co-conspirators involved with the defendant's conduct.

12        Of course the government will continue, as it receives

13   information pursuant to investigation that falls into any

14   Rule 16 category, produce those materials to the defendant, but

15   setting aside for the moment the classified information, which

16   I will turn momentarily, there are no other truly significant

17   buckets, as it were, of discovery that remain to be served on

18   the defendant that are in the government's possession at this

19   time.

20        THE COURT:  Sorry, counsel, before you turn to

21   classified information, you say "truly significant buckets."  I

22   just want to be as precise as possible here.  After the

23   production that is anticipated by the end of next week, what

24   additional discovery do you anticipate the government will need

25   to turn over to the defendant that is currently in your

K99TMELA

possession or control?  I would like to see that there's a

clear schedule for the completion of production of what the

government has now.

MR. HELLMAN:  Matthew Hellman for the United States.

Thank you, your Honor.

So very little is the answer, but based on the nature

of the investigation, it is our experience that there may be

additional reports, additional witness interviews that could

take place, other investigation files that government will

review to determine if any other Rule 16 information exists,

including, for example, investigations conducted by the

government with respect to the groups to which the defendant

adhered or co-conspirators who may have been involved in the

defendant's conduct or in other conduct with these groups.

So the government is not currently aware of any

significant tranches of discovery relating to any of those

categories, and we in fact have already turned over significant

files pertaining to those other ancillary investigations.  Of

course the government will continue to review those files and

can't certify at this time that no other discovery exists, but

when I say "significant," what I mean is I don't anticipate any

further, for example, multigigabyte productions of electronic

information.  The government has already provided the

defendant's statements, search warrants underlying the searches

conducted by the government, and in significant part, both FBI

K99TMELA

1    and Army investigative files, which, along with the electronic

2    chat records, form the backbone of discovery in this case.

3         THE COURT:  Thank you.  I understand the government

4    expects to continue its review of the ancillary materials that

5    you're describing.  Do you have a sense by when the government

6    will have completed its review of existing records to see if

7    there are Rule 16 materials that must be disclosed to the

8    defendant?

9         MR. HELLMAN:  Matthew Hellman for the United States.

10   The government is continuing its review and does not anticipate

11   that that review will take longer than this month, September,

12   but we'll continue to review these files with diligence going

13   forward.

14        THE COURT:  Thank you.  So my expectation then is that

15   the third tranche of discovery will be provided by next Friday

16   and that the government is committed to conduct a review of

17   what they've described as the ancillary materials within a

18   month from today in order to ascertain whether there's other

19   discoverable materials there.  And I expect that there will be

20   a rolling production of such information as and when it's

21   discovered after appropriate review by the United States.

22        So counsel for the United States, let's turn to a

23   discussion of how the parties should best handle any classified

24   material that's involved in the case.  Counsel for the United

25   States?

K99TMELA

1          MR. HELLMAN:  Matthew Hellman for the United States.

2     Thank you, your Honor.  I should mention one detail about

3     discovery that has been served so far, which is that the

4     government has confirmed that counsel has received the two

5     productions that I described.  The government has also sent

6     those materials to the MCC for the defendant's review.  There

7     was a delay in the defendant's receiving the first production

8     which the MCC had received, but as of this morning, legal

9     counsel at MCC New York confirmed that as of yesterday that

10    hard drive was available for the defendant.

11          The government's second production of discovery, which

12    was more recent, has also been received by the MCC, according

13    to the government's records, but should be made available for

14    the defendant's review by the end of next week.  Counsel for

15    the defendant had alerted the government to this delay and it

16    does seem that it is now being rectified, but there appears to

17    be a lag period between when the government sends that

18    discovery and when the defendant is able to review it.  We'll

19    continue to work with counsel to monitor that situation and

20    hope there are no delays going forward but will be mindful of

21    that as we proceed.

22          THE COURT:  Good.  Thank you, counsel.

23          MR. HELLMAN:  As far as classified discovery is

24    concerned, we have spoken with counsel for the defendant.

25    Mr. Marvinny needs to update his clearance, but that process

K99TMELA

1    has begun and should be completed within a month.  And at that

2    point, the process of providing discovery to counsel should be

3    relatively seamless.

4           There is a modest discovery production of classified

5    material, and when I say that, I mean it consists of documents

6    which should not exceed approximately 100 pages worth of PDF

7    files.  That is prepared, and we have advised defense counsel

8    that it is ready when they are ready to accept it.  It can be

9    served and stored in a SCIF or we can, as counsel requested,

10   wait to serve it until Mr. Marvinny's clearance is completed.

11   That is the extent of discovery as far as classified discovery

12   is concerned at this point.  And the parties have also agreed

13   to a protective order pursuant to the Classified Information

14   Procedures Act, which I believe has been submitted for the

15   Court's review.

16          THE COURT:  Good.  Thank you very much.  That is the

17   next question.  Counsel, I don't have the CIPA order in front

18   of me.  If it was sent to my chambers' email account, I don't

19   think I have it, and I don't see it filed on the docket.  Let's

20   follow up on that after the conference.

21          So counsel for defendant, let me turn to you.  I

22   understand there's a substantial volume of discovery to review

23   and that the discovery production won't be substantially

24   complete until the end of next week.  Counsel for defendant,

25   with that information in hand, what's your proposal regarding

K99TMELA

1    appropriate next steps in this case?

2             MS. WILLIS:  Your Honor, this is Jennifer Willis from

3    the Federal Defenders speaking.  We would be requesting a

4    90-day wait, and the reason for the atypical length of time has

5    to do with the volume of discovery.  As the government said,

6    their initial production was quite voluminous.  But it also has

7    to do with Mr. Melzer's ability to review discovery himself and

8    our ability to consult with and discuss that with him.

9             As the government indicated, they had sent a copy of

10   the first production to Mr. Melzer around the same time that

11   they produced materials for counsel, and I believe that was in

12   July, and I was able to confirm with Mr. Melzer this morning

13   that he did in fact receive that first production last night at

14   the Bureau of Prisons.  So that was well over a month, month

15   and a half lag time there between it being sent, arriving at

16   the Bureau of Prisons, and then being actually provided to him

17   for his review.

18            Because the productions include video and electronic

19   material, that is material that he will need to be able to

20   review by a computer.  They're in limited access currently

21   within the Bureau of Prisons again because of restrictions put

22   in place connected with Covid and safety protocols being

23   utilized.  So he will have to go to the law library and the

24   like in order to access a secure computer so that he can review

25   that discovery, and that will take some time as well.

K99TMELA

1          So I am asking for 90 days so Mr. Melzer has time to

2     review -- he only received the first production.  Obviously the

3     second and third hopefully will arrive at the Bureau of Prisons

4     without the delay that we saw with the first productions -- and

5     also for counsel to be able to review the two productions that

6     we already have, the third production which is forthcoming, for

7     Mr. Marvinny to complete the renewal of his security clearance

8     and then to review the classified information as well.  And so

9     that is why I'm making that request for a 90-day adjournment,

10    your Honor.

11          THE COURT:  Thank you very much.  So counsel for

12    United States, let me turn to you.  You've heard the request by

13    the defense, what's your position regarding that request?

14          MR. HELLMAN:  Matthew Hellman for the United States.

15    The government understands the basis of the request and we do

16    not have an objection given what the government thinks the

17    defense fairly characterized as substantial discovery.  Given

18    the limitations imposed also by the ongoing Covid-19 pandemic

19    and the need to review that discovery with the defendant, 90

20    days is not inappropriate in this case from the government's

21    perspective.

22          THE COURT:  Good.  Thank you very much.  So I will

23    grant the defendant's request and set a conference for about 90

24    days from today.

25          Counsel, I'm going to propose that we do this on

K99TMELA

1   December 9, which is just three months from now.  I could also

2   offer December 16.  I'm not sure exactly what time it will be

3   at yet.  Assuming that the defense will again request that the

4   hearing be conducted by remote means, counsel for the

5   defendant, is that your request?

6          MS. WILLIS:  Yes, it is, your Honor, and either one of

7   the dates that the Court proposed will work for counsel.

8          THE COURT:  Good.  Thank you.  Let's schedule it for

9   December 9.  Counsel for the United States, are you available

10  on that date?

11         MR. HELLMAN:  Matthew Hellman for the United States.

12  The government will be available, thank you.

13         THE COURT:  Good.  Thank you.  So initially I will

14  schedule this for 9:00 a.m. on December 9.  The time may change

15  depending on the slots that are available for us to conduct

16  that proceeding.  At defendant's request, I will schedule it to

17  be conducted by remote means.  I encourage defendant to obtain

18  a written waiver in advance of the conference, if possible.

19         Is there anything else that we need to talk about here

20  apart from the speedy trial clock?  Counsel for the United

21  States, anything on behalf of the government?

22         MR. HELLMAN:  Matthew Hellman for the United States.

23  I would like to clarify something that I said earlier with

24  respect to the CIPA protective order.  The parties are still

25  discussing that order and I think that it will be submitted

K99TMELA

1    after Mr. Marvinny is recertified as cleared, but it has not

2    yet been submitted to the Court for consideration.  So it was

3    not missed by your Honor, that was a misstatement on my part.

4             Additionally, with respect to any anticipated

5    litigation pursuant to the Classified Information Procedures

6    Act, the government anticipates that no later than the end of

7    this week it will submit a brief letter outlining its

8    perspective on the potential litigation pursuant to CIPA and

9    outlining next steps.  That letter will be filed on the docket.

10            THE COURT:  Good.  Thank you very much, counsel.

11            Counsel for the defendant, anything else before we

12   come to the speedy trial clock?

13            MS. WILLIS:  No, your Honor, thank you.

14            THE COURT:  Good.  Thank you.  Counsel for the United

15   States, is there an application?

16            MR. HELLMAN:  Yes, your Honor, Matthew Hellman for the

17   United States.  The government moves at this time to exclude

18   time under the Speedy Trial Act between today and December 9,

19   2020.  The ends of justice will be served by this exclusion to

20   allow the review by counsel of extensive discovery which has

21   been provided in this case, for counsel to consider any

22   appropriate pretrial motions, and for the parties to discuss

23   any potential pretrial issues or potential for resolution of

24   this case during that intervening period.

25            THE COURT:  Thank you.  Counsel for defendant, do you

K99TMELA

1          consent to the exclusion of time?

2                          MS. WILLIS:  This is Jennifer Willis for the Federal

3          Defenders.  Yes, we consent, your Honor.

4                          THE COURT:  Thank you.  I will exclude time from today

5          until December 9, 2020.  After balancing the factors that are

6          specified in 18, United States Code, Section 3161(h)(7), I find

7          that the ends of justice served by excluding such time outweigh

8          the best interests of the public and the defendant in a speedy

9          trial because it will allow time for the production of the

10         voluminous discovery described by the United States here and

11         for review of those materials by the defendant and his counsel.

12         It will also allow time for the defendant to consider any

13         potential motions and also time for the parties to potentially

14         discuss a pretrial disposition of this case.

15                         So thank you very much.  Is there anything else that

16         we need to take up here, counsel, before we adjourn?  First,

17         counsel for the United States.

18                         MR. HELLMAN:  Matthew Hellman for the United States.

19         Nothing further, your Honor, thank you.

20                         THE COURT:  Thank you.  Counsel for defendant?

21                         MS. WILLIS:  Jennifer Willis, Federal Defenders.

22         Nothing further, your Honor, thank you.

23                         THE COURT:  Good.  Thank you all.  This proceeding is

24         adjourned.

25                         (Adjourned)